**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| ODELL EDWARDS, Individually and | § | |
| as the Father of JORDAN EDWARDS, and on | § | |
| BEHALF OF MINORS, V.A. and K.E. and as | § | |
| Representative of the Estate of JORDAN | § | |
| EDWARDS, DECEASED, | § | |
| | § | |
| | § | |
|     Plaintiff, | § | CIVIL ACTION NO. 3:17-CV-1208 |
| | § | |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| ROY OLIVER AND THE CITY OF BALCH | § | |
| SPRINGS, TEXAS, PARTICULARY THE | § | |
| BALCH SPRINGS POLICE DEPARTMENT, | § | |
| | § | |
|     Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

NOW COMES Odell Edwards, plaintiff, Individually and as the father and on behalf of his

minor sons, V.A. and K.E. and as personal representative of the Estate of Jordan Edwards,

deceased, complaining of Defendants, the City of Balch Springs, Texas, more particularly the

Balch Springs Police Department ("BSPD"), by and through its agent and servant, Roy Oliver,

Individually and in his official capacity as a Balch Springs Police Officer, and for cause would

show the Honorable Court as follows:

**I.**

**NATURE OF THE ACTION**

    1.    This is an action brought by the Plaintiff against Defendants, the City of Balch

Springs, Texas, more particularly the Balch Springs Police Department and Roy Oliver for his

use of excessive and deadly force resulting in the unlawful shooting death of Jordan Edwards ("Edwards") under the color of law in violation of his individual rights under the Fourth Amendment of the United States Constitution and in violation of his civil rights pursuant to 42 U.S.C. § 1983.

2.     Plaintiff alleges that the City of Balch Springs, Texas ("City of Balch Springs") and its policy makers, specifically the Balch Springs City Council, Mayor Carrie Marshall ("Marshall") and Chief of Police Jonathan Haber ("Haber") (collectively referred herein as the "Policymakers") failed to properly train, supervise, screen, discipline, transfer, counsel or otherwise control officers who are known, or who should have been known, to engage in the use of excessive force and/or deadly force, including those officers repeatedly accused of such acts. The Policymakers, specifically the Balch Springs City Council, Mayor Marshall and Chief of Police Haber had a duty, but failed to implement and/or enforce policies, practices and procedures for the BSPD that respected Jordan Edwards' constitutional rights to assistance and protection.  Defendant City of Balch Springs and its Policymakers, specifically the Balch Springs City Council, Mayor Marshall and Chief Haber's failure to adequately supervise and discipline Defendant Oliver, implement the necessary policies and the implementation of unconstitutional policies caused Jordan Edwards' unwarranted and excruciating physical and mental anguish and death.  Defendant Oliver consciously disregarded the rights of Plaintiff and Edwards, knowing that the Policymakers would approve and/or ratify his actions. It was not until the release of the bodycam footage that Chief of Police Haber's changed his defense of Defendant Oliver. Additionally, a Balch Springs police officer at the scene of the shooting also attempted to cover-up for Defendant Oliver's murder of Edwards. In other words, but for the release of the bodycam footage, the Policymakers and other officers would have stood in defense of Oliver.   For these

PLAINTIFFS'ORIGINAL COMPLAINT                                                              2

civil rights violations and other causes of action discussed herein, Plaintiff seeks answers and compensation for damages and the wrongful death of Jordan Edwards.

## II.

## PARTIES

3.   Plaintiff Odell Edwards is a person of the full age of majority and a resident of Dallas County Texas. Odell Edwards sues on behalf of himself and his minor sons, V.A. and K.E. and as the personal representative of the Estate of Jordan Edwards, deceased.

4.   Defendant Roy Oliver, is an individual who may be served at the Balch Springs Police Department at 12500 Elam Rd, Balch Springs, TX 75180 or wherever he may be found. He is being sued in his individual and official capacity as an employee of the Balch Springs Police Department.

