IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ODELL EDWARDS, Individually and as the Father of JORDAN EDWARDS, and on BEHALF OF MINORS, V.A. and K.E., and as Representative of the Estate of JORDAN EDWARDS, Deceased, | § § § § § § | |
| Plaintiff, | § | |
| | § | |
| SHAUNKEYIA KEYON STEPHENS, and RHONDA WASHINGTON, | § § | No. 3:17-cv-01208-M-BT |
| Intervenor Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| ROY OLIVER and THE CITY OF BALCH SPRINGS, TEXAS, | § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are three motions filed by Defendant the City of Balch Springs, Texas (the "City"): (1) the City's Rule 12(b)(6) Motion to Dismiss Plaintiff Odell Edwards's Fourth Amended Complaint (ECF No. 132); (2) the City's Rule 12(b)(6) Motion to Dismiss Intervenor Plaintiff Shaunkeyia Stephens's Third Amended Complaint (ECF No. 135); and (3) the City's Rule 12(b)(6) Motion to Dismiss Intervenor Plaintiff Rhonda Washington's Second Amended Complaint (ECF No. 137). For the reasons stated, the District Court should GRANT Defendant's Motions, but DENY Defendant's request to recover costs under 42 U.S.C. § 1988.

1

# Background

This is a civil rights action brought under 42 U.S.C. § 1983 to recover damages arising out of the shooting death of Jordan Edwards by former City police officer Defendant Roy Oliver. In their live pleadings, Plaintiff and Intervenor Plaintiffs (together, "Plaintiffs") allege that:

> On April 29, 2017, Jordan Edwards, his brothers V.A. and K.E., and the Everett twins—M.E. and M.E.—attended a house party in Balch Springs, Texas. At around 11:00 p.m., police officers arrived to shut down the party. The crowd quickly dispersed. M.E., M.E., V.A., K.E., and Edwards went to their car parked on Baron Drive to leave the party. V.A. drove the car, and M.E., M.E., K.E., and Edwards rode as passengers. V.A. was unable to drive away because several cars blocked Baron Drive. After hearing what he thought to be gun fire, V.A. put the car in reverse and backed toward Shepherd Lane, when a voice yelled at him to, "Stop the fucking car!" V.A. stopped the car at the intersection of Baron Drive and Shepherd Lane and then proceeded forward on Shepherd Lane. V.A. was driving away from City police officers Tyler Gross and Defendant Oliver when Oliver fired five shots from his assault rifle at the car as it drove away. The bullets struck the car in multiple places, shattering the passenger side front window and the rocker panel on the passenger side. One bullet struck Edwards in the head and killed him. V.A. continued to drive southbound on Shepherd Lane and turned onto Bishop Drive, where he stopped to call his father, Plaintiff Odell Edwards, and check on Jordan Edwards. Balch Springs Police Department ("BSPD") Officer Jeremy Chamblee arrived and ordered the boys out of the car; they pleaded with Chamblee to provide medical assistance to Edwards. V.A. attempted to get out of the car but was ordered "to step out of the car one leg at a time and face forward away from the officers." After walking a few feet as commanded, V.A. was grabbed, handcuffed, and placed into the back of a patrol car, where he would remain for over two hours. The officers shouted and pointed their

> guns at V.A., K.E., M.E., and M.E. Defendant Oliver also shouted at them, though they complied with the officers' orders. After everyone got out of the car, EMS personnel were dispatched; they arrived approximately 15 minutes later to attend to Edwards. V.A., K.E., M.E., and M.E. were arrested but were not told why.

Edwards Fourth Am. Compl. 4-7 (ECF No. 123); Stephens Third Am. Compl. 3-6 (ECF No. 134); Washington Sec. Am. Compl. 4-6 (ECF No. 127).

Jordan Edwards died from the gunshot wound to his head, and Plaintiff Odell Edwards, Jordan Edwards's father and the father of V.A., and K.E.; Intervenor Plaintiff Shaunkeyia Stephens, Jordan Edwards's mother; and Intervenor Plaintiff Rhonda Washington, the Everett twins' mother, filed separate Complaints against the City of Balch Springs and Roy Oliver. With respect to the City, Plaintiffs assert claims under § 1983 for failure to train its officers on the appropriate use of force and for failure to supervise and discipline its officers regarding use of force. Plaintiff Odell Edwards brings claims on his own behalf, as well as on behalf of Jordan Edwards's estate and on behalf of his minor children V.A. and K.E. Edwards Fourth Am. Compl. 18-24. Intervenor Plaintiff Stephens brings claims individually. Compl. 16-20. Intervenor Plaintiff Rhonda Washington brings claims on her own behalf and as next friend of her children, M.E. and M.E. Washington Sec. Am. Compl. 16-20.

