IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ODELL EDWARDS, Individually and as the Father of JORDAN EDWARDS, and on BEHALF OF MINORS, V.A. and K.E., and as Representative of the Estate of JORDAN EDWARDS, Deceased,<br>　　　Plaintiff, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| SHAUNKEYIA KEYON STEPHENS, and RHONDA WASHINGTON,<br>　　Intervenor Plaintiffs, | §<br>§<br>§<br>§ | No. 3:17-cv-01208-M-BT |
| v. | §<br>§ | |
| ROY OLIVER and THE CITY OF BALCH SPRINGS, TEXAS,<br>　　Defendants. | §<br>§<br>§<br>§ | |

**SUPPLEMENTAL AND AMENDED
FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on Objections (ECF No. 195, 208, 213) to the May 17, 2019 Findings, Conclusions, and Recommendation of the United States Magistrate Judge ("FCR") (ECF No. 187), filed by Plaintiff Odell Edwards and Intervenor-Plaintiffs Shaunkeyia Stephens and Rhonda Washington (all three parties together, "Plaintiffs"). *See* Order (ECF No. 196) (returning the matter to the magistrate judge pursuant to Fed. R. Civ. P. 72(b)(3)). The May 17, 2019 FCR recommended granting Defendant the City of Balch Springs's (the "City") motions to dismiss (ECF Nos. 132, 135, and 137) and dismissing Plaintiffs' claims with prejudice. Having reviewed the Objections, the City's response, and the Plaintiffs'

1

replies, as well as the applicable law, the magistrate judge again recommends granting the City's motions to dismiss. However, the magistrate judge also recommends granting Plaintiffs' requests for leave to amend their complaints. The supplemental and amended findings, conclusions, and recommendation of the magistrate judge are as follows:

## I.

This is a civil rights action brought under 42 U.S.C. § 1983 to recover damages arising out of the shooting death of Jordan Edwards by former City police officer Defendant Roy Oliver. In their live pleadings, Plaintiffs allege that on April 29, 2017, fifteen-year-old Jordan Edwards, attended a house party in Balch Springs, Texas, with other teenagers, including his brothers V.A. and K.E., and the Everett twins—M.E. and M.E. Edwards Fourth Am. Compl. 4-7 (ECF No. 123); Stephens Third Am. Compl. 3-6 (ECF No. 134); Washington Sec. Am. Compl. 4-6 (ECF No. 127). At around 11:00 p.m., Balch Springs Police Department ("BSPD") officers arrived to shut down the party. *Id.* The crowd quickly dispersed, and M.E., M.E., V.A., K.E., and Edwards went to their car to leave the party. *Id.* As V.A. drove the car slowly in reverse, away from BSPD officers Tyler Gross and Defendant Oliver, Oliver fired five shots from his assault rifle at the car. *Id.* One bullet struck Edwards in the head and killed him. *Id.* When V.A. stopped the car to call his father, Plaintiff Odell Edwards, and check on Jordan Edwards, BSPD officers arrived and ordered the boys out of the car. *Id.* Although V.A., K.E., M.E., and M.E complied with the officers' orders, the officers shouted and pointed their guns at

them. *Id.* BSPD officers grabbed V.A., handcuffed him, and put him in the back of a patrol car, where he would remain for over two hours. *Id.* V.A., K.E., M.E., and M.E. were arrested but were not told why. *Id.*

Jordan Edwards died from the gunshot wound to his head, and Plaintiff Odell Edwards, Jordan Edwards, V.A., and K.E.'s father; Intervenor-Plaintiff Shaunkeyia Stephens, Jordan Edwards and K.E.'s mother; and Intervenor-Plaintiff Rhonda Washington, the Everett twins' mother, filed separate complaints against the City of Balch Springs and Roy Oliver. Plaintiff Odell Edwards brings claims on his own behalf, on behalf of Jordan Edwards's estate, and on behalf of his other children, V.A. and K.E. Edwards Fourth Am. Compl. 18-24. Intervenor-Plaintiff Washington brings claims on her own behalf and as next friend of her children, M.E. and M.E. Washington Sec. Am. Compl. 16-20. Intervenor-Plaintiff Stephens brings claims individually.[1] Stephens Third Am. Compl. 16-20.

---

[1] The Court observes that V.A., K.E., M.E., and M.E. may no longer be minors. *See* JSR (ECF No. 215). If V.A., K.E., M.E., and M.E. have reached the age of majority, Plaintiffs Edwards and Washington may no longer be able to bring claims against Defendants on their sons' behalf. *See* Fed. R. Civ. P. 17(b) (stating that an individual's capacity to sue or be sued is determined by the law of the individual's domicile); *A.G. v. Leander Indep. Sch. Dist.*, 2009 WL 3350148, at *3 (W.D. Tex. Oct. 14, 2009) ("In Texas, a minor plaintiff must be represented by a guardian or next friend to bring suit. However, the authority of the next friend expires when the minor plaintiff reaches the age of majority. The age of majority in Texas is eighteen." (citing *Kaplan v. Kaplan,* 373 S.W.2d 271, 273, 275 (Tex. Civ. App.—Houston 1963, no writ); Tex. Civ. Prac. & Rem Code Ann. § 129.001)). Plaintiff Stephens previously amended her complaint to drop the claims she brought as next friend of K.E. *Compare* Sec. Am. Compl. (ECF No. 129) *with* Third Am. Compl. (ECF No. 134).

With respect to the City, Plaintiffs assert claims under § 1983 for failure to train its officers on the appropriate use of force and for failure to supervise and discipline its officers regarding use of force. More particularly, Plaintiffs allege the City "failed to adequately train its officers on how to deal with individuals, specifically teenagers, during a raid of an event and the subsequent use of deadly force," and that that failure to train its officers constituted deliberate indifference on the part of the City to "the obvious risk that officers would use excessive or deadly force on citizens." Edwards Fourth Am. Compl. 19-20. Plaintiffs assert that the City, under the direction of the Balch Springs City Council and Balch Springs Police Chief Jonathan Haber, maintained a policy of deficient training such that the "actual practice or custom of the BSPD regarding the use of excessive and/or deadly force was to shoot first and ask questions later." *Id.* Accordingly, Plaintiffs allege the officers at the shooting acted pursuant to customs, practices, and policies ratified by the City when they used deadly force. *Id.* 19. In addition to their failure-to-train claim, Plaintiffs assert that the City "failed to adequately supervise or discipline its officers for violent, aggressive, and excessive force and, in failing to do so, ratified and encouraged the conduct of its officers." *Id.* 22. The City's alleged failure-to-supervise, Plaintiffs argue, constitutes deliberate indifference, which resulted in violation of Jordan Edwards, K.E., and V.A.'s constitutional rights.[2] *Id.*

---

[2] Plaintiffs Edwards and Stephens also allege Defendant the City "failed to implement and/or enforce the policies, procedures, and practices necessary to provide constitutionally adequate protection and medical assistance to Edwards during his struggle to survive; and implemented policies, procedures, and practices

The City filed three separate motions to dismiss each of Plaintiffs' complaints for failure to state a claim. Def.'s Mot. Edwards (ECF No. 132); Def.'s Mot. Stephens (ECF No. 135); Def.'s Mot. Washington (ECF No. 137). All three motions are fully briefed and ripe for determination.

## II.

When deciding a 12(b)(6) motion for failure to state a claim, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks and citation omitted). To survive Defendant's Rule 12(b)(6) motions to dismiss, therefore, Plaintiffs' complaints must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does not require "'detailed factual allegations,'" but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the

---

which actually interfered with . . . or prevented Edwards, V.A., and K.E. from receiving the protection, assistance and care they deserved." Edwards Fourth Am. Compl. 20; Stephens Third Am. Compl. 17-18. Plaintiffs did not pursue these allegations as a theory of liability, however, and these allegations are not tethered to Plaintiffs' assertion that the City has a "shoot first and ask questions later" policy.

plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that Plaintiffs are plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

Prior to *Twombly* and *Iqbal*, the Supreme Court held that heightened pleading requirements for § 1983 claims are "impossible to square . . . with the liberal system of 'notice pleading' set up by the Federal Rules." *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *accord Davidson v. AT&T Mobility, LLC*, 2018 WL 1407283, at *6 (N.D. Tex. Mar. 21, 2018). However, the prohibition on imposing "a heightened pleading standard that exceeds the requirements of rule 8(a)," does not mean that § 1983 claims are entitled to a more relaxed standard than Rule 8(a) requires. *Davidson*, 2018 WL 1407283, at *6. Section 1983 claims must satisfy the current Rule 8(a) standard and "'state a claim of relief that is plausible on its face.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570); *see also Speck v. Wiginton*, 606 F. App'x 733, 735-36 (5th Cir. 2015) (per curiam) ("Speck first contends that the district court applied a heightened pleading standard for civil rights cases contrary

6

to *Leatherman . . . .* But the district court correctly stated that the proper standard was Rule 8 as interpreted by *Twombly . . .* and *Iqbal . . . .*").