5.   Defendant the City of Balch Springs, Texas is a municipality located in Dallas County, Texas. The City of Balch Springs operates the Balch Springs Police Department ("BSPD").  The City of Balch Springs funds and operates the BSPD, which, along with the Balch Springs City Council, the Balch Springs City Manager, Mayor Marshall and Chief Haber are responsible for the implementation of the police department's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.  The BSPD is also responsible for preventive, investigative, and enforcement services for all citizens of The City of Balch Springs. The City of Balch Springs may be served with citation herein by and through its agent for service of process, Cindy Gross, City Secretary, at 13503 Alexander Road, Balch Springs, Texas 75181 or wherever she may be found.  Additional service is being made on Mayor Carrie Marshall at 13503 Alexander Road, Balch Springs, Texas 75181.

PLAINTIFFS' ORIGINAL COMPLAINT                                                                 3

## III.

## JURISDICTION AND VENUE

6.      Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth Amendment of the United States Constitution and 42 U.S.C. §1983, to redress the deprivation of rights, privileges and immunities guaranteed to decedent Jordan Edwards, by constitutional and statutory provisions.  Plaintiff further invokes the supplemental jurisdiction of this court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the State of Texas.

7.      Venue is proper in this court because the causes of action occurred within the Northern District of Texas.

## IV.
## FACTS

8.      On Saturday April 29, 2017 at approximately 9:00 p.m., Jordan Edwards attended a party at a private residence located in Balch Springs, Texas. Edwards was accompanied by his two brothers and a couple of his friends, Maximus and Maximum Everett. The party was hosted by a friend and was attended by other teenagers, mostly African Americans and Hispanics. Once inside of the home, Edwards, his brothers and the Everett twins made their way to the backyard where they remained for the duration of the evening.

9.      The party involved music, dancing and socializing in a friendly environment and during the entirety of the evening, Edwards, his brothers and the Everett twins were not involved in any disputes nor were there any known altercations at the party. Due to the number of teenagers attending the party and the noise associated with such gathering, a neighbor allegedly

called police, worried about possible underage drinking. Despite reports of loud music and underage drinking, Edwards was not involved in the consumption of alcohol.

10.     At or about 11:00 p.m. someone announced to the crowd that police officers had been dispatched out to shut the party down and the crowd of minors began to quickly disperse. Since they were already outside, Edwards, his brothers and the Everett twins decided to avoid the crowd inside of the home and instead jumped over a fence where they were able to get to their vehicle much faster. The vehicle was parked on Baron Street at or near its intersection with Sheppard Street. Edward and his group met up with several of their friends once they reached the vehicle and exchanged farewells before they got in the car. The vehicle was driven by Edwards' stepbrother, V.A. and was also occupied by his biological brother, K.E.

11.     As V.A. attempted to drive off, he noticed a congestion of cars and police officers behind him.  The scene turned somewhat chaotic as V.A heard what he thought to be gun shots being fired. He immediately maneuvered out of his parking space in an attempt to escape the area where he thought the shooting came from. As he pulled forward, ahead of the officers, he heard someone shout "Stop the fucking car!" Before he could respond and/or react, Defendant Oliver began shooting into the vehicle with a rifle as they attempted to drive away.  The bullets entered the front side passenger door shattering the passenger side front window. One of the rounds struck Edwards in the head. The force of the shot was so great it caused Edwards to be thrown to his left side where he landed on the shoulder of V.A.

12.     Fearing for their lives, V.A. continued to drive down Sheppard Street and turned off at the next available side road a block away. V.A. then pulled over and called his father, Odell Edwards, and told him that his brother had been shot by police and they needed help. While V.A. was talking to his father, receiving instructions on what to do, a Balch Springs patrol

car with its sirens activated passed by them. A short time later several BSPD patrol cars surrounded them.

13.     V.A.  attempted to exit the car by opening the driver side door to alert the officers of Edwards' condition but the officers immediately instructed him not to get out of the vehicle. An officer shouted for him to roll down the window in which he fully complied. V.A. received a command to drop his phone out of the window and to open the door. He was instructed to step out of the car one leg at a time and face forward away from the officers. He was then told to move to his left but because he was so afraid after just witnessing his brother being shot in the head, he inadvertently moved to his right. An officer commented "this nigger doesn't know his fucking left from his right."  He was then instructed to walk backwards toward the officers.