The City filed three motions to dismiss Plaintiffs' claims against it for failure to state a claim. Def.'s Mot. Edwards (ECF No. 132); Def.'s Mot. Stephens (ECF No.

135); Def.'s Mot. Washington (ECF No. 137). All three motions are fully briefed and ripe for determination.

## Legal Standard

When deciding a 12(b)(6) motion for failure to state a claim, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks and citation omitted). To survive Defendant's Rule 12(b)(6) Motion to Dismiss, therefore, Plaintiffs' Complaints must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does not require "'detailed factual allegations,'" but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts

do not permit the Court to infer more than the mere possibility of misconduct, the Complaint has stopped short of showing that Plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

Heightened pleading requirements for § 1983 claims are "impossible to square . . . with the liberal system of 'notice pleading' set up by the Federal Rules." *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *see also Davidson v. AT&T Mobility, LLC*, 2018 WL 1407283, at *6 (N.D. Tex. Mar. 21, 2018). However, *Leatherman's* prohibition on imposing "a heightened pleading standard that exceeds the requirements of rule 8(a)," does not mean that § 1983 claims are entitled to a more relaxed standard than Rule 8(a) requires. *Davidson,* 2018 WL 1407283, at *6. Section 1983 claims must satisfy the current Rule 8(a) standard and "'state a claim of relief that is plausible on its face.'" *Id.*; *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570; *see also Speck v. Wiginton*, 606 F. App'x 733, 735-36 (5th Cir. 2015) (per curiam) ("Speck first contends that the district court applied a heightened pleading standard for civil rights cases contrary to *Leatherman* . . . . But the district court correctly stated that the proper standard was Rule 8 as interpreted by *Twombly* . . . and *Iqbal* . . . .").

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citation omitted). However, the pleadings, for the purpose of determining a Rule 12(b)(6) motion, include documents attached to the pleadings and to the motion to dismiss so long as they "are referred to in the plaintiff's complaint and are central to her

claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

## Analysis

The Court first addresses Plaintiffs' claims for § 1983 municipal liability, generally, before turning to their failure-to-train and failure-to-supervise theories of municipal liability, claims for individual damages, and "bystander claims." Because the Court understands any claim against the Balch Springs Police Department to be a claim against the City of Balch Springs, no dismissal of the BSPD for lack of jural existence is necessary.  Edwards Resp. 22 (ECF No. 148) ("Plaintiffs have not named the BSPD as an independent defendant.").

## I.      § 1983 Municipal Liability

Defendant asserts that Plaintiffs' Complaints fail to state a claim for municipal liability because they contain no specific factual pleading to support an inference "of a direct causal link between the alleged policy and the violation," "of deliberate indifference by a City policymaker," or "that any alleged unconstitutional policy, practice or custom was promulgated or ratified by a policymaker." Def.'s Br. Supp. Edwards 5-6 (ECF No. 131); Def.'s Br. Supp. Stephens 5-6 (ECF No. 136); Def.'s Br. Supp. Washington 5 (ECF No. 138). Plaintiffs assert that their Complaints sufficiently identify a policymaker; identify the customs, practices, and policies at issue; and allege that those customs, practices, and policies were the "moving force" behind the constitutional violations

at issue. Edwards Resp. 12-13; Stephens Resp. 11-13 (ECF No. 153); Washington Resp. 11-13 (ECF No. 150). The Court finds that Plaintiffs have not sufficiently alleged the City had an unconstitutional policy or custom to state a claim for municipal liability under § 1983.

While § 1983 claims may be brought against municipalities "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," municipalities cannot be held liable solely for employing a tortfeasor; that is, they "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). To establish a claim for municipal liability under § 1983, "a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citing *Monell,* 436 U.S. at 691). "A plaintiff must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.'" *Id.* at 541-42. (citing *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002)). "[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001) (citing *Bennett v. City of Slidell,* 728 F.2d 762, 768 n.3 (5th Cir. 1984); *McKee v. City of Rockwall,* 877 F.2d 409, 415 (5th Cir. 1989))

(footnote omitted). With respect to the first prong, a plaintiff can prove that an official policy exists by offering proof of:

> (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents a municipal policy.

*Burge v. Saint Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003) (quoting *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir. 1984) (per curiam)); *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) ("Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.") (citations omitted). Under the second prong, the policymaker possessing actual or constructive knowledge must have "the responsibility for making law or setting policy in any given area of a local government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988); *see also Valle*, 613 F.3d at 542. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Last, under the third prong, a plaintiff must establish that "the municipal action was taken with the requisite degree of culpability and . . .

demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs*, 520 U.S. at 404.