To address perceived tension between *Twombly-Iqbal* and *Leatherman's* pleading requirements for § 1983 municipal-liability claims, some courts have utilized a "middle ground" approach. *See, e.g.*, *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842-43 (S.D. Tex. 2011). In *Thomas*, the court determined "only minimal factual allegations should be required at the motion to dismiss stage" because "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." *Id.* Those minimal allegations "need not specifically state what the policy is," and "may be more general," but must still provide fair notice to the defendant by doing "more than genetically [sic] restating the elements of municipal liability." *Id.* at 843. This may include "past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy." *Id.* at 843-44. Some Northern District of Texas decisions have utilized this approach, and Plaintiffs urge the Court to employ it here. *See, e.g.*, *E.G. by Gonzalez v. Bond*, 2016 WL 8672774, at *6 (N.D. Tex. Sept. 9, 2016), *adopted by* 2017 WL 129019 (N.D. Tex. Jan. 13, 2017) ("The Court should apply the persuasive rationale set out in *Thomas* and the cases following it to avoid the arguable conflict between *Iqbal-Twombly* and *Leatherman.*"); *Gallaher v. City of*

*Maypearl*, 2018 WL 700252, at *3 (N.D. Tex. Feb. 2, 2018). Indeed, Plaintiffs made this argument in their response to the City's motions to dismiss, and they repeated it in their Objections to the May 17, 2019 FCR. *See* Edwards Resp. 11 (arguing "a plaintiff need not specifically state what the municipal policy is and can rely on minimal factual allegations at the pleading stage of the litigation"); Washington Resp. 10; Stephens Resp. 10; *see also* Edwards Obj. 11 (ECF No. 195) ("In the municipal liability context, under the Rule 8(a) standard even as interpreted by *Twombly* and *Iqbal*, 'only minimal factual allegations should be required at the motion to dismiss stage.'"); Washington Obj. 2 (ECF No. 213); Stephens Obj. 2 (ECF No. 208).

But even within the Northern District of Texas, *Thomas's* middle-ground approach has not been universally accepted. *See Wright v. City of Dallas*, 2010 WL 3290995, at *3 (N.D. Tex. July 19, 2010), *adopted by* 2010 WL 3291816 (N.D. Tex. Aug. 19, 2010) ("Requiring Plaintiff to allege facts sufficient to infer the existence of an official custom or policy does not impose an impermissible heightened pleading requirement."); *White v. City of Dallas*, 2013 WL 821992, at *4 (N.D. Tex. Feb. 8, 2013), *adopted by* 2013 WL 840503 (N.D. Tex. Mar. 6, 2013) (same); *see also E.G.*, 2016 WL 8672774, at *5 (internal quotation marks omitted) (quoting *Mitchell v. City of New Orleans*, 2016 WL 1733627, at *7 (E.D. La. May 2, 2016)) (observing that district courts are "split as to the level of specificity required for pleading municipal liability claims"). And, more importantly, the Fifth Circuit has never endorsed the approach. *Speck*, 606 F. App'x at 736. In *Speck*, Speck argued

that the district court "applied a heightened pleading standard for civil rights cases contrary to *Leatherman*," and, therefore, erred in dismissing his failure-to-train claim. *Id.* at 735. But the Fifth Circuit held, more than three years after *Thomas*, that the district court did not "err in applying the ordinary pleading standard to failure to train allegations" and "correctly stated that the proper standard was Rule 8 as interpreted by *Twombly* and *Iqbal*." *Id.* at 735-36; *see also Saenz v. City of El Paso,* 637 F. App'x 828, 832 (5th Cir. 2016) (per curiam) (applying Rule 8 as interpreted by *Twombly* and *Iqbal* without discussing *Leatherman* and affirming dismissal of failure to train claim).

Contrary to Plaintiffs' Objections, the Court did not "fail[ ] to consider the unique nature of claims against a municipality under Section 1983," Edwards Obj. 11; *see also* Stephens Obj. 2; Washington Obj. 2, in determining the level of factual specificity required to state a claim. It only rejected Plaintiffs' argument that the allegations set forth in the live pleadings satisfied the Rule 8(a) standard as interpreted by *Twombly* and *Iqbal*. Nevertheless, the Court acknowledges that *Thomas* provides some guidance on the kinds of allegations that may help to satisfy Rule 8, as interpreted by *Twombly* and *Iqbal*, and plausibly plead a municipal-liability claim. *See Flanagan v. City of Dallas*, 48 F. Supp. 3d 941, 947 (N.D. Tex. 2014) (Lynn, J.); *Gallaher*, 2018 WL 700252, at *3. Alleging facts regarding "(1) past incidents of misconduct by the defendant to others; (2) multiple harms that occurred to the plaintiff himself; (3) the involvement of multiple officials in the misconduct; or (4) the specific topic of the challenged policy or training

inadequacy," may "together with any additional elaboration possible, help to (1) 'satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests,' . . . and (2) 'permit the court to infer more than the mere possibility of misconduct.'" *Flanagan*, 48 F. Supp. 3d at 947 (citing *Thomas,* 800 F. Supp. 2d at 843-44; *Twombly,* 550 U.S. at 555 n. 3; *Iqbal,* 556 U.S. at 679). Thus, pleading facts within those four categories, together with other contextual information, may help to plead a plausible claim for municipal liability and, therefore, satisfy Rule 8 as interpreted by *Twombly* and *Iqbal. See Speck*, 606 F. App'x at 735-36;  *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678) ("Though Peña need not offer proof of her allegations at this stage, she still must plead facts that plausibly support each element of § 1983 municipal liability under either theory.").

Plaintiffs contend that "[r]equiring [them] to specify the precise policies, procedures or failures in supervision, training, and discipline . . . to constitute facts 'sufficient' to survive dismissal on the pleadings imposes precisely the impermissibly high standard rejected in this jurisdiction." Edwards Obj. 13; Washington Obj. 3-4; *see* Stephens Obj. 3. As support for their position, Plaintiffs cite *Williams v. City of Denton*, 2019 WL 438403, at *9 (E.D. Tex. Jan. 10, 2019), *adopted by* 2019 WL 430913 (E.D. Tex. Feb. 4, 2019), a case from the Eastern District of Texas, wherein the court found that Williams "[did not] identify which training policy and/or procedures were inadequate or how this alleged inadequacy directly caused Plaintiff's alleged constitutional violation." Instead of dismissing

the claim, however, that court "allow[ed] discovery limited to the issue of the City's policies, practices, or customs regarding excessive force and police officer training regarding the use of excessive force." *Id.* at *10. But *Williams* does not support Plaintiffs' contention that they need not plead the specific grounds on which their claims rest because "the Fifth Circuit recognizes [such information] is unavailable to plaintiffs at this stage of litigation." Edwards Obj. 14. In fact, the *Williams* court analyzed Williams's complaint under Rule 12(b)(6), as interpreted by *Iqbal* and *Twombly*, and found it insufficient to state a municipal-liability claim, noting "[a] plaintiff must also 'specifically identif[y]' the alleged policy, and where alleging 'policy based on a pattern,' must show the 'pattern . . . occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is expected, accepted practice of . . . employees.'" *Id.* at *2-3, *8-9 (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001); *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017)). The *Williams* court's decision to grant discovery is not instructive in this case, because it granted limited discovery on the basis of qualified immunity, which is not at issue in the City's motions to dismiss. *Id.* at *10 (citing *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995); *Morgan v. Hubert*, 335 F. App'x 466, 472 (5th Cir. 2009) (per curiam)) ("In *Morgan*, the Fifth Circuit further clarified how *Schultea* applies to the issue of qualified immunity when a plaintiff has not yet had the benefit of discovery . . . ."). Further, the kinds of facts that would satisfy the *Thomas* approach are available without resort to the discovery process, especially

11

facts regarding "multiple harms that occurred to the plaintiff himself," "misconduct that occurred in the open," and "the involvement of multiple officials in the misconduct." Even facts regarding "past incidents of misconduct to others" may be easily discoverable from publicly-available sources consulted as part of an attorney's reasonable pre-suit factual inquiry.

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citation omitted). "Regardless of the required proof needed to ultimately prevail on a given claim, when ruling on a Rule 12(b)(6) motion, courts examine the factual allegations of the operative pleading to determine whether asserted claims survive the motion [to dismiss]." *E.G.*, 2016 WL 8672774, at *5 (citing *Groden v. City of Dallas*, 826 F.3d 280, 282-83 (5th Cir. 2016)). Accordingly, here, the Court does not weigh any evidence and only considers the factual allegations in Plaintiffs' complaints.

## III.

The Court first addresses Plaintiffs' claims for § 1983 municipal liability, generally, before turning to their failure-to-train and failure-to-supervise theories of municipal liability, claims for individual damages, and "bystander claims." Because the Court understands any claim against the Balch Springs Police Department to be a claim against the City of Balch Springs, no dismissal of the BSPD for lack of jural existence is necessary.  Edwards Resp. 22 (ECF No. 148) ("Plaintiffs have not named the BSPD as an independent defendant.").