14.     After walking a few feet as commanded, V.A. was grabbed, handcuffed and placed into the back of a patrol vehicle despite not committing a crime. The officers then shouted similar commands to the other occupants of the vehicle although they had not committed a penal offense.

15.      After everyone had exited the vehicle, medics were finally allowed to attend to Edwards. Edwards was placed inside a waiting ambulance where he was attended by two EMT's. V.A. was driven to a Dallas County Sherriff's facility. V.A. was ushered into a room within the office building and was told that his parents had been called.  When his parents arrived they were instructed he would have to remain there until a judge arrived.

16.     V.A. did not know why he had been placed under arrest.  He was not given any explanation and could not understand why he was being treated like a criminal, especially since Defendant Oliver had just shot and killed Edwards in cold blood.  At no time did the Officers tell the group of teenage boys why they were being harassed, detained and/or arrested.

PLAINTIFFS' ORIGINAL COMPLAINT                                                                    6

17.     In defense of Defendant Oliver and prior to conducting a complete and thorough investigation, Chief Haber initially reported that the car drove "aggressively" towards Oliver and another cop -- but he later said he misspoke after body camera footage showed the car was driving forward, away from the officers, not reversing toward them as he originally reported. The Balch Spring police officer who attempted to cover-up for Defendant Oliver did not retract his statement.

18.     Defendant Oliver shot Edwards in the head in plain view of his brothers, V.A. and K.E., with total disregard to the safety of others. Edwards, a passenger in the vehicle driven and occupied by his brothers, was simply leaving a party and had not committed a crime.  The murder of Edwards in the presence of V.A. and K.E. traumatized them and caused them to suffer severe emotional distress for which they continue to experience. V.A. and K.E. were harassed and detained during a period of time in which the officers should have been providing Edwards with medical attention.

19.     Defendant Oliver has a reputation for having a short fuse.  In fact, the Dallas County prosecutor's office previously filed a complaint regarding Oliver's aggressive behavior. The personnel records from the Balch Springs Police Department show Oliver was suspended for 16 hours in December 2013 after the Dallas County District Attorney's Office filed a complaint about his conduct when he was serving as a witness in a drunken-driving case.  Oliver was allowed to forfeit "sick days" in lieu of being off the streets and out of uniform for 16 hours.

20.     According to a news report by the Fort Worth Star-Telegram, the complaint from the prosecutor's office noted that the office had a hard time getting Oliver to attend the trial, he was angry he had to be there, he used vulgar language that was so bad it caused an assistant district attorney to send a female intern out of the room, and he used profanity during his

testimony.  At one point it got so bad, an assistant D.A. in the room with Defendant Oliver sent a text message to another D.A. in the courtroom advising Defendant Oliver was scaring them. While on the stand, the D.A. asked Defendant Oliver a question. Oliver responded with, "I don't understand the f---ing question."

21.     The personnel records also included a complaint whereby Defendant Oliver was reprimanded for being "disrespectful to a civilian on a call." That evaluation, dated January 27, 2017, called the reprimand an isolated incident and urged Oliver to be mindful of his leadership role in the department. On April 16, 2017, Defendant Oliver was involved in an automobile accident with Monique Arredondo ("Arredondo") at the intersection of 3100 S. Cockrell Hill Blvd. in Southwest Dallas.  Defendant Oliver was allegedly rear ended by Arredondo. Arredondo stated that Oliver got out of his Toyota Tundra and pulled out his hand gun.   Arredondo indicated she was afraid and asked that he put his gun away. Defendant Oliver refused, began to yell, became very upset, and never identified himself as an officer.  She then called the police because as far as she knew a man was holding her at gun point.  Although off-duty, Defendant Oliver exited his vehicle with his gun drawn and demanded that Ms. Arredondo respond to his demands.  Ms. Arredondo filed a complaint against Defendant Oliver for his violent behavior towards her.