Here, though Plaintiffs state that "Defendant Oliver and other officers at the scene of the shooting incident were . . . acting pursuant to customs, practices and policies of the City of Balch Springs and the BSPD in regards to the use of deadly force as authorized and/or ratified by the Balch Springs City Council, Mayor Marshall, and Chief Haber," they fail to allege facts to support that the City had a widespread practice that amounted to a municipal policy. Edwards Fourth Am. Compl. 19; Stephens Third Am. Compl. 16; Washington Sec. Am. Compl. 16. Plaintiffs do not allege the City promulgated an official policy that was inadequate. Rather, they appear to rely on the second basis for establishing a municipal policy. That is that the City had "a persistent, widespread practice . . . which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents a municipal policy." *Burge*, 336 F.3d at 369. Plaintiffs allege that the City's absence of a deadly-force policy constitutes a persistent, widespread practice. Specifically, Plaintiffs plead that the City "failed and refused to implement customs, policies, practices, or procedures, . . . regarding the proper use of deadly force," and that in failing to discipline its officers, the City ratified and encouraged "violent, aggressive, and excessive force," so that "[t]he actual practice or custom of BSPD regarding the use of excessive and/or deadly force was to shoot first and ask questions later." Edwards Fourth

Am. Compl. 19-21; Stephens Third Am. Compl. 17-18; Washington Sec. Am. Compl. 17-19.

Plaintiffs support their claim that the City had a "shoot first" policy by cataloguing incidents of Oliver's alleged misconduct and purported unfitness for the job, stating "Defendant Oliver was allowed to violate multiple policies without any adequate consequences." Edwards Fourth Am. Compl. 14; Stephens Third Am. Compl. 12; Washington Sec. Am. Compl. 12. Plaintiffs assert that: "Oliver's overall screening results suggested that he was not fit to serve"; "the Dallas County prosecutor's office filed a complaint regarding Defendant Oliver's aggressive behavior in a court proceeding" for which the BSPD suspended him for 16 hours; he used vulgar language in the courtroom; he exerted excessive force against a civilian on a call; he posted language on social media demonstrating his "propensity to kill"; and, two weeks before the shooting death of Jordan Edwards, he brandished his gun during an off-duty encounter with  a woman who allegedly rear-ended him. Edwards Fourth Am. Compl. 8-10; Stephens Third Am. Compl. 7-9; Washington Sec. Am. Compl. 7-8. Plaintiffs contend Oliver was not adequately disciplined because he "was not terminated although he violated departmental policies on multiple occasions." Edwards Fourth Am. Compl. 11; Stephens Third Am. Compl. 9; Washington Sec. Am. Compl. 9.

Plaintiffs also allege that other Balch Springs police officers had a history of violent conduct and cite two incidents—one in which a "Balch Springs officer used a taser on an African American male even though he was clearly restrained by

handcuffs," and another in which a Balch Springs officer arrested a man, who allegedly caused a disturbance in an apartment, and tased him to death though he complied with the officer's instructions. Edwards Fourth Am. Compl. 11; Stephens Third Am. Compl. 9-10; Washington Sec. Am. Compl. 9. Plaintiff Washington includes a third instance in which Balch Springs Police Officer Pedro Gonzales allegedly entered a home without a warrant and shot at a dog. Washington Sec. Am. Compl. 9.

However, "[w]here prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (per curiam)). Demonstrating "[a] pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Peterson*, 588 F.3d at 851 (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills,* 406 F.3d 375, 383 (5th Cir. 2005)). That Oliver may have engaged in aggressive conduct with minimal reprimand does not sufficiently support Plaintiffs' allegation that Balch Springs Police Department has a persistent and widespread municipal policy of using excessive force. And although Plaintiffs include instances of alleged misconduct by other officers, those instances are too factually dissimilar to support the inference of a custom that fairly represents a

municipal policy. *See Livezey v. City of Malakoff*, 657 F. App'x 274, 278 (5th Cir. 2016) (per curiam) ("The events are dissimilar enough not to establish a pattern of violations by Fierro."). Even when taken as true, as the legal standard at this pleading stage requires, the two instances of excessive tasing do not support the contention that the City has a "shoot first and ask questions later" policy. Further, Plaintiff Washington's warrantless-search and shooting-at-an-animal example is also not factually similar enough to establish a pattern.

Plaintiffs also fail to sufficiently allege a pattern of failures to discipline indicating that the City ratified its "shoot first" policy via inaction. Though the two tasing instances are factually dissimilar to the facts of this case, the unnamed officer responsible for tasing Marco Stephenson is the only employee,[1] other than Oliver, that all Plaintiffs allege the City failed to discipline for misconduct. Edwards Fourth Am. Compl. 11; Stephens Third Am. Compl. 10; Washington Sec. Am. Compl. 9. Plaintiffs do not allege that the City failed to discipline the Balch Springs officer responsible for tasing Eric Ricks to death. Edwards Fourth Am. Compl. 11; Stephens Third Am. Compl. 10; Washington Sec. Am. Compl. 9. In fact, the only instance that Plaintiffs allege with more similar facts—Sergeant James Young's alleged November 2013 shooting of an "unarmed black man in a car he suspected of stealing from a Dollar Tree store"—includes no assertion that the City failed to discipline Young for improper conduct. Edwards Fourth Am. Compl. 13-14;

---

[1] Plaintiff Washington alone raises the warrantless-search and shooting-at-an-animal example, and she indicates that the City suspended Officer Gonzales for one day without pay as a result of that incident. Washington Sec. Am. Compl. 9.