A.  § 1983 Municipal Liability

Defendant asserts that Plaintiffs' complaints fail to state a claim for municipal liability because they contain no specific factual pleading to support an inference "of a direct causal link between the alleged policy and the violation," "of deliberate indifference by a City policymaker," or "that any alleged unconstitutional policy, practice or custom was promulgated or ratified by a policymaker." Def.'s Br. Supp. Edwards 5-6 (ECF No. 131); Def.'s Br. Supp. Stephens 5-6 (ECF No. 136); Def.'s Br. Supp. Washington 5 (ECF No. 138). Plaintiffs assert that their complaints sufficiently identify a policymaker; identify the customs, practices, and policies at issue; and allege that those customs, practices, and policies were the "moving force" behind the constitutional violations at issue. Edwards Resp. 12-13; Stephens Resp. 11-13 (ECF No. 153); Washington Resp. 11-13 (ECF No. 150). The Court finds that Plaintiffs have not sufficiently alleged the City had an unconstitutional policy or custom to state a claim for municipal liability under § 1983.

While § 1983 claims may be brought against municipalities "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," municipalities cannot be held liable solely for employing a tortfeasor; that is, they "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *see also Bd. of Cty. Comm'rs. v. Brown*, 520 U.S. 397, 403 (1997) ("We have

consistently refused to hold municipalities liable under a theory of *respondeat superior.*"). This is because "under § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 479 (1986)). And "[t]hey are not vicariously liable under § 1983 for their employees' actions." *Id.* (citations omitted); *see also Pembaur,* 475 U.S. at 479 ("Congress . . . doubt[ed] its constitutional power to impose such liability in order to oblige municipalities to control the conduct of *others.*" (emphasis in original)). Requiring municipal-liability plaintiffs to identify an allegedly unconstitutional municipal policy or custom "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cty. Comm'rs*, 520 U.S. at 403-04 (citing *Monell,* 436 U.S. at 694). "To prevent municipal liability . . . from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* at 410. Accordingly, "[a]s is generally the case in § 1983 cases, it is far more difficult for [a] plaintiff to establish municipal liability . . . than to establish individual liability." *Ayers v. City of Holly Springs*, 2006 WL 2943295, at *4 (N.D. Miss. Oct. 13, 2006); *see also Jackson v. Town of Tutwiler*, 2018 WL 6033596, at *3 (N.D. Miss. Nov. 16, 2018) ("[T]his court acknowledges that federal law does, in fact, make it quite difficult for plaintiffs to recover against municipalities in § 1983 cases."). Though the Court does not require "proof" of any

14

element at the motion-to-dismiss stage, a "plaintiff[ ] must allege facts that support the elements of the cause of action in order to make out a valid claim." *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) (per curiam); *see also Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) ("However, 'the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" (quoting 5 Wright & Miller, Federal Practice and Procedure: Civil 2d § 1216 at 156-159)). Accordingly, the Court now recites the elements of a municipal-liability claim.

To establish a claim for municipal liability under § 1983, "a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citing *Monell,* 436 U.S. at 691). "A plaintiff must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.'" *Id.* at 541-42. (citing *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002)). "[I]solated unconstitutional actions by municipal employees will almost never trigger [municipal] liability." *Piotrowski,* 237 F.3d at 578 (citing *Bennett v. City of Slidell,* 728 F.2d 762, 768 n.3 (5th Cir. 1984); *McKee v. City of Rockwall,* 877 F.2d 409, 415 (5th Cir. 1989)) (footnote omitted). With respect to the first prong, a plaintiff sufficiently alleges an  official policy exists by pleading facts that demonstrate:

15

> (1) a policy statement, ordinance, regulation, or decision . . . [was] officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents a municipal policy.

*Burge v. Saint Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam)); *see also Bd. of Cty. Comm'rs*, 520 U.S. 397, 404 (1997) ("Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.") (citations omitted). Under the second prong, the policymaker possessing actual or constructive knowledge must have "the responsibility for making law or setting policy in any given area of a local government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988); *see also Valle*, 613 F.3d at 542. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481. Last, under the third prong, a plaintiff must establish that "the municipal action was taken with the requisite degree of culpability and . . . demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs*, 520 U.S. at 404.

Here, though Plaintiffs state that "Defendant Oliver and other officers at the scene of the shooting incident were . . . acting pursuant to customs, practices and policies of the City of Balch Springs and the BSPD in regards to the use of deadly force as authorized and/or ratified by the Balch Springs City Council, Mayor Marshall, and Chief Haber," they fail to allege facts to support that the City had a widespread practice that amounted to a municipal policy. Edwards Fourth Am. Compl. 19; Stephens Third Am. Compl. 16; Washington Sec. Am. Compl. 16. Plaintiffs do not allege the City promulgated an official policy that was inadequate. Rather, they rely on the second basis for establishing a municipal policy. That is, that the City had "a persistent, widespread practice . . . which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents a municipal policy." *Burge*, 336 F.3d at 369. Plaintiffs allege that the City "failed and refused to implement customs, policies, practices, or procedures, . . . regarding the proper use of deadly force," and that in failing to discipline its officers, the City ratified and encouraged "violent, aggressive, and excessive force," so that "[t]he actual practice or custom of BSPD regarding the use of excessive and/or deadly force was to shoot first and ask questions later." Edwards Fourth Am. Compl. 19-21; Stephens Third Am. Compl. 17-18; Washington Sec. Am. Compl. 17-19.

Plaintiffs support their claim that the City had a "shoot first and ask questions later" policy by cataloguing incidents of Oliver's alleged misconduct and purported unfitness for the job, stating "Defendant Oliver was allowed to violate

17

multiple policies without any adequate consequences." Edwards Fourth Am. Compl. 14; Stephens Third Am. Compl. 12; Washington Sec. Am. Compl. 12. Plaintiffs assert that: "Oliver's overall screening results suggested that he was not fit to serve"; "the Dallas County prosecutor's office filed a complaint regarding Defendant Oliver's aggressive behavior in a court proceeding" for which the BSPD suspended him for 16 hours; he used vulgar language in the courtroom; he exerted excessive force against a civilian on a call; he posted language on social media demonstrating his "propensity to kill"; and, two weeks before the shooting death of Jordan Edwards, he brandished his gun during an off-duty encounter with a woman who allegedly rear-ended him. Edwards Fourth Am. Compl. 8-10; Stephens Third Am. Compl. 7-9; Washington Sec. Am. Compl. 7-8. Plaintiffs contend Oliver was not adequately disciplined because he "was not terminated although he violated departmental policies on multiple occasions." Edwards Fourth Am. Compl. 11; Stephens Third Am. Compl. 9; Washington Sec. Am. Compl. 9.

Plaintiffs also allege that other Balch Springs police officers had a history of violent conduct and cite two incidents—one in which a "Balch Springs officer used a taser on an African American male even though he was clearly restrained by handcuffs," and another in which a Balch Springs officer arrested a man, who allegedly caused a disturbance in an apartment, and tased him to death though he complied with the officer's instructions. Edwards Fourth Am. Compl. 11; Stephens Third Am. Compl. 9-10; Washington Sec. Am. Compl. 9. Plaintiff Washington

18

includes a third instance in which Balch Springs Police Officer allegedly entered a home without a warrant and shot at a dog. Washington Sec. Am. Compl. 9.

However, to establish a pattern using prior incidents, those incidents "'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (per curiam)). Demonstrating "[a] pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Peterson*, 588 F.3d at 851  (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills,* 406 F.3d 375, 383 (5th Cir. 2005)). That Oliver may have used vulgar or violent language in court or on social media with minimal reprimand does not sufficiently support Plaintiffs' allegation that the Balch Springs Police Department has a persistent and widespread municipal policy of using excessive force against unarmed individuals. Similarly, Plaintiff Washington's warrantless-search and shooting-at-an-animal example is not factually similar enough to what ultimately transpired in this case—the death of a person—to establish a pattern. And although Plaintiffs include instances of alleged misconduct by other officers, those instances are too factually dissimilar or too infrequent to support the inference of a custom that fairly represents a municipal policy that is tantamount to "shoot first and ask questions later." *See Livezey v. City of Malakoff*, 657 F.

App'x 274, 278 (5th Cir. 2016) (per curiam) ("The events are dissimilar enough not to establish a pattern of violations by Fierro."). Even when taken as true, as the legal standard at this pleading stage requires, Plaintiffs are left with allegations that BSPD officers were involved in one other shooting incident in 2013 and two tasing incidents, one in 2014 and the other in 2016, and that Oliver himself was involved in two separate incidents in 2017 involving the use or display of force against a civilian. These alleged incidents are not widespread or persistent enough to demonstrate a pattern. *See Moreno v. City of Dallas*, 2015 WL 3890467, at *9 (N.D. Tex. June 18, 2015) (granting motion to dismiss because "facts suggesting an average of less than two incidents of excessive force per year over the course of five years are not sufficient to indicate a pattern of abuses").