22.     "In an email from a Dallas prosecutors he states Defendant Oliver was a 'scary person to have in our workroom,' " then-Balch Springs Police Chief Ed Morris wrote in the suspension findings. Finally, Defendant Oliver's violent temper, a fact Defendant City of Balch Springs was aware of or should have been aware of, led to the wrongful death of Edwards. Despite Defendant Oliver's conduct prior to Edwards' death, he remained a Balch Springs Police

officer and was not terminated despite his conduct and multiple violations of departmental policies.

23.     On the night Edwards was killed, Defendant Oliver had no probable cause or reasonable suspicion to believe that Edwards was or attempting to commit a crime.  In fact, when Defendant Oliver fired the deadly shots at the occupied vehicle, Edwards and his group were in front of Defendant Oliver and were attempting to leave.  On information made available to the Plaintiff by a number of witnesses, Edwards nor anyone in the vehicle had a gun in their hand nor were they attempting to cause bodily harm to Defendant Oliver or anyone else. Edwards or his group did not pose an immediate threat to the safety of Defendant Oliver or others, when Defendant Oliver fatally shot Edwards in the head for no lawful reason as he attempted to leave a party.

24.     As a result of Defendant Oliver's deadly and unlawful attack on Edwards, V.A. and K.E. sustained multiple injuries having to witness Edwards' painful and brutal death.

25.   The City of Balch Springs, the BSPD and the Policymakers knew of Defendant Oliver's erratic behavior and lack of training but did nothing to protect Edwards and others from the harm they suffered.

26.     Defendant, the City of Balch Springs has a longstanding record of not providing BSPD officers with adequate training and not preventing excessive force claims by Balch Springs Police officers.  The Balch Springs City Council and the City Manager of Balch Springs had in fact delegated policy-making authority to Chief Haber, giving him the responsibility for setting training policies and knew that there were training issues which resulted in the killing of Edwards.  As a result of the lack of training and the official custom or policies of the BSPD,

PLAINTIFFS'ORIGINAL COMPLAINT                                                                   9

Defendant Oliver's inadequate training resulted in the death of Edwards.  Despite the number of witnesses who indicated Defendant Oliver unlawfully shot Edwards, Chief Haber initially defended Defendant Oliver's unlawful conduct in a statement issued to the public.

27.     The BSPD failed to provide adequate training to Oliver in the use of deadly force.

28.     The BSPD failed to provide adequate training to Oliver on proper arrest and confrontation techniques.

29.     The BSPD failed to provide adequate training to Oliver on appropriate methods and techniques to control situations similar to the one created by Edwards on April 29, 2017.

30.     The defendants knew or should have known that the training provided to Oliver was inadequate or nonexistent.

31.     As made clear by at least four witnesses, Edwards posed no threat of imminent death or great bodily harm to Defendant Oliver or any other person in the immediate area while attempting to leave a party.  There is no evidence that Defendant Oliver or others reasonably feared for their lives.

32.     At the time Defendant Oliver drew his rifle, there had been no previous interaction between Edwards and Defendant Oliver, and at no time did Edwards resist in any way that would justify Defendant Oliver's use of deadly force.  The drawing of an Officer's weapon inherently assumes that the use of force will cause death or serious bodily injury to the suspect, and is to be applied under very narrowly defined circumstances.

33.     Defendant Oliver's unlawful and unwarranted acts, lack of training and the official customs or policies of the BSPD caused Edwards's wrongful death and the injuries suffered by Allen and Kevon.

34.     Plaintiff would show that at all times material hereto, Defendant Oliver was acting under the color of law when he shot and killed Edwards.

35.     Moreover, no reasonably competent official would have concluded that the actions of Defendant Oliver and the other Balch Springs police officers described herein would not violate Edwards' constitutional rights.  In other words, no reasonably prudent police officer under similar circumstances could have believed that Defendant Oliver's conduct was justified nor was the treatment of Edwards, V.A. and K.E., reasonable.

36.     There is no evidence that Defendant Oliver or anyone else were in danger of imminent death or great bodily harm.  There were no struggles that would indicate that the use of excessive and/or deadly force was justified.