Stephens Third Am. Compl. 12; Washington Sec. Am. Compl. 11-12. Accordingly, the Court finds that Plaintiffs have failed to state a claim for municipal liability against the City because they have not adequately alleged that the City had a municipal policy by which their federal rights were violated.

## II.    Failure to Train and Supervise

Defendant moves to dismiss Plaintiffs' § 1983 failure-to-train and failure-to-supervise municipal-liability claims on grounds that Plaintiffs failed to "establish what training allegedly should have been provided or . . . was allegedly defective" and insufficiently pleaded "an inference of deliberate indifference by a policymaking official." Def.'s Br. Supp. Edwards 8, 11; Def.'s Br. Supp. Stephens 8, 11; Def.'s Br. Supp. Washington 8, 11. Plaintiffs respond that "[a] failure to train officers with deliberate indifference to citizens' constitutional rights constitutes a policy or custom for the purposes of municipal liability," and cite the same instances of Oliver's and other officers' alleged misconduct referenced in section I. Edwards Resp. 14-15; Stephens Resp. 13-14; Washington Resp. 13-14. Plaintiffs contend that those incidents demonstrate the City's failure to train. Plaintiffs further assert that "deliberate indifference generally requires more than just a single instance that causes a constitutional violation—rather, there needs to be some pattern of similar violations." Edwards Resp. 13-14; *see* Stephens Resp. 12; Washington Resp. 12. They maintain that the incidents they have pleaded "certainly satisfy[y] [their] pleading requirements at this stage of the proceedings." Edwards Resp. 15; Stephens Resp. 14; Washington Resp. 13-14. The Court finds

that Plaintiffs fail to state a claim for municipal liability based on a failure to train or supervise theory.

"The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Peterson*, 588 F.3d at 849 (citing *Brown v. Bryan Cty.,* 219 F.3d 450, 458 (5th Cir. 2000)). To bring a failure-to-train claim, "the plaintiffs must show: (1) the City's 'training policy or procedure was inadequate'; (2) 'the inadequate training policy was a "moving force" in causing a violation of the [plaintiffs'] rights'; and (3) the City 'was deliberately indifferent in adopting its training policy.'" *Livezey*, 657 F. App'x at 278 (quoting *Valle*, 613 F.3d at 544).

Here, Plaintiffs allege "the City, the BSPD, and Chief Haber failed to adequately train its officers on how to deal with individuals, specifically teenagers, during a raid of an event and the subsequent use of deadly force." Edwards Fourth Am. Compl. 19; Stephens Third Am. Compl. 16-17; Washington Sec. Am. Compl. 17. More particularly, Plaintiffs assert "Defendant the City of Balch Springs under the direction of the Balch Springs City Council and Chief Haber maintained a policy of deficient training of its police force in the use of force, including the proper use of deadly force and dealing with individuals during a raid of an event," such that "[t]he actual custom or practice of the BSPD regarding the use of excessive and/or deadly force was to shoot first and ask questions later." Edwards Fourth Am. Compl. 19-20; Stephens Third Am. Compl. 17; Washington Sec. Am. Compl. 17. But

14

"for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (citing *Benavides v. Cty. of Wilson,* 955 F.2d 968, 973 (5th Cir. 1992)). Plaintiffs make only conclusory allegations that Defendant's training policies or procedures were inadequate and point to no specific policy. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . ."). Moreover, even if Plaintiffs had pointed to a specific policy, they allege no facts indicating that the City was deliberately indifferent in adopting that policy. *See City of Canton v. Harris,* 489 U.S. 378, 388 (1989) ("We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of a person with whom the police come into contact."). Plaintiffs assert in their responses that the City's decision to hire Oliver represents deliberate indifference because they contend that his pre-employment materials revealed he was unfit for the job. Edwards Resp. 18; Stephens Resp. 17; Washington Resp. 16-17. But the City's decision to hire Oliver does not appear to fulfill any element of a failure-to-train or supervise claim. Rather, "inadequate screening" constitutes a separate theory of liability, which could conceivably represent an official policy for the purpose of establishing municipal liability generally. However, Plaintiffs do not maintain that the City had an unconstitutional official, or unofficial, hiring policy, and the Supreme Court has rejected utilizing the single-incident exception in the

inadequate-screening context. *See Bd. of Cty. Comm'rs,* 520 U.S. at 410-11 ("The fact that inadequate scrutiny of an applicant's background would make a violation of rights more *likely* cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation." (emphasis in original)). Instead, Plaintiffs' claim for general municipal liability fails on other grounds detailed above.  Plaintiffs do not bring a negligent hiring claim against the City. *See* Edwards Fourth Am. Compl.; Stephens Third Am. Compl.; Washington Sec. Am. Compl.