Plaintiffs also fail to sufficiently allege a pattern of failures to discipline indicating that the City ratified its "shoot first and ask questions later" policy via inaction. The unnamed officer responsible for tasing Marco Stephenson is the only employee,[3] other than Oliver, that all Plaintiffs allege the City failed to discipline for misconduct. Edwards Fourth Am. Compl. 11; Stephens Third Am. Compl. 10; Washington Sec. Am. Compl. 9. Plaintiffs do not allege that the City failed to discipline the Balch Springs officer responsible for tasing Eric Ricks to death. Edwards Fourth Am. Compl. 11; Stephens Third Am. Compl. 10; Washington Sec.

---

[3] Plaintiff Washington alone raises the warrantless-search and shooting-at-an-animal example, and she indicates that the City suspended Officer Gonzales for one day without pay as a result of that incident. Washington Sec. Am. Compl. 9.

Am. Compl. 9. Plaintiffs' allegations regarding Sergeant James Young's alleged November 2013 shooting of an "unarmed black man in a car he suspected of stealing from a Dollar Tree store" do not include any assertion that the City failed to discipline Young for improper conduct. Edwards Fourth Am. Compl. 13-14; Stephens Third Am. Compl. 12; Washington Sec. Am. Compl. 11-12. And though Plaintiff Edwards states in his Objections, "Young never received additional training or supervision after these incidents," he does not include that assertion in his complaint. Edwards Obj. 24. Accordingly, the Court finds that Plaintiffs have failed to state a claim for municipal liability against the City because they have not adequately alleged that the City had a municipal policy by which their federal rights were violated.

Plaintiffs object to this finding on the grounds that they "are unable to offer identical examples of an as-yet unspecified number of police misconduct incidents." Edwards Obj. 16-17; Washington Obj. 7; *see* Stephens Obj. 3. However, the Court has never required a specific number of incidents, and those incidents need only be similar, not identical.

"'The number of incidents and other allegations necessary to establish a pattern representing a custom, on a motion to dismiss, varies . . . .'" *Saenz,* 637 F. App'x at 832 (quoting *Moreno*, 2015 WL 3890467, at *8). "Other than requiring more than one incident by non-policymakers, neither the Fifth Circuit nor the Supreme Court [has] set a specific number of incidents that is required for a plausible claim of municipal liability under a custom or practice." *E.G.*, 2016 WL

8672774, at *10. But "[w]here the violations are flagrant or severe," a shorter pattern of conduct is necessary to demonstrate that "diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation." *Bennett*, 728 F.2d at 768; *accord Graham v. Dall. Area Rapid Transit*, 288 F. Supp. 3d 711, 726 (N.D. Tex. 2017). District courts in the Fifth Circuit have found different numbers of incidents and other allegations sufficient to establish a pattern representing a custom on a motion to dismiss. *Moreno*, 2015 WL 3890467, at *8 (citing *Barr v. City of San Antonio,* 2006 WL 2322861, at *4 (W.D. Tex. July 25, 2006) (holding that a pattern was sufficiently alleged to survive the motion-to-dismiss stage when the City had been named as a defendant in four similar lawsuits); *Rivera v. City of San Antonio,* 2006 WL 3340908, at *12 (W.D. Tex. Nov. 15, 2006) (finding that plaintiff sufficiently alleged a pattern when she pleaded that hundreds of complaints against the police were filed without any disciplinary action being taken); *Oporto v. City of El Paso,* 2010 WL 3503457 at *5-6 (W.D. Tex. Sept. 2, 2010) (finding 32 incidents of excessive deadly force sufficient to allege a pattern); *Harvey v. Montgomery Cty.,* 881 F. Supp. 2d 785, 797-98 (S.D. Tex. 2012) (finding several specific incidents involving the excessive use of force, 200 complaints of excessive use of force, and 200 complaints of unlawful detention sufficient to allege a pattern or "custom")).

In addition to pleading more than one incident, to establish a pattern, Plaintiffs must allege incidents "which [are] 'fairly similar to what ultimately

transpired.'"[4] *Saenz*, 637 F. App'x at 832 (quoting *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010); *Connick*, 563 U.S. at 62-63). While the Court specifically considers Plaintiffs' failure-to-train claim below, it finds the Fifth Circuit's guidance in *Saenz* instructive as to the types of incidents required to establish a pattern demonstrating a policy for municipal liability. In *Saenz*, Daniel Saenz was hospitalized after suffering a "hyperglycemic episode" in an El Paso grocery store. *Saenz*, 637 F. App'x at 829. At the hospital, he attacked "one or more individuals and was arrested." *Id.* While he was in custody, "handcuffed, unarmed, and unrestrained," a police officer shot and killed him. *Id.* Saenz's mother brought a § 1983 claim against the City of El Paso asserting that "the City failed to adequately train its police officers in the proper use of force." *Id.* at 831. The Fifth Circuit noted that while "a municipality's failure to train its officers can give rise to § 1983 liability if the municipality's failure to adopt an adequate training policy is the moving force behind a constitutional violation," to successfully plead a failure-to-train claim, a plaintiff must "allege facts to plausibly suggest the municipality's

---

[4] Plaintiff Edwards's reference to Judge Willett's concurrence "criticizing decisions requiring plaintiffs to 'cite functionally identical precedent,'" concerns qualified immunity, a legal defense that applies to individuals and not municipalities. Edwards Obj. 17 n.4 (citing *Zadeh v. Robinson*, 902 F.3d 483, 488 (5th Cir. 2018) (Willet, J., concurring), *withdrawn on reh'g*, 928 F.3d 457 (5th Cir. 2019)); *see Brown v. Lyford*, 243 F.3d 185, 191 n.18 (5th Cir. 2001) ("When . . . a plaintiff states a claim but the official is protected by qualified immunity, that defense protects only the individual officer, not the municipality." (citing *Babb v. Dorman,* 33 F.3d 472, 475 n. 5 (5th Cir. 1994)).

deliberate indifference to the need for proper training." *Id.* at 831-32 (citation omitted). To satisfy this pleading requirement, a plaintiff must ordinarily allege "that the municipality had notice of a pattern of similar violations, which were fairly similar to what ultimately transpired." *Id.* at 832. (citations and internal quotation marks omitted). Saenz's mother "allege[d] twenty-one previous incidents, spanning a period of nineteen years, involving an individual killed by a police officer." *Id.* The Fifth Circuit affirmed the district court's dismissal of Saenz's failure-to-train claim, however, because "[w]ithout further context surrounding the circumstances," the Court was unable "to draw the reasonable inference that any of [those] events were anything more than isolated incidents." *Id.*

Plaintiffs contend that *Flanagan* is particularly instructive here with respect to the sufficiency of allegations required to establish a pattern.[5] In *Flanagan*, the court found the totality of the plaintiffs' allegations regarding the Dallas Police Department's ("DPD") use of force sufficient to permit "a reasonable inference of a persistent, widespread practice by DPD officers of using excessive force rising to the level of a custom having the force of official City policy"—although it was a "close call." *Flanagan,* 48 F. Supp. 3d at 952-54. The plaintiffs specifically alleged that (1) the DPD had a policy to "shoot first and ask questions later"; (2) a city councilman informed the media that there were training issues within the DPD

---

[5] Plaintiffs' counsel and the Court are both familiar with the facts and procedural history of *Flanagan* as the same attorney who represents Plaintiff Edwards in this case represented the plaintiffs in *Flanagan*, and the same District Judge presiding over this case presided over *Flanagan*.

that resulted in the killing of an unarmed individual; (3) Dallas was at the top of the list of police misconduct statistics in the South; (4) Dallas ranked eleventh in police misconduct incidents; (5) officers were involved in 144 shootings; (6) there were 86 grand-jury investigations of police misconduct; (7) 60 unarmed African-American men were killed by Dallas police officers over the course of 13 years; (8) DPD officers shot at least 12 other unarmed individuals during the same year the plaintiffs' son was shot; and (9) there were 94 open DPD internal-affairs investigations into officer-involved shootings. *Id.* at 953. The plaintiffs also discussed three of the shooting incidents "in sufficient detail . . . to denote the similarities to the allegations regarding [the deceased's] shooting, namely that the individuals involved were not provoking or resisting the police when they were shot." *Id.* at 954.

In their Objections, Plaintiffs characterize their pleadings as setting forth "five[6] incidents of officer misconduct sharing as their key common element the repeated use of excessive force on unarmed individuals, where no immediate threat of harm justified the physical violence." Edwards Obj. 19; Stephens Obj. 3; Washington Obj. 8-9. As the Court discussed above, those five incidents of officer misconduct are not similar enough to allege a pattern supporting the shoot-first-ask-questions-later  custom that Plaintiffs assert in their complaints. Only one of

---

[6] Plaintiff Stephens and Washington also include the warrantless-search and shooting-at-an-animal incident in addition to the other incidents. Stephens Obj. 3; Washington Obj. 8-9.

those five incidents, the incident involving Sergeant James Young, involves use of force on a person not in custody, and Plaintiffs plead no facts describing the context of that shooting or any subsequent disciplinary action. The two tasing incidents involve individuals who were in custody at the time the force was used. Additionally, unlike the *Flanagan* plaintiffs, Plaintiffs do not plead any general police misconduct statistics with respect to the BSPD, such as the raw number of officer-involved shootings, the number of unarmed persons killed or injured by BSPD, or the number of grand-jury or internal-affairs investigations into police misconduct, that would give some context to the "five incidents of officer misconduct" alleged in the pleadings.