37.     Edwards posed no risk to Oliver or any other person in the immediate area. Edwards did not attempt to harm Oliver and was not committing a crime or reasonably believed to have committed a crime when Oliver shot him in the head.

38.     Defendant Oliver's unlawful and unwarranted acts, lack of training and the official customs or policies of the BSPD caused Plaintiff's injuries.  As a direct and proximate result of the Defendants' conduct, Plaintiff has sustained substantial damages and pecuniary loss.

39.     Edwards was fifteen (15) years old when he was murdered by Defendant Oliver. Edwards was an honor student and a talented athlete.  He was very well liked and respected by his peers.  He was in good health, with a reasonable life expectancy of living at least 69 more

years to age 84.  Edwards had a promising career that was ended with his tragic death.  He leaves behind his parents and siblings.

40.    During his lifetime, Edwards was industrious and energetic and a good son. He performed numerous and usual tasks in and about the family residence and gave advice, counsel, comfort, care, and protection to his father and family. In all reasonable probability, he would have continued to do so. Edwards planned to attend college to pursue his lifelong dreams.

41.    Edwards' father has suffered pecuniary loss from the ***death*** of his son by virtue of the destruction of the parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support, and happiness. His father will suffer anguish, grief, and sorrow as a result of his son's ***death*** and is likely to continue to suffer for a long time in the future. For these losses, Plaintiff seeks damages in a sum in excess of the minimum jurisdictional limits of the court.

42.    Upon information and belief, the BSPD has not implemented policies and procedures to aggressively curtail death and/or injuries as a result of the improper use of deadly force and have not disciplined officers involved in a cover-up of a crime.

## EXCESSIVE FORCE BY DEFENDANTS (Individually and in his official capacity)

## COUNT 1-42U.S.C. § 1983

43.    Plaintiff incorporates by reference paragraphs 1 through 42 as if fully set forth herein. Plaintiff would show that Defendant Oliver's actions on the occasion in question were wrongful, malicious and reckless in depriving Edwards of his constitutional rights, as alleged more fully below.

PLAINTIFFS' ORIGINAL COMPLAINT                                                    12

44.     Plaintiff would show that at all times material hereto, Defendant Oliver had a duty to avoid infliction of unjustified bodily injury to Edwards, to protect his bodily integrity and to not trample on his constitutional rights.

45.     Plaintiff would show that Defendant Oliver failed to act as a reasonable officer would have acted in the same or similar circumstances.  That is, Defendant Oliver, without justification and the need to do so, used excessive and deadly force as described above and killed Edwards without legal justification.  Edwards never made any threatening gestures toward Defendant Oliver and did not pose an immediate threat to the safety of Defendant Oliver or others.

46.     Defendant Oliver was not provoked when he fired multiple shots from a rifle inside an occupied vehicle for no lawful or justifiable reason.  Edwards died as a result of the gunshot wound to his head.  The excessive and deadly force used by Defendants was not reasonable, justified nor was it necessary under the circumstances.

47.     Defendant Oliver's actions were not objectively reasonable because he followed a procedure designed to inflict excessive and deadly force in restraining individuals in a non-life threatening situation.

48.     Plaintiff would show that Defendant Oliver denied Edwards his right to be free from the use of excessive force in violation of the Fourth Amendment to the United States Constitution.

49.     The force used by Defendant Oliver was unnecessary, excessive and unreasonable under the circumstances, as Edwards did not pose an immediate threat to the safety of Defendant Oliver or others and the use of such excessive and deadly force was unnecessary. Defendant Oliver embarked on a willful, malicious, reckless and outrageous course of conduct

that was intended to cause and, in fact, caused Edwards to suffer extreme and severe mental and emotional distress, agony and anxiety.

50.　As a result of these Constitutional violations to Edwards and the injuries he sustained, Plaintiff seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## FAILURE TO TRAIN BY THE CITY OF BALCH SPRINGS
### COUNT II 42 U.S.C. § 1983

51.　Plaintiff incorporates regarding paragraphs 1 – 50 as if fully set forth herein. Prior to April 29, 2017, the Balch Springs Police Department knew or should have known that Defendant Oliver exhibited a pattern of escalating encounters with the public.