Nonetheless, Plaintiffs further assert that they do not need to establish a pattern of failures to train because "Plaintiffs' allegation of failure to train is sufficient under the single incident exception." Edwards Resp. 15; Stephens Resp. 14; Washington Resp. 14. "A narrow single-incident exception [to § 1983 municipal liability] exists only 'where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train.'" *Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018) (per curiam) (quoting *Burge,* 336 F.3d at 373). This exception, however, "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018). The Fifth Circuit previously found the single-incident exception satisfied "where a reserve deputy, with '*no training*' from the police department applied excessive force during a single car chase." *Id.* (quoting *Brown*, 219 F.3d at 453-54, 462) (alteration in original). The

*Peña* court found the complaint before it could not satisfy the single-incident exception because it acknowledged "that Solis and Salinas received taser training from other officers." *Id.* In this case, Plaintiffs state that Oliver "received training from Sergeant James Young." Edwards Fourth Am. Compl. 13-14; Stephens Third Am. Compl. 12; Washington Sec. Am. Compl. 11-12. Because "there is a difference between a *complete failure to train*[ ] . . . and a failure to train in one limited area," Plaintiffs failure-to-train allegations are insufficient under the single-incident exception. *Peña*, 879 F.3d at 624 (alterations in original) (internal quotation marks and citation omitted); *see also Estate of Davis ex rel. McCully*, 406 F.3d at 386 ("In contrast, here, there *was* training and Plaintiffs have not shown that those training sessions were so deficient as to constitute deliberate indifference." (emphasis in original)). Thus, the Court finds that Plaintiffs fail to state a claim for municipal liability on a failure-to-train theory.

Similarly, for municipal liability to rest on a failure-to-supervise theory, "the plaintiffs must show that '(1) the supervisor . . . failed to supervise . . . the subordinate official; (2) a causal link exists between the failure to . . . supervise and the violation of the plaintiff's rights; and (3) the failure to . . . supervise amounts to deliberate indifference.'" *Livezey*, 657 F. App'x at 278 (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998)). "'Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes

deliberate indifference.'" *Id.* (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001)).

Plaintiffs maintain "the City of Balch Springs and Chief Haber failed to adequately supervise and/or discipline its employees in handling usual and recurring situations with which they deal; the Balch Springs City Council was deliberately indifferent to the need to supervise and/or discipline its officers and/or employees adequately; and the failure to adequately supervise and/or discipline its officers proximately caused the deprivation of Edwards, V.A., and K.E.'s constitutional rights." Edwards Fourth Am. Compl. 22; Stephens Third Am. Compl. 19; Washington Sec. Am. Compl. 19-20. As proof of other instances, Plaintiffs further allege "the City of Balch Springs and Chief Haber failed to adequately supervise and/or discipline Defendant Oliver for pointing his gun at a car full of females after a minor fender bender." Edwards Fourth Am. Compl. 22; Stephens Third Am. Compl. 19; Washington Sec. Am. Compl. 20.  In particular, Plaintiffs assert that "[h]ad the City's Policymakers terminated Defendant Oliver for pulling out his pistol and pointing it at a car occupied by women and children, Edwards would be alive today," and "M.E. and M.E.'s constitutional rights would not have been violated." Edwards Fourth Am. Compl. 22; Stephens Third Am. Compl. 19; Washington Sec. Am. Compl. 20. However, Plaintiffs fail to plead facts to support that any purported failure to supervise or discipline amounted to deliberate indifference. Deliberate indifference is a heightened standard requiring more than "[a] showing of simple or even heightened negligence." *Bd. of Cty.*

*Comm'rs*, 520 U.S. at 407. It "require[es] proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 410. "A pattern of similar constitutional violations by [unsupervised] employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to [supervise]." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citing *Bd. of Cty. Comm'rs*, 520 U.S. at 409). Though Plaintiffs assert that the "Balch Springs City Council was deliberately indifferent," they offer no facts to support a pattern of similar constitutional violations resulting from a failure to supervise, and they fail to sufficiently plead a pattern of failures to discipline as discussed in section I together with general municipal liability.