Plaintiffs also "point to three instances involving Oliver specifically, in which his behavior after joining the Balch Springs PD demonstrated unbridled aggression." Edwards Obj. 20; Stephens Obj. 3; Washington Obj. 9. But facts alleging that Oliver demonstrated "aggressive behavior," without more, do not appear connected to a shoot-first-ask-questions-later municipal policy. None of the three incidents involving Oliver also involves a shooting; indeed, only one of them involves a gun. And two of those alleged instances of "aggressive behavior" may be more appropriately characterized as mere unprofessional behavior. Specifically, Plaintiffs alleged that in 2013 Oliver was reluctant to attend trial and was "angry he had to be there," used vulgar language "so bad it caused an assistant district attorney to send a female intern out of the room," and used profanity during his testimony. Edwards Fourth Am. Compl. 9. Plaintiffs also alleged that

26

Oliver posted on his Facebook page that he "will never in [his] life be as good at anything else as [he is] at killing people." *Id.* 10.  As alleged, these incidents do not appear "fairly similar to what ultimately transpired," as required to allow the Court to draw the reasonable inference that they were more than isolated incidents. Because Plaintiffs have not plausibly pleaded that the City had a municipal policy to shoot-first-ask-questions-later by which their federal rights were violated, they fail to state a municipal-liability claim against the City.

### B.  Failure to Train and Supervise

Defendant moves to dismiss Plaintiffs' § 1983 failure-to-train and failure-to-supervise municipal-liability claims on grounds that Plaintiffs failed to "establish what training allegedly should have been provided or . . . was allegedly defective" and insufficiently pleaded "an inference of deliberate indifference by a policymaking official." Def.'s Br. Supp. Edwards 8, 11; Def.'s Br. Supp. Stephens 8, 11; Def.'s Br. Supp. Washington 8, 11. Plaintiffs respond that "[a] failure to train officers with deliberate indifference to citizens' constitutional rights constitutes a policy or custom for the purposes of municipal liability," and cite the same instances of Oliver's and other officers' alleged misconduct referenced in section III, A. Edwards Resp. 14-15; Stephens Resp. 13-14; Washington Resp. 13-14. Plaintiffs contend that those incidents demonstrate the City's failure to train. Plaintiffs further assert that "deliberate indifference generally requires more than just a single instance that causes a constitutional violation—rather, there needs to be some pattern of similar violations." Edwards Resp. 13-14; *see* Stephens Resp.

27

12; Washington Resp. 12. They maintain that the incidents they have pleaded "certainly satisf[y] [their] pleading requirements at this stage of the proceedings." Edwards Resp. 15; Stephens Resp. 14; Washington Resp. 13-14. The Court finds that Plaintiffs fail to state a claim for municipal liability based on a failure-to-train or supervise theory.

"The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Peterson*, 588 F.3d at 849 (citing *Brown v. Bryan Cty.,* 219 F.3d 450, 458 (5th Cir. 2000)). To bring a failure-to-train claim, "the plaintiffs must show: (1) the City's 'training policy or procedure was inadequate'; (2) 'the inadequate training policy was a "moving force" in causing a violation of the [plaintiffs'] rights'; and (3) the City 'was deliberately indifferent in adopting its training policy.'" *Livezey*, 657 F. App'x at 278 (quoting *Valle*, 613 F.3d at 544). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61 (citing *Okla. City v. Tuttle,* 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell.* ")); *accord Saenz*, 637 F. App'x at 832.

Plaintiffs allege "the City, the BSPD, and Chief Haber failed to adequately train its officers on how to deal with individuals, specifically teenagers, during a raid of an event and the subsequent use of deadly force." Edwards Fourth Am.

Compl. 19; Stephens Third Am. Compl. 16-17; Washington Sec. Am. Compl. 17. Plaintiffs also assert "Defendant the City of Balch Springs under the direction of the Balch Springs City Council and Chief Haber maintained a policy of deficient training of its police force in the use of force, including the proper use of deadly force and dealing with individuals during a raid of an event," such that "[t]he actual custom or practice of the BSPD regarding the use of excessive and/or deadly force was to shoot first and ask questions later." Edwards Fourth Am. Compl. 19-20; Stephens Third Am. Compl. 17; Washington Sec. Am. Compl. 17. But "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (citing *Benavides v. Cty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992)). For example, the court in *Sanchez v. Gomez*, 283 F. Supp. 3d 524 (W.D. Tex. 2017), found that the parents of a mentally ill individual who was killed by police sufficiently alleged an inadequate training program by: pleading that the El Paso police department ("EPPD") "provides absolutely no training to its officers in non-violent, non-confrontational methods of interacting with mentally ill individuals"; providing descriptions of nine incidents in which mentally ill individuals had been killed or wounded by EPPD officers in previous years; and alleging that the EPPD Chief knew that officers routinely encountered mentally ill individuals, knew those officers lacked the training to effectively respond to such situations, and was aware of multiple instances of lethal force against such individuals. *Id.* at 545. Here, Plaintiffs make

29

only conclusory allegations that Defendant's training policies or procedures were inadequate and point to no specific policy. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . ."). Plaintiffs' conclusory allegations are insufficient to satisfy the pleading requirements at this stage of the proceedings.

Moreover, even if Plaintiffs had pointed to a specific policy, they allege no facts indicating that the City was deliberately indifferent in adopting that policy. *See City of Canton,* 489 U.S. at 388 ("We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of a person with whom the police come into contact."). Plaintiffs do not allege facts to show there was any obvious need by BSPD officers for training on "how to deal with individuals, specifically teenagers, during a raid of an event and the subsequent use of deadly force." There are no facts alleged to show a pattern of abuses in situations involving teenagers during a raid that could give rise to an inference that City officials were aware that police officers lacked adequate training and were indifferent to the risk that could result from a lack of training. Indeed, none of the incidents described in Plaintiffs' complaints, other than the particular facts surrounding Jordan Edwards's death, involves teenagers or a raid, much less a combination of the two.

Plaintiffs assert in their responses that the City's decision to hire Oliver represents deliberate indifference because they contend that his pre-employment materials revealed he was unfit for the job. Edwards Resp. 18; Stephens Resp. 17;

Washington Resp. 16-17. But the City's decision to hire Oliver does not fulfill any element of a failure-to-train or supervise claim. Rather, "inadequate screening" constitutes a separate theory of liability, which could conceivably represent an official policy for the purpose of establishing municipal liability generally. However, Plaintiffs do not maintain that the City had an unconstitutional official, or unofficial, hiring policy, and the Supreme Court has rejected utilizing the single-incident exception in the inadequate-screening context. *See Bd. of Cty. Comm'rs*, 520 U.S. at 410-11 ("The fact that inadequate scrutiny of an applicant's background would make a violation of rights more *likely* cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation." (emphasis in original)). Instead, Plaintiffs' claim for general municipal liability fails on other grounds detailed above. Plaintiffs do not bring a negligent-hiring claim against the City. *See* Edwards Fourth Am. Compl.; Stephens Third Am. Compl.; Washington Sec. Am. Compl.

Nonetheless, Plaintiffs further assert that they do not need to establish a pattern of failures to train because "Plaintiffs' allegation of failure to train is sufficient under the single incident exception." Edwards Resp. 15; Stephens Resp. 14; Washington Resp. 14. "A narrow single-incident exception [to § 1983 municipal liability] exists only 'where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train.'"

31

*Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018) (per curiam) (quoting *Burge,* 336 F.3d at 373). This exception, however, "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Peña*, 879 F.3d at 624. The Fifth Circuit previously found the single-incident exception satisfied "where a reserve deputy, with '*no training*' from the police department applied excessive force during a single car chase." *Id.* (quoting *Brown*, 219 F.3d at 453-54, 462) (alteration in original). The *Peña* court found the complaint before it could not satisfy the single-incident exception because it acknowledged "that Solis and Salinas received taser training from other officers." *Id.* In this case, Plaintiffs state that Oliver "received training from Sergeant James Young." Edwards Fourth Am. Compl. 13-14; Stephens Third Am. Compl. 12; Washington Sec. Am. Compl. 11-12. Because "there is a difference between a *complete failure to train*[ ] . . . and a failure to train in one limited area," Plaintiffs' failure-to-train allegations are insufficient under the single-incident exception. *Peña*, 879 F.3d at 624 (alterations in original) (internal quotation marks and citation omitted); *see also Estate of Davis ex rel. McCully*, 406 F.3d at 386 ("In contrast, here, there *was* training and Plaintiffs have not shown that those training sessions were so deficient as to constitute deliberate indifference." (emphasis in original)). Thus, the Court finds that Plaintiffs fail to state a claim for municipal liability on a failure-to-train theory.