52.　Defendant Oliver and other officers at the scene of the shooting incident were acting under color of law and acting pursuant to customs, practices and policies of the City of Balch Springs and the BSPD in regards to the use of deadly force as authorized and/or ratified by the Policymakers, specifically the Balch Springs City Council, Mayor Marshall and Chief Haber. Edwards was deprived of rights and privileges secured to him by the United States Constitution and by other laws of the United States, by the City of Balch Springs failing to provide proper training, adequate supervision or discipline in dealing with individuals such as Edwards in violation of 42 U.S.C. §1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

53.　With respect to the claims made the basis of this lawsuit, the City of Balch Springs and the BSPD failed to adequately train its officers on how to deal with individuals during a raid of an event and the subsequent use of deadly force.  The failure to train its officers

PLAINTIFFS' ORIGINAL COMPLAINT　　　　　　　　　　　　　　　　　　　　14

in a relevant respect reflects a deliberate indifference to the City of Balch Springs, the Balch Springs City Council, Mayor Marshall and Chief Haber to the rights of the City's inhabitants and is actionable under 42 U.S.C. § 1983.

54.     Defendant the City of Balch Springs under the direction of the Balch Springs City Council, Mayor Marshall and Chief Haber developed and maintained a policy of deficient training of its police force in the use of force, including the proper use of deadly force and dealing with individuals during a raid of an event. The BSPD's training was designed and implemented by Chief Haber under the direction of the City Manager and/or the Balch Springs City Council, to act in this regard.

55.     The Balch Springs City Council, Mayor Marshall and Chief Haber's failure to provide adequate training to its officers on how to deal with individuals during a raid of an event and the subsequent use of deadly force reflect deliberate indifference by the Policymakers and reckless and conscious disregard for the obvious risk that officers would use excessive or deadly force on citizens and made the violations of Edwards' constitutional rights, including his death, a reasonable probability.

56.     Plaintiff would show that Defendant Oliver's actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures for which the city of Balch Springs, BSPD, and Chief of Police Haber under the direction of the Balch Springs City Council knew or should have known but never provided the requisite and proper training.

57.     On information and belief, Defendant the City of Balch Springs, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Edwards failed to implement and/or enforce the policies, procedures; and practices necessary to provide constitutionally adequate protection and

assistance to Edwards during his struggle to survive and implemented policies, procedures, and practices which actually interfered with or prevented with or prevented Edwards from receiving the protection, assistance and care he deserved.

58.     For instance, the following conduct, policies, and customs, *inter alia*, by Defendants violated Edwards' constitutional rights:

a. the City of Balch Springs and BSPD's failure to adequately train, supervise or discipline its officers who commit a wrongful act or attempt to cover-up a wrongful act of a fellow officer;

b. Defendants' policy on the proper use of deadly force;

c. Defendants' inadequate training on how to deal with individuals during a raid of an event;

d. Using deadly force against Edwards while seated in a vehicle;

e. Using deadly force against Edwards although he caused no immediate threat;

59.     In addition, Defendant City of Balch Springs and BSPD, as applicable, failed and refused to implement customs, policies, practices or procedures, and failed to train its personnel adequately on the appropriate policies, practices or procedures regarding the proper use of deadly force.  In so doing, Defendant City of Balch Springs knew that it was acting against the clear dictates of current law, and knew that as a direct consequence of their deliberate decisions, the very situation that occurred -- *i.e.*, Edwards' death-- in all reasonable probability would occur.

60.     The City of Balch Spring's failure to properly train and discipline its deputies was the proximate cause of the violations of Edwards' constitutional rights.

## UNLAWFUL SEIZURE OF A PERSON

## COUNT III

61.     V.A., a minor by and through Plaintiff, incorporates by reference paragraphs 1 through 60 as if fully set forth herein.