But Plaintiffs "seem[ ] to assert that this single incident of the City's alleged failure to discipline [or supervise] . . . is sufficient to infer a policy or custom of such conduct." *Ling v. City of Garland*, 2007 WL 9712236, at *5 (N.D. Tex. Feb. 23, 2007). In *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), "the Fifth Circuit permitted a jury to find a municipal policy after hearing evidence describing a single day of egregious events and the subsequent failure to discipline those officers involved." *Tarver v. City of Edna*, 2006 WL 3053409, at *8 (S.D. Tex. Oct. 26, 2006) (citing *Grandstaff*, 767 F.2d at 171-72). The Fifth Circuit later summarized *Grandstaff* as having affirmed a judgment against a Texas city on "a highly peculiar set of facts:"

> [I]n response to a minor traffic violation, three patrol cars engaged in a high speed chase during which they fired wildly at the suspected misdemeanant; the object of

> this chase took refuge on an innocent person's ranch, where the entire night shift of the city police force converged and proceeded to direct hails of gunfire at anything that moved; although nobody except the police was ever shown to have fired a shot, the innocent rancher was killed when the police shot him in the back as he was emerging from his own vehicle; after this "incompetent and catastrophic performance," . . . which involved a whole series of abusive acts, the officers' supervisors "denied their failures and concerned themselves only with unworthy, if not despicable, means to avoid legal liability."

*Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986) (quoting *Grandstaff*, 767 F.2d at 166, 171). However, "[s]ubsequent Fifth Circuit cases emphasize that the rationale presented in *Grandstaff* may only be applied to cases with equally extreme factual circumstances." *Tarver*, 2006 WL 3053409, at *8 (citing *Ledbetter*, 780 F.2d at 1161-62; *Stokes v. Bullins*, 844 F.2d 269, 274 n.8 (5th Cir. 1988); *Snyder v. Trepagnier*, 142 F.3d 791, 797-98 (5th Cir. 1998)). In cases that do not have comparably extreme facts, "the Fifth Circuit does not permit an inference of an unconstitutional custom or policy from a municipality's failure to discipline an officer for a single incident." *Id.* (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278-79 (5th Cir. 1992)); *see also Ling*, 2007 WL 9712236, at *5.

Here, the Court finds that Plaintiff has not pleaded facts that are so extreme as to permit an inference of an unconstitutional policy from a single incident of the City's alleged failure to discipline, particularly in light of the fact that the City ultimately disciplined Oliver by terminating him. *See* Def.'s Answer 4 (ECF No. 133); *Ling*, 2007 WL 9712236, at *5 ("Although Officer Shaw had a history of prior

misconduct and excessive force, and Officers Shaw, Mott, and Banda were later given a more severe punishment, the failure on the part of Chief Bates and the internal affairs department to dole out a more severe punishment after their initial investigation cannot be said to be as extreme as the supervisors' conduct in *Grandstaff*, who not only failed to discipline their subordinates, but blatantly defended actions that resulted in the death of an innocent bystander."). Because "'these requirements [for imposing municipal liability] must not be diluted, for "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability,"'" the Court finds that Plaintiffs fail to state a failure-to-supervise or discipline claim for municipal liability against the City. *Shumpert v. City of Tupelo*, 905 F.3d 310, 316-17 (5th Cir. 2018) (quoting *Snyder*, 142 F.3d at 796 (quoting *Bd. of Cty. Comm'rs*, 520 U.S. at 415)).

### III.   Individual Damages Under § 1983

Defendant the City moves to dismiss Plaintiffs' "individual damage claims," asserting that "[t]he right to bring a claim under 42 U.S.C. § 1983 is a personal right which does not accrue to a relative of the deceased." Def.'s Br. Supp. Edwards 3; Def.'s Br. Supp. Stephens 3; Def.'s Br. Supp. Washington 4. Plaintiff Edwards responds to the City's argument that "[t]here is no individual cause of action to recover damages based upon the alleged deprivation of the Constitutional rights of another," by arguing "Jordan's brothers are entitled to bring a bystander claim"; "Jordan's brothers bring their own excessive force claims"; and Jordan's father can

"recover damages for loss of the parent-child relationship." Edwards Resp. 19-20. Plaintiff Stephens also responds that she is entitled "to recover damages for loss of the parent-child relationship." Stephens Resp. 7. Plaintiff Washington asserts that she is entitled to bring an "individual damage claim" on behalf of her sons, M.E. and M.E., to recover past and future medical expenses incurred as a result of their psychological treatment.[2] Washington Resp. 7. Plaintiffs' responses do not specifically address any individual damage claim separate from a state-law wrongful death or a "bystander claim." Their Complaints, however, appear to assert individual claims for damages under § 1983. Plaintiff Edwards's Complaint states that he "seeks compensation, individually, and as the Next Friend of minors V.A. and K.E. and as the personal representative on behalf of the Estate of Jordan Edwards" for violations of Jordan, V.A., and K.E.'s constitutional rights. Edwards Fourth Am. Compl. 21. Plaintiff Stephens's Complaint also seeks "compensation individually," for violations of Jordan's constitutional rights. Stephens Third Am. Compl. 18-19. And Plaintiff Washington's Complaint states, "As a result of these Constitutional violations to M.E. and M.E. and the injuries they sustained, [Plaintiff Washington] seeks compensation, individually, and as the Next Friend of minors M.E. and M.E." Wash. Sec. Am. Compl. 19. Because the Court finds that Plaintiffs fail to state a claim for municipal liability against the City on any theory,