Plaintiffs object to the Court's holding with respect to their failure-to-train claim, asserting that "the inaccessibility of . . . training procedures . . . make it virtually impossible to, in good faith, plead the specific deficiencies of a particular

training program" and that the "level of specificity required to satisfy pleading standards should not be unattainable." Edwards Obj. 25; Washington Obj. 12; *see* Stephens Obj. 2-3. But the Fifth Circuit has made clear that "[d]efects in a particular training program must be specifically alleged." *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) (citing *Roberts*, 397 F.3d at 293); *see also Speck*, 606 F. App'x at 736 ("[T]he allegations do not satisfy the first element because he alleges no facts about what training Granbury provided or failed to provide. Complaints typically satisfy the first element by alleging facts related to the locality's actual training program.").

In *Speck*, the court found that because Speck "provide[d] no factual allegations about the content of the excessive force training or how thorough or cursory it may have been," he, thus, "ask[ed] [the court] to make the inference that a single alleged incident of misconduct means officers are inadequately trained." *Speck*, 606 F. App'x at 736. Accordingly, the court held that "[d]ismissal of Speck's conclusory failure to train claim was proper" because such an inference "is at odds with the law against *respondeat superior* liability in section 1983 [municipal liability] cases, which is a rule premised on the common sense proposition that officer misconduct is often a result of the independent decisions of officers rather than direction from superiors." *Id.*

Moreover, "Plaintiffs cannot prevail by styling their complaints about the specific injury suffered as a failure to train claim." *Roberts*, 397 F.3d at 293 (holding that plaintiff's assertion that police program failed to train officers on how

to perform crossing-guard duty without resorting to deadly force will not support a failure to train claim in a case involving fatal injuries inflicted by an off-duty police officer working as a crossing guard). "The Supreme Court specifically warned against this type of artful pleading." *Id.* (citing *City of Canton,* 489 U.S. at 391 ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid *the particular injury-causing conduct.*'")). Here, Plaintiffs allege "the City, the BSPD, and Chief Haber failed to adequately train its officers on how to deal with individuals, specifically teenagers, during a raid of an event and the subsequent use of deadly force." Edwards Fourth Am. Compl. 19; Stephens Third Am. Compl. 16-17; Washington Sec. Am. Compl. 17. Plaintiffs do not allege particular defects in the City's training program and appear to style their complaint about the specific injury suffered as a failure-to-train claim. Plaintiffs include additional failure-to-train allegations in their Objections and state that "Oliver received no training in the proper 'use of excessive and deadly force' or on the proper techniques for arresting, confronting, and controlling situations such as the raid of an event involving teenagers." Edwards Obj. 25-26; Washington Obj. 12; *see* Stephens Obj. 2. Plaintiffs, however, have not included any specific allegations related to "techniques for arresting" or "confronting" individuals during a raid in their complaints, and their Objections appear only to plead facts concerning Defendant Oliver's alleged lack of training.

Plaintiffs also object to the Court's characterization of the City's alleged inadequate scrutiny in hiring Oliver as a separate basis for liability; instead, they contend it "demonstrate[s] the City's 'deliberate indifference' toward the constitutional rights of others" and "prov[es] that he needed supervision and more training." Edwards Obj. 26-27; Washington Obj. 13; *see* Stephens Obj. 1-2. In their complaints, Plaintiffs allege the City inadequately screened Oliver prior to hiring him, but they do not connect these facts to their failure-to-train claim as they now do in their Objections. *See id.* Even if they had, however, "[b]ecause the 'standard for municipal fault' is a 'stringent' one, 'a pattern of similar constitutional violations by untrained employees is ordinarily' required to show deliberate indifference." *Peña*, 879 F.3d at 623 (quoting *Connick*, 563 U.S. at 62) (cleaned up) (finding Peña failed to sufficiently plead such a pattern). Thus, to demonstrate a pattern constituting a municipal policy, Plaintiffs' allegations regarding an inadequate training program generally should concern more than one individual officer. *See Calvi v. Knox Cty.*, 470 F.3d 422, 429 (1st Cir. 2006) (citing *City of Canton*, 489 U.S. at 390-91) ("Showing that a single individual received inadequate training is insufficient for municipal liability to attach; the training program as a whole must be found faulty."). The Court, therefore, finds that Plaintiffs fail to state a claim for municipal liability on a failure-to-train theory.

Plaintiffs further object, stating the Court erred in finding that "'a failure to train in one limited area'—is not enough" because that standard would foreclose all future failure-to-train claims "as long as the officer has had any training

whatsoever, regardless of which area." Edwards Obj. 25; Washington Obj. 11-12. Plaintiffs mischaracterize the Court's May 17, 2019 FCR. In that FCR, the Court recited the Fifth Circuit's ruling that though a narrow "single-incident" exception exists with respect to failure-to-train clams, it "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Peña*, 879 F.3d at 624; *see also Estate of Davis ex rel. McCully*, 406 F.3d at 385 ("It is true that there is a so-called 'single incident exception,' but it is inherently a narrow one, and one that we have been reluctant to expand." (citations omitted)). Thus, to plead a failure-to-train claim that "satif[ies] the exacting test for the narrow single-incident exception," Plaintiffs must allege that Oliver received no training at all. *See Peña*, 879 F.3d at 624. Plaintiffs' Objections apply this "complete failure-to-train" requirement to all failure to train claims, not only to those that would fall under the single-incident exception. Because Plaintiffs plead Defendant Oliver received some training from Sergeant Young, their failure-to-train claim is insufficient under the single-incident exception.

Plaintiffs maintain in their Objections that the single-incident exception applies because the City "[knew] of the need to enact policies and training procedures in order to address a persistent problem with officers' unlawful use of force," and that, therefore, "the City itself drew the inference that inadequacies in training . . . posed a substantial risk of the same constitutional injuries inflicted upon Jordan." Edwards Obj. 22; Washington Obj. 10; *see* Stephens Obj. 2. From this the Court gleans that Plaintiffs assert that the City was deliberately indifferent

36

to such a degree that the single-incident exception applies. *See Bd. of Cty. Comm'rs*, 520 U.S. at 409 (discussing that "a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations . . . in a narrow range of circumstances, [where] a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations" such that the "policymakers' decision not to train the officer reflected 'deliberate indifference'").  Plaintiffs cite *Farmer v. Brennan*, 511 U.S. 837, 842 (1994), for the proposition that "factfinders may conclude that an 'official knew of a substantial risk from the very fact that the risk was obvious.'" Edwards Obj. 22; Washington Obj. 10. *Farmer*, however, concerns the mental state required for a prison official to be liable under the Eighth Amendment. *Farmer*, 511 U.S. at 841. In *Farmer*, the Supreme Court distinguished Eighth Amendment deliberate indifference from deliberate indifference required for municipal liability, explaining "while deliberate indifference serves under the Eighth Amendment to ensure that only inflictions of punishment carry liability . . . the 'term was used in the *Canton* case for the quite different purpose of identifying the threshold for holding a city responsible for the constitutional torts committed by its inadequately trained agents.'" *Id.* (citations omitted). Thus, *Farmer* is of little import here. Plaintiffs also do not assert in their complaints that their failure-to-train claim falls within the single-incident exception. Nonetheless, Plaintiff's failure-to-train claim does not qualify for the single-incident exception because Plaintiffs fail to allege a complete lack of training as set forth above.

Similarly, for municipal liability to rest on a failure-to-supervise theory, "the plaintiffs must allege that '(1) the supervisor . . . failed to supervise . . . the subordinate official; (2) a causal link exists between the failure to . . . supervise and the violation of the plaintiff's rights; and (3) the failure to . . . supervise amounts to deliberate indifference.'" *Livezey*, 657 F. App'x at 278 (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998)). "'[M]ore than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference.'" *Id.* (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001)).

Plaintiffs maintain "the City of Balch Springs and Chief Haber failed to adequately supervise and/or discipline its employees in handling usual and recurring situations with which they deal; the Balch Springs City Council was deliberately indifferent to the need to supervise and/or discipline its officers and/or employees adequately; and the failure to adequately supervise and/or discipline its officers proximately caused the deprivation of Edwards, V.A., and K.E.'s constitutional rights." Edwards Fourth Am. Compl. 22; Stephens Third Am. Compl. 19; Washington Sec. Am. Compl. 19-20. Plaintiffs further allege "the City of Balch Springs and Chief Haber failed to adequately supervise and/or discipline Defendant Oliver for pointing his gun at a car full of females after a minor fender bender." Edwards Fourth Am. Compl. 22; Stephens Third Am. Compl. 19; Washington Sec. Am. Compl. 20.  In particular, Plaintiffs assert that "[h]ad the

City's Policymakers terminated Defendant Oliver for pulling out his pistol and pointing it at a car occupied by women and children, Edwards would be alive today," and "M.E. and M.E.'s constitutional rights would not have been violated." Edwards Fourth Am. Compl. 22; Stephens Third Am. Compl. 19; Washington Sec. Am. Compl. 20. However, Plaintiffs fail to plead facts to support that any purported failure to supervise or discipline amounted to deliberate indifference. Deliberate indifference requires more than "[a] showing of simple or even heightened negligence." *Bd. of Cty. Comm'rs*, 520 U.S. at 407. To allege deliberate indifference, a plaintiff must plead facts indicating "that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 410. "A pattern of similar constitutional violations by [unsupervised] employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to [supervise]." *Connick*, 563 U.S. at 62 (citing *Bd. of Cty. Comm'rs*, 520 U.S. at 409). Though Plaintiffs assert that the "Balch Springs City Council was deliberately indifferent," they offer no facts to support a pattern of similar constitutional violations resulting from a failure to supervise, and they fail to sufficiently plead a pattern of failures to discipline as discussed in section III, A together with general municipal liability.