62.     Balch Springs Police officers, acting under color of law, unlawfully detained V.A. without probable cause, or reasonable suspicion that any violation or crime had been committed. Those actions violate V.A.'s rights to due process, to equal protection, give rise to plaintiff's claims pursuant to the Fourth Amendment to the Constitution of the United States and 42. U.S.C. § 1983, and their counterparts in the Texas Constitution.

63.     The City of Balch Springs violated V.A.'s constitutional rights. Those rights-to due process, equal protection, and not to be detained without probable cause or reasonable suspicion, among others-were clearly established at the time he was arrested and wrongfully detained. V.A. was ordered out of his vehicle and placed in handcuffs after witnessing his brother being shot in the head, despite not committing a penal offense or being suspected of committing a crime.

64.     V.A. did not pose an immediate threat to the safety of the defendants or others. He was not actively resisting arrest or attempting to evade arrest by flight. The officers' conduct was objectively unreasonable, resulted from a lack of training, and comported with The City of Balch Springs' illegal de facto policies.

65.     As a result, V.A. suffered an injury which resulted directly from his wrongful detention and/or seizure which was objectively unreasonable and violation of clearly established law.

PLAINTIFFS'ORIGINAL COMPLAINT                                        17

66.     The specific acts of the officers were objectively unreasonable and more particularly set forth below:

   a. The officers failed to use an objectively reasonable assessment of the facts when they chose to detain V.A. where there was no probable cause or reasonable suspicion that a crime had been committed or was about to be committed.

   b. The officers failed to provide V.A. with any medical attention despite the fact that he was suffering from witness the shooting of his brother and the officer's failure to release him and that choice was objectively unreasonable under the circumstances.

67.     The officers' conduct was well defined by law and they knew or should have known that the conduct was below the standard prescribed by law herein.

68.     As a result of the violations of the Constitutional standards set forth herein, V.A. was treated inhumanely and incurred extreme pain and injury when he was wrongfully detained for which he seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## BYSTANDER INJURY – ALL DEFENDANTS
### COUNT IV

69.     Minors, V.A. and K.E., by and through Plaintiff, incorporate by reference paragraphs 1 through 68 as if fully set out herein.

70.     V.A. and K.E. were within Defendant Oliver's line of fire when he fatally shot their brother, Jordan Edwards. They both saw Edwards suffer from the fatal gunshot wound to his head. As one might expect when brothers witness the brutal death of a sibling, V.A. and K.E. were traumatized and in shock. V.A. and K.E. were in the vehicle with Edwards as

he suffered from the gunshot wound. V.A. and K.E. have suffered direct personal injury in the form of mental anguish and severe emotional distress.

71.     As a direct and proximate result of the shooting of their brother in their presence, V.A. and K.E. seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## FAILURE TO ADEQUATELY SUPERVISE OR DISCIPLINE AND RATIFICATION CLAIM

### COUNT V

72.     Plaintiff incorporates by reference paragraphs 1 through 71 as if fully set forth herein.

73.     On Plaintiff's governmental liability claim against the City of Balch Springs for failing to supervise or discipline its officers for prior violations and the resulting lack of supervision:

      a.     the City of Balch Springs failed to adequately supervise and/or discipline its employees in handling usual and recurring situations with which they deal;

      b.     the City of Balch Springs was deliberately indifferent to the need to supervise and/or discipline its officers and/or employees adequately; and

      c.     the failure to adequately supervise and/or discipline its officers proximately caused the deprivation of Jordan Edwards' constitutional rights.

74.     As a direct and proximate result of the City of Balch Spring's failure to adequately supervise or discipline its officers, Plaintiff has suffered damages.

PLAINTIFFS' ORIGINAL COMPLAINT                                           19

## PUNITIVE/EXEMPLARY DAMAGES

75.     Plaintiff incorporates by reference paragraphs 1 through 74 as if fully set forth herein.  Additionally and in the alternative, the conduct of Defendant Oliver was done with malice.  As such, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future.  In the alternative, such heedless and reckless disregard of Edwards' rights, safety and welfare is more than momentary thoughtlessness, inadvertence or misjudgment.  Such unconscionable conduct goes beyond ordinary negligence, and as such Plaintiff requests punitive and exemplary damages are awarded against Defendant Oliver in a sum which is within the jurisdictional limits of this court.