---

[2] While Washington asserts an "individual damage claim," she does not bring a "false arrest/unlawful detention claim against The city in [her] Second Amended Complaint." Washington Resp. 18.

the Court does not reach the issue of individual damages under § 1983 against the City.

However, Plaintiffs Edwards and Stephens assert that they are "entitled to recover loss of consortium damages for the death of [their] child." Edwards Resp. 19; *see* Stephens Resp. 7-8. Because the assertion appears under the "VI. Damages" heading in Plaintiffs' Complaints, and not under "V. Causes of Action," the Court construes any loss-of-consortium claim as a claim for damages under § 1983. Edwards Fourth Am. Compl. 23; Stephens Third Am. Compl. 20. The Fifth Circuit has "consistently held that a parent may recover damages analogous to state law wrongful death damages in a § 1983 action based on the violation of her child's civil rights." *Flores v. Cameron Cty.*, 92 F.3d 258, 271 (5th Cir. 1996) (citing *Rhyne v. Henderson Cty.,* 973 F.2d 386, 391 (5th Cir. 1992)). Thus, had Plaintiffs successfully stated a § 1983-municipal-liability claim against the City, they could be entitled to damages analogous to state-law wrongful death damages for the violation of their child's civil rights. That is, the possibility of recovering such damages would not be legally foreclosed, contrary to Defendant's assertion. *See* Def.'s Br. Supp. Edwards 4; Def.'s Br. Supp. Stephens 4. However, because the Court determines that Plaintiffs fail to state a § 1983 claim against the City on any theory, the Court pretermits the issue of individual damages under § 1983 against the City.

## IV.   "Bystander" and State-law Claims

Defendant the City next moves to dismiss Plaintiffs' "bystander claims," maintaining that "[o]ne who merely witnesses police action directed to another may not recover damages for such action . . . regardless of the proximity of the bystander." Def.'s Br. Supp. Edwards 3-4; Def.'s Br. Supp. Stephens 3-4; Def.'s Br. Supp. Washington 4. Specifically, the City's Motion is "directed toward any claims of the minor plaintiffs V.A. and K.E. which are based upon the alleged deprivation of the Constitutional rights of the deceased." Def.'s Reply Edwards 2 (ECF No. 149). In his response, Plaintiff Edwards asserts that "Jordan's brothers are entitled to bring a bystander claim based on having witnessed the fatal shooting of Jordan," and cites *Edinburg Hospital Authority v. Treviño*, 941 S.W.2d 76, 80 (Tex. 1997). Edwards Resp. 19. Plaintiff Stephens and Washington do not address any bystander claim in their responses, nor do they assert bystander claims in their Complaints. In Plaintiff Edwards's Complaint, however, he asserts bystander claims on behalf of both V.A. and K.E. Edwards Fourth Am. Compl. 23-24. Because Plaintiff Edwards includes his bystander claims under the heading "VI. Damages" and not "V. Causes of Action," the Court construes his "bystander claims" as claims for damages under § 1983 and not as separate state-law causes of action.[3]

---

[3] Defendant the City also apparently did not construe Plaintiff's claims as separate state-law tort claims; otherwise, it undoubtedly would have raised an immunity defense. *See Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 389 (Tex. App.—Fort Worth 2008, no pet.) (citing Tex. Civ. Prac. & Rem. Code § 101.0215(a), (b)) ("A municipality is liable for torts arising from the exercise of its proprietary functions, but it is generally immune from suit and liability for torts arising from the exercise of its governmental functions, except for the limited waiver provided by the Texas Tort Claims Act."); *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994).

"Section 1983 imposes liability for violation of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan,* 443 U.S. 137, 146 (1979). "Negligent infliction of emotional distress is a state common law tort; there is no constitutional right to be free from witnessing . . . police action." *Grandstaff*, 767 F.2d at 172. Thus, federal law does not recognize a § 1983 "bystander" claim. *See id.* ("We conclude that, under Texas law, this recovery [for emotional injuries suffered as bystanders] is proper against the officers, but that it is not permitted under § 1983 and may not therefore be recovered from the City."). Because there is no cognizable "bystander" claim under § 1983, and because Plaintiff Edwards fails to state a § 1983-municipal-liability claim against the City, the Court finds that he is not entitled to damages on that basis.