But Plaintiffs "seem[ ] to assert that this single incident of the City's alleged failure to discipline [or supervise] . . . is sufficient to infer a policy or custom of such conduct." *Ling v. City of Garland*, 2007 WL 9712236, at *5 (N.D. Tex. Feb. 23, 2007). In *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), "the Fifth

39

Circuit permitted a jury to find a municipal policy after hearing evidence describing a single day of egregious events and the subsequent failure to discipline those officers involved." *Tarver v. City of Edna*, 2006 WL 3053409, at *8 (S.D. Tex. Oct. 26, 2006) (citing *Grandstaff*, 767 F.2d at 171-72). The Fifth Circuit later summarized *Grandstaff* as having affirmed a judgment against a Texas city on "a highly peculiar set of facts:"

> [I]n response to a minor traffic violation, three patrol cars engaged in a high speed chase during which they fired wildly at the suspected misdemeanant; the object of this chase took refuge on an innocent person's ranch, where the entire night shift of the city police force converged and proceeded to direct hails of gunfire at anything that moved; although nobody except the police was ever shown to have fired a shot, the innocent rancher was killed when the police shot him in the back as he was emerging from his own vehicle; after this "incompetent and catastrophic performance," . . . which involved a whole series of abusive acts, the officers' supervisors "denied their failures and concerned themselves only with unworthy, if not despicable, means to avoid legal liability."

*Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986) (quoting *Grandstaff*, 767 F.2d at 166, 171). However, "[s]ubsequent Fifth Circuit cases emphasize that the rationale presented in *Grandstaff* may only be applied to cases with equally extreme factual circumstances." *Tarver*, 2006 WL 3053409, at *8 (citing *Ledbetter*, 780 F.2d at 1161-62; *Stokes v. Bullins*, 844 F.2d 269, 274 n.8 (5th Cir. 1988); *Snyder v. Trepagnier*, 142 F.3d 791, 797-98 (5th Cir. 1998)). In cases that do not have comparably extreme facts, "the Fifth Circuit does not permit an inference of an unconstitutional custom or policy from a municipality's failure to

discipline an officer for a single incident." *Id.* (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278-79 (5th Cir. 1992)); *see also Ling*, 2007 WL 9712236, at *5. Here, the Court finds that Plaintiff has not pleaded facts that are so extreme as to permit an inference of an unconstitutional policy from a single incident of the City's alleged failure to discipline

Plaintiffs object that the Court's FCR "effectively eliminates the single-incident exception . . . even though the facts of this case exemplify when it applies." Edwards Obj. 21; Washington Obj.9. The Court already addressed the single-incident exception with respect to Plaintiffs' failure-to-train claim. However, Plaintiffs also assert that "the City itself drew the inference that inadequacies in . . . discipline posed a substantial risk of the same constitutional injuries inflicted upon Jordan," such that "this single incident is sufficient to demonstrate the City's deliberate indifference." Edwards Obj. 22; Washington Obj. 10. Plaintiffs liken this case to *Grandstaff*, stating that the facts of this case "are no less 'extreme' than the 'hails of gunfire' police in *Grandstaff* directed 'at anything that moved.'" Edwards Obj. 23; *see* Washington Obj. 10. Though Plaintiffs mention the single-incident exception in their response to the City's motion to dismiss, they do not discuss the single-incident exception or *Grandstaff* in their complaints. As the Court discussed in its FCR, "*Grandstaff* . . . has not enjoyed wide application in our circuit." *Barkley v. Dillard Dep't Stores, Inc.*, 277 F. App'x 406, 413 (5th Cir. 2008) (per curiam) (citing *Snyder,* 142 F.3d at 797); *see also Castro v. McCord*, 259 F. App'x 664, 669 (5th Cir. 2007) ("*Grandstaff,* however, has been limited to its unique facts.");

*Fuentes v. Nueces Cty.*, 689 F. App'x 775, 780 (5th Cir. 2017) (per curiam) (declining to apply *Grandstaff* because "this case does not present the sort of extreme factual situation warranting an inference that Nueces County ratified any violation by its officers"). In fact, the Fifth Circuit has recognized that "'it is nearly impossible to impute lax disciplinary policy to the City without showing a pattern of abuses that transcends the error made in a single case.'" *Quinn*, 863 F.3d at 365 (quoting *Piotrowski*, 237 F.3d at 582) (affirming the district court's dismissal of plaintiff's failure-to-discipline claim against the City). Further, Plaintiffs appear to assert that *Grandstaff* applies because "Chief of Police Haber supported Oliver's appalling behavior until the Dallas county Sherriff's department took over the investigation." Edwards Obj. 24; *see* Stephens Obj. 1-3; Washington Obj. 9-11. But "*Grandstaff* . . . does *not* stand for the broad proposition that if a policymaker defends his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy." *Ledbetter*, 780 F.2d at 1161 (emphasis in original); *accord Castro*, 259 F. App'x at 669. *Grandstaff* is tethered to its "highly peculiar set of facts." *Castro*, 259 F. App'x at 669 (quoting *Ledbetter,* 780 F.2d at 1161). Accordingly, the Court finds that Plaintiff has not pleaded facts that are so extreme as to permit an inference of an unconstitutional policy from a single incident of the City's alleged failure to discipline.

## C.  Individual Damages Under § 1983

Defendant the City moves to dismiss Plaintiffs' "individual damage claims," asserting that "[t]he right to bring a claim under 42 U.S.C. § 1983 is a personal right which does not accrue to a relative of the deceased." Def.'s Br. Supp. Edwards 3; Def.'s Br. Supp. Stephens 3; Def.'s Br. Supp. Washington 4. Plaintiff Edwards responds to the City's argument that "[t]here is no individual cause of action to recover damages based upon the alleged deprivation of the Constitutional rights of another," by arguing "Jordan's brothers are entitled to bring a bystander claim"; "Jordan's brothers bring their own excessive force claims"; and Jordan's father can "recover damages for loss of the parent-child relationship." Edwards Resp. 19-20. Plaintiff Stephens also responds that she is entitled "to recover damages for loss of the parent-child relationship." Stephens Resp. 7. Plaintiff Washington asserts that she is entitled to bring an "individual damage claim" on behalf of her sons, M.E. and M.E., to recover past and future medical expenses incurred as a result of their psychological treatment.[7] Washington Resp. 7. Plaintiffs' responses do not specifically address any individual damage claim separate from a state-law wrongful death or a "bystander claim." Their complaints, however, appear to assert individual claims for damages under § 1983. Plaintiff Edwards's complaint states that he "seeks compensation, individually, and as the Next Friend of minors V.A.

---

[7] While Washington asserts an "individual damage claim," she does not bring a "false arrest/unlawful detention claim against The city in [her] Second Amended Complaint." Washington Resp. 18.

and K.E. and as the personal representative on behalf of the Estate of Jordan Edwards" for violations of Jordan, V.A., and K.E.'s constitutional rights. Edwards Fourth Am. Compl. 21. Plaintiff Stephens's complaint also seeks "compensation individually," for violations of Jordan's constitutional rights. Stephens Third Am. Compl. 18-19. And Plaintiff Washington's complaint states, "As a result of these Constitutional violations to M.E. and M.E. and the injuries they sustained, [Plaintiff Washington] seeks compensation, individually, and as the Next Friend of minors M.E. and M.E." Wash. Sec. Am. Compl. 19. Because the Court finds that Plaintiffs fail to state a claim for municipal liability against the City on any theory, the Court does not reach the issue of individual damages under § 1983 against the City.

However, Plaintiffs Edwards and Stephens assert that they are "entitled to recover loss of consortium damages for the death of [their] child." Edwards Resp. 19; *see* Stephens Resp. 7-8. Because the assertion appears under the "VI. Damages" heading in Plaintiffs' complaints, and not under "V. Causes of Action," the Court construes any loss-of-consortium claim as a claim for damages under § 1983. Edwards Fourth Am. Compl. 23; Stephens Third Am. Compl. 20. The Fifth Circuit has "consistently held that a parent may recover damages analogous to state law wrongful death damages in a § 1983 action based on the violation of her child's civil rights." *Flores v. Cameron Cty.*, 92 F.3d 258, 271 (5th Cir. 1996) (citing *Rhyne v. Henderson Cty.,* 973 F.2d 386, 391 (5th Cir. 1992)). Thus, had Plaintiffs successfully stated a § 1983-municipal-liability claim against the City, they could

be entitled to damages analogous to state-law wrongful-death damages for the violation of their child's civil rights. That is, the possibility of recovering such damages would not be legally foreclosed, contrary to Defendant's assertion. *See* Def.'s Br. Supp. Edwards 4; Def.'s Br. Supp. Stephens 4. However, because the Court determines that Plaintiffs fail to state a § 1983 claim against the City on any theory, the Court pretermits the issue of individual damages under § 1983 against the City.