## SURVIVAL ACTION

76.     Plaintiff incorporates by reference paragraphs 1 through 75 as if fully set forth herein.

77.     Plaintiff Odell Edwards is the Representative for the estate of Jordan Edwards.

78.     Edwards died as a result of the Defendants' wrongful conduct.

79.     Edwards would have been entitled to bring this action against the Defendants if he had lived.

80.     The decedent's right of action for the wrongful conduct against the Defendants survive in favor of heirs, legal representatives, and the estate of the deceased.

81.     Defendants are liable to Plaintiff for the loss of Edwards' life, pain and suffering, and the violation of his civil rights.  Plaintiff seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## WRONGFUL DEATH

82.     Plaintiff incorporates by reference paragraphs 1 through 81 as if fully set forth herein.

83.     By reason of Defendants Oliver's wrongful conduct of killing Edwards without the threat of imminent death or serious bodily harm, Defendants are liable for damages.

84.     Defendants Oliver's conduct that caused Edwards' death was a producing cause of Edwards' injury, which resulted in the following damages: loss of a family relationship, love, support, services, emotional pain and suffering, and for their acts and infliction of emotional distress caused by the wrongful killing of Edwards.

85.     Plaintiff seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## DAMAGES ALL DEFENDANTS

86.     Plaintiff incorporates by reference paragraphs 1 through 85 as if fully set forth herein.  Defendants' acts and/or omissions were a proximate cause of the following Injuries suffered by Plaintiff and decedent:

a. Actual damages;

b. Loss of affection, consortium, comfort, financial assistance, protection, affection and care;

c. Pain and suffering and mental anguish suffered by Edwards prior to his death;

d. Mental anguish and emotional distress suffered by Plaintiff;

e. Loss of quality of life;

f. Funeral and burial expenses;

g. Loss of service;

PLAINTIFFS' ORIGINAL COMPLAINT                                                     21

h. Loss of future earnings and contributions to Plaintiff;

i. Exemplary and punitive damages as well as costs of court;

j. Pursuant to 42 U.S.C. §1988, and other applicable laws, Plaintiff should

be awarded reasonable attorney's fees for the preparation and trial of this

cause of action, and for its appeal, if required;

k. Prejudgment interest; and

l. Post judgment interest.

87.     Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

## COSTS AND ATTORNEY FEES

88.     Plaintiff incorporates by reference paragraphs 1 through 87 as if fully set forth herein.  Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b).  As such, Plaintiff requests the Court to award costs and attorney fees incurred in Plaintiff's prosecution of this litigation.

## JOINT AND SEVERAL LIABILITY

89.     Plaintiff incorporates by reference paragraphs 1 through 88 as if fully set forth herein.  Plaintiff would show that the Defendants were jointly and severally liable for the gross negligence, which was the proximate cause of Plaintiff's injuries.

## **CONDITIONS PRECEDENT**

90.     Plaintiff reserves his rights to plead and prove the damages to which they are entitled to at the time of trial.  All conditions to Plaintiff's recovery have been performed or have occurred.

## **TRIAL BY JURY**

91     Plaintiff has paid a jury fee and demands trial by jury.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiff has and recovers judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiff is justly entitled.


Respectfully Submitted,


By:  /s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714
**WASHINGTON LAW FIRM, P.C.**
325 N. St. Paul St., Suite 3950
Dallas, Texas  75201
214 880-4883
214-751-6685 - fax
dwashington@dwashlawfirm.com

PLAINTIFFS'ORIGINAL COMPLAINT                                                      23

By:   /s/ Jasmine F. Crockett
**Jasmine F. Crockett**
Texas Bar No. 24055361
attorney@jasminecrockett.com
210 N. State Line Ave., Ste. 304
Texarkana, AR 71854
Tel. (469) 708-7379
Fax. (877) 561-2989

**ATTORNEYS FOR PLAINTIFF**