Similarly, in his Complaint under the heading "VI. Damages," Plaintiff Edwards includes the subheading "Estate of Jordan Edwards (Survival Claim; Tex. Civ. Prac. & Rem. Code § 71.021)," and under that same heading, both Plaintiff Edwards and Stephens include the subheading "(as wrongful death beneficiary of Jordan Edwards; Tex. Civ. Prac. & Rem. Code § 71.004)." Edwards Fourth Am. Compl. 23; Stephens Third Am. Compl. 20. Like Plaintiff Edwards's bystander claims, the Court construes these subheadings as asserting separate bases for damages in conjunction with their § 1983-municipal-liability claims, rather than independent state-law wrongful-death or survival causes of action. Thus, because Plaintiffs fail to state a claim against the City for municipal liability, the Court also

does not reach the issue of whether Plaintiffs are entitled to damages on these bases.

## V.    Leave to Amend

In their responses, Plaintiffs request leave to amend should the Court find any defects in their Complaints. Edwards Resp. 22; Stephens Resp. 18; Washington Resp. 18. Federal Rule of Civil Procedure 15(a) provides that "a party may amend its pleading once as a matter of course . . . ." Fed. R. Civ. P. 15(a)(1). Thereafter, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* 15(a)(2). However, Rule 16(b)(3)(A) requires that a scheduling order "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." *Id.* 16(b)(3)(A). And "[a] schedule may be modified only for good cause and with the judge's consent." *Id.* 16(b)(4). Thus, a party seeking to amend her pleadings beyond the scheduled deadline must first meet the Rule 16(b)(4) standard before the court evaluates whether the Rule 15(a)(2) standard has been met. *S&W Enters. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003) ("Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."). To show good cause, the movant must demonstrate that she "'could not reasonably have met the scheduling deadline'" despite her diligence. *Grant v. Rathbun*, 2016 WL 1750572, at *2 (N.D. Tex. May 3, 2016) (quoting *Matamoros v. Cooper Clinic*, 2015 WL 4713201, at *2 (N.D. Tex. Aug. 7, 2015)). Additionally, under Rule 15(a), the court

has discretion whether to grant leave to amend "and may consider a variety of factors including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (internal citation and quotation marks omitted). "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Id.* (citing *Briggs v. Mississippi,* 331 F.3d 499, 508 (5th Cir. 2003)). In this case, the time to file amended pleadings without leave expired on October 10, 2018. Sched. Order (ECF No. 124). Accordingly, Plaintiffs must now show good cause as to why they could not reasonably have met the deadline to amend their pleadings. Plaintiffs' requests fail to address the Rule 16 standard. Edwards Resp. 22; Stephens Resp. 18; Washington Resp. 18. Additionally, the live pleadings in this case are Plaintiff Edwards's Fourth Amended Complaint, Plaintiff Stephens's Third Amended Complaint, and Plaintiff Washington's Second Amended Complaint. Because Plaintiffs have had several opportunities to cure pleading deficiencies, the Court finds that further amendment would be futile. Accordingly, Plaintiffs' requests for leave to amend should be DENIED.

## VI.   Costs and Attorney's Fees

The City also requests the Court award it costs, including reasonable attorney's fees, under 42 U.S.C. § 1988, which provides that "the Court, in its discretion, may allow the prevailing party, other than the United States, a

reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Section 1988 has been interpreted to provide for the recovery of costs by a prevailing defendant when a plaintiff maintains an unfounded action in bad faith, vexatiously, wantonly, or for oppressive reasons. *Holloway v. Walker*, 784 F.2d 1294, 1296 (5th Cir. 1986) (per curiam) (citation omitted). Here, the City does not argue—nor is there anything in the record to suggest—that Plaintiffs' claims were filed in bad faith or with malicious intent. The fact that the Court is recommending dismissal of Plaintiffs' claims is not in itself sufficient justification for a fee award. *Hughes v. Rowe*, 449 U.S. 5, 15 (1980) (per curiam) ("The fact that a . . . complaint, . . . cannot survive a motion to dismiss does not, without more, entitle the defendant to attorney's fees."). Accordingly, Defendant's request to recover costs and attorney's fees under 42 U.S.C. § 1988 should be DENIED.

## Recommendation

For the reasons stated, the District Court should GRANT Defendant the City of Balch Springs's Motions to Dismiss (ECF Nos. 132, 135, and 137) and DISMISS Plaintiffs' claims against the City with prejudice. Additionally, the Court should DENY Plaintiffs' requests to further amend their Complaints and DENY Defendant's request to recover costs and attorney's fees under 42 U.S.C. § 1988.

**SO RECOMMENDED.**

May 17, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).