### D. "Bystander" and State-law Claims

Defendant the City next moves to dismiss Plaintiffs' "bystander claims," maintaining that "[o]ne who merely witnesses police action directed to another may not recover damages for such action . . . regardless of the proximity of the bystander." Def.'s Br. Supp. Edwards 3-4; Def.'s Br. Supp. Stephens 3-4; Def.'s Br. Supp. Washington 4. Specifically, the City's motion is "directed toward any claims of the minor plaintiffs V.A. and K.E. which are based upon the alleged deprivation of the Constitutional rights of the deceased." Def.'s Reply Edwards 2 (ECF No. 149). In his response, Plaintiff Edwards asserts that "Jordan's brothers are entitled to bring a bystander claim based on having witnessed the fatal shooting of Jordan," and cites *Edinburg Hospital Authority v. Treviño*, 941 S.W.2d 76, 80 (Tex. 1997). Edwards Resp. 19. Plaintiff Stephens and Washington do not address any bystander claim in their responses, nor do they assert bystander claims in their complaints. In Plaintiff Edwards's complaint, however, he asserts bystander claims on behalf of both V.A. and K.E. Edwards Fourth Am. Compl. 23-24. Because

Plaintiff Edwards includes his bystander claims under the heading "VI. Damages" and not "V. Causes of Action," the Court construes his "bystander claims" as claims for damages under § 1983 and not as separate state-law causes of action.[8]

"Section 1983 imposes liability for violation of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan,* 443 U.S. 137, 146 (1979). "Negligent infliction of emotional distress is a state common law tort; there is no constitutional right to be free from witnessing . . . police action." *Grandstaff*, 767 F.2d at 172. Thus, federal law does not recognize a § 1983 "bystander" claim. *See id.* ("We conclude that, under Texas law, this recovery [for emotional injuries suffered as bystanders] is proper against the officers, but that it is not permitted under § 1983 and may not therefore be recovered from the City."). Because there is no cognizable "bystander" claim under § 1983, and because Plaintiff Edwards fails to state a § 1983-municipal-liability claim against the City, the Court finds that he is not entitled to damages on that basis.

---

[8] Defendant the City also apparently did not construe Plaintiff's claims as separate state-law tort claims; otherwise, it presumably would have raised an immunity defense. *See Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 389 (Tex. App.—Fort Worth 2008, no pet.) (citing Tex. Civ. Prac. & Rem. Code § 101.0215(a), (b)) ("A municipality is liable for torts arising from the exercise of its proprietary functions, but it is generally immune from suit and liability for torts arising from the exercise of its governmental functions, except for the limited waiver provided by the Texas Tort Claims Act."); *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994).

Similarly, in his complaint under the heading "VI. Damages," Plaintiff Edwards includes the subheading "Estate of Jordan Edwards (Survival Claim; Tex. Civ. Prac. & Rem. Code § 71.021)," and under that same heading, both Plaintiff Edwards and Stephens include the subheading "(as wrongful death beneficiary of Jordan Edwards; Tex. Civ. Prac. & Rem. Code § 71.004)." Edwards Fourth Am. Compl. 23; Stephens Third Am. Compl. 20. Like Plaintiff Edwards's bystander claims, the Court construes these subheadings as asserting separate bases for damages in conjunction with their § 1983-municipal-liability claims, rather than independent state-law wrongful-death or survival causes of action. Thus, because Plaintiffs fail to state a claim against the City for municipal liability, the Court also does not reach the issue of whether Plaintiffs are entitled to damages on these bases.

Plaintiff Edwards objects to the Court's conclusion that there is no cognizable "bystander claim" under § 1983 and maintains that it is an "incorrect statement of the law." Edwards Obj. 28. Edwards asserts that K.E. and V.A. are entitled to bring "bystander claims" because they "were directly subjected to Officer Oliver's unconstitutional misconduct." *Id.* Edwards cites *Petta v. Rivera*, 143 F.3d 895, 903 (5th Cir. 1998) (per curiam), as support for his claim that K.E. and V.A. are entitled to bring "bystander claims." He states that "'[a]lthough the Petta children fortuitously escaped physical injury,' [they] stated a valid bystander claim to recover for the psychological pain and injuries resulting from the officer's conduct toward them." Edwards Obj. 29 (quoting *Petta*, 143 F.3d at 903). But

47

"*Petta* does not support the argument that a witness who merely observes the alleged use of excessive force against another has a right to recover damages for what was witnessed." *Young v. Green*, 2012 WL 3527040, at *5 (S.D. Tex. Aug. 15, 2012) (Rosenthal, J.). Rather, in *Petta*, the Petta children were able to bring § 1983 claims against the officer for their own psychological injuries, not their mother's. *See Petta*, 143 F.3d at 903 ("Although the Petta children fortuitously escaped physical injury, the evidence fully supports a reasonable inference that the Petta children have suffered psychological pain, injuries and disabilities as the result of Rivera's use of deadly force and extreme violence in attempting to shoot, break into, and pull over the Petta vehicle, after cursing, yelling at, and threatening to kill their mother."). Thus, any liability would not flow from observing the officer's conduct toward their mother but from injuries that the children personally suffered. Edwards asserts that "V.E. [sic] and K.E. bring claims against the City for the emotional injuries inflicted on them directly by the City's officers." Edwards Obj. 30. Plaintiff Edwards, as next friend of K.E. and V.A., does not bring a municipal-liability claim against the City for V.A. and K.E.'s psychological injuries in his Fourth Amended Complaint. Because the Court recommends granting Plaintiffs leave to amend their complaints, Edwards may amend his complaint to join K.E. and V.A. so that they may assert § 1983 claims against the City for any psychological injury.

48

IV.

In their responses, Plaintiffs request leave to amend should the Court find any defects in their complaints. Edwards Resp. 22; Stephens Resp. 18; Washington Resp. 18. District courts are "entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment.'" *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., LP,* 427 F.3d 987, 994 (5th Cir. 2005)). Although this case has been pending for more than two years, Plaintiffs have not unduly delayed their request to amend. Plaintiffs filed their live complaints immediately after the stay in this case was lifted, and they requested leave to amend—in the event the Court found their pleadings deficient—in their responses to the City's motions to dismiss. The Court also finds no evidence of bad faith or undue prejudice to the City in granting Plaintiffs' requests. The interests at issue in this case are extremely important, and the Court's May 17, 2019 FCR was the Plaintiffs' first opportunity to hear what the Court perceives as deficiencies in their pleadings. Nor would allowing Plaintiffs leave to amend be an exercise in futility. Plaintiffs' Objections in response to the Court's FCR indicate that they may be able to allege facts to state a claim for municipal liability. Additionally, Plaintiffs may have new facts available to incorporate in their pleadings since the parties have been engaged in discovery

and have conducted several depositions while the City's motions to dismiss have been pending. Accordingly, Plaintiffs' requests for leave to amend should be GRANTED, and they should be permitted one final opportunity to plead their case.

V.

The City also requests the Court award it costs, including reasonable attorney's fees, under 42 U.S.C. § 1988, which provides that "the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Section 1988 has been interpreted to provide for the recovery of costs by a prevailing defendant when a plaintiff maintains an unfounded action in bad faith, vexatiously, wantonly, or for oppressive reasons. *Holloway v. Walker*, 784 F.2d 1294, 1296 (5th Cir. 1986) (per curiam) (citation omitted). Here, the City does not argue—nor is there anything in the record to suggest—that Plaintiffs' claims were filed in bad faith or with malicious intent. The fact that the Court is recommending dismissal of Plaintiffs' claims is not in itself sufficient justification for a fee award. *Hughes v. Rowe*, 449 U.S. 5, 15 (1980) (per curiam) ("The fact that a . . . complaint, . . . cannot survive a motion to dismiss does not, without more, entitle the defendant to attorney's fees."). Accordingly, Defendant's request to recover costs and attorney's fees under 42 U.S.C. § 1988 should be DENIED.

## Recommendation

For the reasons stated, the District Court should GRANT Defendant the City of Balch Springs's motions to dismiss (ECF Nos. 132, 135, and 137) and DISMISS Plaintiffs' claims against the City without prejudice. The Court also should GRANT Plaintiffs' requests to amend their complaints and DENY Defendant's request to recover costs and attorney's fees under 42 U.S.C. § 1988.

**SO RECOMMENDED.**

August 12, 2019.

_____

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

51

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).