IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ODELL EDWARDS, Individually and<br>as Representative of the Estate of<br>Jordan Edwards, Deceased,<br>VIDAL ALLEN and KEVON EDWARDS,<br>Plaintiffs, | §<br>§<br>§<br>§<br>§ | |
| | § | No. 3:17-cv-01208-M-BT |
| SHAUNKEYIA KEYON STEPHENS,<br>RHONDA WASHINGTON,<br>MAXWELL EVERETTE, and<br>MAXIMUS EVERETTE,<br>Intervenor-Plaintiffs, | §<br>§<br>§<br>§<br>§<br>§ | |
| v. | §<br>§ | |
| ROY OLIVER and THE CITY OF<br>BALCH SPRINGS, TEXAS,<br>Defendants. | §<br>§<br>§ | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This 42 U.S.C. § 1983 civil-rights action to recover damages arises out of the shooting death of Jordan Edwards by former Balch Springs police officer Defendant Roy Oliver. Defendant the City of Balch Springs (the "City") has filed separate motions to dismiss all of the claims asserted against it by each Plaintiff in his or her most recent amended complaint: (1) the City's Rule 12(b)(6) Motion to Dismiss Plaintiff Odell Edwards's Fifth Amended Complaint (ECF No. 278); (2) the City's Rule 12(b)(6) Motion to Dismiss Intervenor-Plaintiff Shaunkeyia Stephens's Fourth Amended Complaint (ECF No. 279); and (3) the City's Rule

1

12(b)(6) Motion to Dismiss Intervenor-Plaintiff Rhonda Washington's Third Amended Complaint (ECF No. 280).[1]

At this procedural stage, the Rule 12(b)(6) stage, the question the Court must answer concerning the City's motions to dismiss is whether Plaintiffs[2] have alleged facts with respect to each element of the claims they assert, rendering their claims plausible, not merely possible. The Court does not examine evidence at the Rule 12(b)(6) stage, must accept Plaintiffs' allegations as true, and any ambiguity in law or fact must be resolved in favor of Plaintiffs. In their amended complaints, Plaintiffs allege, for the first time, that the City's formal, written use-of-force policy is unconstitutional because, among other things, it does not comport with the United States Supreme Court's directives on the use of deadly force—in particular, that deadly force is unconstitutional when a suspect poses no immediate threat to the officer and no threat to others. Plaintiffs' new allegations also inform their claims that the City failed to train and supervise or discipline its officers. Because the Court finds Plaintiffs assert sufficient facts, which the Court must accept as true at this stage, to state viable claims against the City based on its allegedly unconstitutional use-of-deadly-force policy and failure-to-train and failure-to-supervise or -discipline theories of liability, it now recommends the District Court deny the City's motions and permit Plaintiffs' claims against the City to move forward to the procedural stage where evidence may be tested. Accordingly, the

---

[1] Defendant Oliver has not filed an answer or other response to any of Plaintiffs' live pleadings.
[2] The Court collectively refers to Odell Edwards, Vidal Allen, Kevon Edwards, Shaunkeyia Keyon Stephens, Maxwell Everette, Maximus Everette, and Rhonda Washington as "Plaintiffs."

District Court should DENY in the City's motions.

I.

In their live pleadings, Plaintiffs allege that on April 29, 2017, fifteen-year-old Jordan Edwards attended a house party in Balch Springs with other teenagers, including his brothers, Vidal Allen and Kevon Edwards, and the Everette twins, Maxwell and Maximus Everette.[3] At around 11:00 p.m., Balch Springs Police Department (BSPD) officers arrived to shut down the party.[4]  The crowd quickly dispersed, and Maxwell, Maximus, Vidal, Kevon, and Jordan got in a car to leave the party.[5] As Vidal drove the car slowly in reverse, away from BSPD officers Tyler Gross and Defendant Oliver, Oliver fired five shots from his assault rifle at the car.[6] One bullet struck Edwards in the head and killed him.[7] When Vidal stopped the car, BSPD officers approached and ordered the teenagers out of the car.[8] Although Vidal, Kevon, Maxwell, and Maximus complied with the officers' orders, the officers shouted and pointed their guns at them.[9] BSPD officers grabbed Vidal, handcuffed him, and put him in the back of a patrol car, where he would remain

---

[3] Edwards Fifth Am. Compl. 4 (ECF No. 270); Stephens Fourth Am. Compl. 5 (ECF No. 273); Washington Third Am. Compl. 4 (ECF No. 271).
[4] Edwards Fifth Am. Compl. 5; Stephens Fourth Am. Compl. 4; Washington Third Am. Compl. 4.
[5] Edwards Fifth Am. Compl. 5; Stephens Fourth Am. Compl. 4; Washington Third Am. Compl. 4.
[6] Edwards Fifth Am. Compl. 5; Stephens Fourth Am. Compl. 5; Washington Third Am. Compl. 5.
[7] Edwards Fifth Am. Compl. 6; Stephens Fourth Am. Compl. 5; Washington Third Am. Compl. 5.
[8] Edwards Fifth Am. Compl. 6; Stephens Fourth Am. Compl. 5; Washington Third Am. Compl. 5.
[9] Edwards Fifth Am. Compl. 6-7; Stephens Fourth Am. Compl. 6-7; Washington Third Am. Compl. 6.

for over two hours.[10] Vidal, Kevon, Maxwell, and Maximus were arrested but were not told why.[11]

Jordan died from the gunshot wound to his head. Plaintiff Odell Edwards, Jordan, Vidal, and Kevon's father, together with Vidal and Kevon, who have now reached the age of majority; Intervenor-Plaintiff Shaunkeyia Stephens, Jordan and Kevon's mother; and Intervenor-Plaintiff Rhonda Washington, Maxwell and Maximus's mother, together with Maxwell and Maximus, who are also no longer minors, filed separate complaints against the City of Balch Springs and Oliver. Plaintiffs Odell, Vidal, and Kevon bring claims on their own behalves, and Odell also brings claims on behalf of Jordan's estate.[12] Intervenor-Plaintiffs Washington, Maxwell, and Maximus bring claims on their own behalves.[13] Intervenor-Plaintiff Stephens brings claims individually.[14]

With respect to the City, Plaintiffs assert municipal-liability claims under § 1983 for violating Jordan, Vidal, Kevon, Maxwell, and Maximus's Fourth Amendment rights, alleging that the City, through its official policymakers, promulgated an unconstitutional written use-of-force policy and failed to properly train, supervise, or discipline BSPD officers, including those known to have engaged in excessive, deadly force.[15] Plaintiffs further allege that the City's policies

---

[10] Stephens Fourth Am. Compl. 6.
[11] Edwards Fifth Am. Compl. 7; Stephens Fourth Am. Compl. 7; Washington Third Am. Compl. 6.
[12] Edwards Fifth Am. Compl. 22-33.
[13] Washington Third Am. Compl. 20-28.
[14] Stephens Fourth Am. Compl. 19-25.
[15] Edwards Fifth Am. Compl. 24-30; Stephens Fourth Am. Compl. 21-25; Washington Third Am. Compl. 21-28.

were the "moving forces" behind their constitutional injuries, and, therefore, the City itself is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).[16]

The City previously moved to dismiss Plaintiffs' preceding complaints; the Court granted the City's motions but permitted Plaintiffs a final opportunity to replead.[17] The City has now filed three separate motions to again dismiss each of Plaintiffs' complaints for failure to state a claim.[18] All three motions are fully briefed and ripe for determination.

## II.

When deciding a Rule 12(b)(6) motion for failure to state a claim, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[19] Therefore, "all questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor"; nonetheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[20]

---

[16] Edwards Fifth Am. Compl. 30; Stephens Fourth Am. Compl. 24; Washington Third Am. Compl. 27-28.

[17] Order (ECF No. 265).

[18] City's Mot. Edwards (ECF No. 278); City's Mot. Stephens (ECF No. 279); City's Mot. Washington (ECF No. 280).

[19] *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks and citation omitted).

[20] *Covington v. City of Madisonville*, --- F. App'x ----, 2020 WL 2516661, at *4 (5th Cir. May 15, 2020) (per curiam) (internal quotation marks and alterations omitted) (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001); *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). *See also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (recognizing that the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions")).

"'To survive a motion to dismiss,' [Plaintiffs'] *Monell* pleadings 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"[21] "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"[22] This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support.[23] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[24] "[A] formulaic recitation of the elements of a cause of action will not do."[25] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[26] Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that Plaintiffs are plausibly entitled to relief.[27]

Plaintiffs cite *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842-43 (S.D. Tex. 2011) and *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), for the proposition that "[u]nder Rule 8(a), as interpreted by *Twombly* and *Iqbal*, 'only minimal factual allegations should be required at the motion to dismiss stage,' where municipal liability claims

---

[21] *Ratliff v. Aransas Cty.*, 948 F.3d 281, 284-85 (5th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678).
[22] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[23] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).
[24] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).
[25] *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286).
[26] *Iqbal*, 556 U.S. at 679.
[27] *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

are concerned."[28] Plaintiffs reject the undersigned's previous characterization of *Thomas* as presenting a middle-ground approach "[t]o address perceived tension between *Twombly-Iqbal* and *Leatherman*'s pleading requirements for § 1983 municipal-liability claims,"[29] and instead argue that *Thomas* and its progeny "simply clarify what level of specificity satisfies the ordinary standard for municipal liability claims and caution against requiring a heightened level of specificity."[30] The undersigned reaffirms that applying *Twombly* and *Iqbal*'s plausible-pleading standard to § 1983 municipal-liability cases does not impose a heightened pleading standard.[31] Further, the Fifth Circuit recently clarified that while "*Leatherman*, a pre-*Twombly* case, held that courts must not apply a 'heightened' pleading standard to *Monell* claims[,] . . . *Leatherman* did not require courts to accept 'generic or boilerplate' pleadings . . . . Indeed, our precedents make clear that the *Twombly* standard applies to municipal liability claims."[32]

"Regardless of the required proof needed to ultimately prevail on a given claim, when ruling on a Rule 12(b)(6) motion, courts examine the factual allegations of the operative pleading to determine whether asserted claims survive

---

[28] Edwards Resp. 12 (ECF No. 293).

[29] Supp. FCR 7 (ECF No. 240),

[30] Edwards Resp. 13.

[31] *See Speck v. Wiginton*, 606 F. App'x 733, 735-36 (5th Cir. 2015) (per curiam) (holding that district court did not "err in applying the ordinary pleading standard to failure to train allegations" and "correctly stated that the proper standard was Rule 8 as interpreted by [*Twombly* and *Iqbal*]"); *see also Saenz v. City of El Paso*, 637 F. App'x 828, 832 (5th Cir. 2016) (per curiam) (applying Rule 8 as interpreted by *Twombly* and *Iqbal* without discussing *Leatherman* and affirming dismissal of failure-to-train claim).

[32] *Ratliff*, 948 F.3d at 284 (citing *Peña v. City of Rio Grande City*, 879 F.3d 613, 621-22 (5th Cir. 2018); *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866 n.10 (5th Cir. 2012) (en banc)).

the motion [to dismiss]."[33] "In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201."[34] Accordingly, the Court does not weigh any evidence and only considers the factual allegations in Plaintiffs' complaints.

III.

Plaintiffs specifically contend the following City policies "were the 'moving forces' behind their constitutional injuries:"[35]

> (1) the City's facially unconstitutional written policies on the use of force ([Edwards Fifth Am. Compl.] ¶¶ 33-36);
>
> (2) the City's unwritten policy of failing to adequately train Balch Springs officers like Oliver on the constitutional limits on the use of force, particularly when Oliver had established he was violent and did not know how to respond to civilian encounters or when it was proper to use his service weapon (*Id.* [ ] ¶¶ 40, 48-50, 55, 75-82);
>
> (3) the City's unwritten policy of failing to adequately discipline or supervise to [sic] officers like Oliver who violate police department policy or the constitutional rights of Balch Springs civilians—as Sergeant Young did before Oliver (*Id.* [ ] ¶¶ 41, 82–86); and

---

[33] *E.G. ex rel. Gonzalez v. Bond*, 2016 WL 8672774, at *5 (N.D. Tex. Sept. 9, 2016) (citing *Groden v. City of Dallas*, 826 F.3d 280, 282-83 (5th Cir. 2016)), *adopted as modified by* 2017 WL 129019 (N.D. Tex. Jan. 13, 2017).

[34] *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citing *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005)).

[35] Edwards Resp. 15; *see also* Stephens Resp. 15 (ECF No. 295) (enumerating same city policies).

(4) the City's unwritten policy to "shoot first and ask questions later," evidenced by these training, disciplinary, and supervision failures (*Id.* [ ] ¶¶ 48, 60–72, 77).

The undersigned first addresses Plaintiffs' claim for § 1983 municipal liability, based upon the City's allegedly unconstitutional official use-of-force policy, before addressing Plaintiffs' failure-to-train and failure-to-supervise and -discipline theories. Last, the undersigned turns to Plaintiffs' claims for individual damages and "bystander claims."[36]

## A. Section 1983 Municipal Liability

The City asserts Plaintiffs' amended complaints fail to state a claim for municipal liability because they identify "no particular policymakers"; they "contain[] no specific factual allegations . . . which would support an inference of deliberate indifference by any City policymaking official as to any unconstitutional practice or custom"; the City's use-of-force policy does not "contradict[] applicable jural holdings"; Plaintiffs' amended complaints "lack[] sufficient factual support for the purported failure to train and supervise claims"; and "[t]o the extent Plaintiff[s] purport[] to seek municipal liability based upon a theory of practice or

---

[36] In its motions to dismiss, the City states "[t]o the extent Plaintiff[s'] suit against the City 'particularly the Balch Springs Police Department' may be construed as a suit against the police department as a separate defendant, said claim fails to state a cognizable claim as the police department lacks an independent jural existence and is not subject to suit." City's Mot. Edwards 2; City's Mot. Stephens 1-2; City's Mot. Washington 1-2; *see also* Edwards Fifth Am. Compl. (naming "The City of Balch Springs, Texas, particularly the Balch Springs Police Department" as a defendant); Stephens Fourth Am. Compl. (same); Washington Third Am. Compl. (same). The Court understands any claim against the Balch Springs Police Department to be a claim against the City of Balch Springs—therefore, the Court need not dismiss the BSPD for lack of jural existence.

custom, the policy and custom allegations are conclusory and lacking in factual specificity as there are no factual allegations indicating any custom of the improper application of deadly force."[37]

While § 1983 claims may be brought against municipalities "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," municipalities cannot be held liable solely for employing a tortfeasor; that is, they "cannot be held liable under § 1983 on a *respondeat superior* theory."[38] This is because "under § 1983, local governments are responsible only for their *own* illegal acts."[39] And "[t]hey are not vicariously liable under § 1983 for their employees' actions."[40] Requiring municipal-liability plaintiffs to identify an allegedly unconstitutional municipal policy or custom "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."[41] "To prevent municipal liability . . . from collapsing into *respondeat superior* liability, a court must

---

[37] City's Br. Edwards 10-15 (ECF No. 281); City's Br. Stephens 10-15 (ECF No. 282); City's Br. Washington 10-16 (ECF No. 283).

[38] *Monell*, 436 U.S. at 690-91; *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*.").

[39] *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 479 (1986)).

[40] *Id.* (citations omitted); *see also Pembaur,* 475 U.S. at 479 ("Congress . . . doubt[ed] its constitutional power to impose such liability in order to oblige municipalities to control the conduct of *others*." (emphasis in original)).

[41] *Bd. of Cty. Comm'rs*, 520 U.S. at 403-04 (citing *Monell,* 436 U.S. at 694).

carefully test the link between the policymaker's inadequate decision and the particular injury alleged."[42] Accordingly, "[a]s is generally the case in § 1983 cases, it is far more difficult for [a] plaintiff to establish municipal liability . . . than to establish individual liability."[43] Though the Court does not require "proof" of any element at the motion-to-dismiss stage, a "plaintiff[ ] must allege facts that support the elements of the cause of action in order to make out a valid claim."[44] Accordingly, the undersigned now recites the elements of a municipal-liability claim.

To state a claim for municipal liability under § 1983, "a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'"[45] A plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."[46] "[I]solated unconstitutional actions by municipal employees will

---

[42] *Id*. at 410.

[43] *Ayers v. City of Holly Springs*, 2006 WL 2943295, at *4 (N.D. Miss. Oct. 13, 2006); *see also Jackson ex rel. Martin v. Town of Tutwiler*, 2018 WL 6033596, at *3 (N.D. Miss. Nov. 16, 2018) ("[T]his court acknowledges that federal law does, in fact, make it quite difficult for plaintiffs to recover against municipalities in § 1983 cases.").

[44] *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) (per curiam); *see also Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) ("However, 'the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216 at 156-59)).

[45] *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citing *Monell*, 436 U.S. at 691).

[46] *Id*. at 541-42. (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

almost never trigger [municipal] liability."[47] With respect to the first prong, a plaintiff sufficiently alleges an official policy exists by pleading facts that demonstrate:

> (1) a policy statement, ordinance, regulation, or decision . . . [was] officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents a municipal policy.[48]

Under the second prong, the policymaker possessing actual or constructive knowledge must have "the responsibility for making law or setting policy in any given area of a local government's business."[49] "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."[50] Last, under the third prong, a plaintiff must establish that "the municipal action was taken with the requisite degree of culpability and . . . demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[51] The undersigned first addresses Plaintiffs'

---

[47] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (per curiam); *McKee v. City of Rockwall,* 877 F.2d 409, 415 (5th Cir. 1989)).

[48] *Burge v. Saint Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003) (quoting *Bennett*, 735 F.2d at 862); *see also Bd. of Cty. Comm'rs*, 520 U.S. at 404 ("Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." (citations omitted)).

[49] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988); *see also Valle*, 613 F.3d at 542.

[50] *Pembaur*, 475 U.S. at 481.

[51] *Bd. of Cty. Comm'rs*, 520 U.S. at 404.

allegations with respect to the first prong, an official policy or custom.

i. Official Use-of-Force Policy

In their amended complaints within the "Facts" section, all Plaintiffs allege the BSPD's "written policies on the use of force are facially unconstitutional and caused the violation of Plaintiffs' Fourth Amendment rights."[52] The City moves to dismiss these claims because Plaintiffs' allegations that BSPD "has in place certain force policies which . . . contradict existing use of force precedent" are "conclusory and unsupported."[53]

The reasonableness of police procedures on the use of force is evaluated under the Fourth Amendment.[54] "Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."[55] "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them,

---

[52] Edwards Fifth Am. Compl. 13; Stephens Fourth Am. Compl. 12; Washington Third Am. Compl. 12. Stephens is the only Plaintiff who did not plead within her amended complaint's "Causes of Action" section that the City's "written policies on the use of force are facially unconstitutional and were a moving force behind violating" Jordan, Vidal, Kevon, Maximus, or Maxwell's constitutional right to be free from excessive force. *See* Stephens Fourth Am. Compl.; *but see* Edwards Fifth Am. Compl. 24; Washington Third Am. Compl. 22. Nevertheless, the section headings are not dispositive. To the extent the other Plaintiffs have stated a claim for a constitutional violation based on the City's written use-of-deadly-force policy, the Court should find that the same facts pleaded in Stephens's Fourth Amended Complaint similarly state a claim.
[53] City's Br. Edwards 5-6; City's Br. Stephens 6; City's Br. Washington 5-6.
[54] *See Tennessee v. Garner*, 471 U.S. 1, 15-16 (1985); *see also Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014).
[55] *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Terry v. Ohio,* 392 U.S. 1, 22-27 (1968)).

without regard to their underlying intent or motivation."[56] And "the calculus of reasonableness" must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[57]

"To gauge the *objective* reasonableness of the force used by a law enforcement officer," a court "must balance the amount of force used against the need for force, paying careful attention to the facts and circumstances of each particular case."[58] Specifically, the Fourth Amendment's case-specific balancing exercise involves considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest."[59] But "the use of deadly force is permitted only to protect the life of the shooting officer or others: 'Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.'"[60] A municipality's use-of-force policy must adhere to the foregoing Fourth Amendment jurisprudence. And "[w]here an official policy or practice is unconstitutional on its face," a plaintiff need not establish deliberate indifference

---

[56] *Id.* at 397 (citing *Scott v. United States*, 436 U.S. 128, 137-39 (1978); *Terry*, 392 U.S. at 21).
[57] *Id.* at 396-97.
[58] *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (internal quotation marks omitted) (emphasis added) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004)).
[59] *Hill v. Carroll Cty.*, 587 F.3d 230, 234 (5th Cir. 2009) (internal quotation marks omitted) (quoting *Graham,* 490 U.S. at 396).
[60] *Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019) (quoting *Garner*, 471 U.S. at 11).

because "it necessarily follows that a policymaker was not only aware of the specific policy but was also aware that a constitutional violation was most likely to occur."[61]

Here, Plaintiffs assert that the "policies governing the use of deadly and non-deadly force in the Balch Springs Police Department's General Orders Manual are facially unconstitutional" because they "instruct officers that [(1)] the degree of non-deadly force is objectively reasonable even when based on the officers' subjective evaluation" and that (2) the officers "may even use deadly force when no immediate threat of harm actually exists."[62] With respect to the first reason, because "the United States Supreme Court has concluded that the objective reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene" and "not based on the particular officer's subjective evaluations," Plaintiffs assert the City's policy unconstitutionally permits officers to consider subjective criteria by defining "objectively reasonable" to include the officer's "own age, size, strength, skill level with department weapons, or state of health" in evaluating the reasonable application of force.[63] Concerning the second reason, Plaintiffs assert the "United States Supreme Court has not interpreted the constitution to justify using deadly force when the officer

---

[61] *Hobart v. City of Stafford*, 2015 WL 1637876, at *13 (S.D. Tex. Apr. 13, 2015) (citing *Burge,* 336 F.3d at 370; *Boyd v. City of Houston*, 548 F. App'x 100, 103 (5th Cir. 2013) (per curiam); *Piotrowski*, 237 F.3d at 579-80)); *see also Hobart*, 2015 WL 1637876, at *14 ("If a plaintiff is able to demonstrate that a municipality promulgated a policy that was unconstitutional on its face, he or she does not also need to prove that the policy was promulgated with knowing disregard for its consequences—knowledge is presumed.").

[62] Edwards Fifth Am Compl. 24; *see* Stephens Fourth Am. Compl. 13; Washington Third Am. Compl. 13, 22-23.

[63] Edwards Fifth Am Compl. 25 (internal quotation marks omitted); *see* Stephens Fourth Am. Compl. 13-14; Washington Third Am. Compl. 13, 22-23.

simply believes that a threat exists, even if the belief is reasonable."[64] And, therefore, "[a] policy that instructs officers that they may use deadly force when they reasonably believe a threat exists, regardless whether the threat actually exists and regardless whether the threat is immediate, violates the constitutional limits on the use of force."[65] The City responds that "Plaintiff's [sic] assertions that the City's force policy is unconstitutional on its face; is [sic] factually unsupported in the Complaint and in this record," and "[s]uch conclusory assertions should be disregarded by the Court."[66]

Plaintiffs' amended complaints specifically identify the following policy language, which they allege is unconstitutional, from the BSPD's General Orders Manual:

> A. Use of Non-deadly Force
>
> 1. Where deadly force is not authorized, officers may use only that level of force that is objectively reasonable and necessary to bring an incident under control.
>                    . . . .
>
> B. Use of Deadly Force
>
> Law enforcement officers are authorized to use deadly force when one or both of the following apply:
>
> To protect the officer or others from what is reasonably believed to be a threat of death or serious bodily injury.[67]

---

[64] Edwards Fifth Am. Compl. 24-25; Washington Third Am. Compl. 22; *see* Stephens Fourth Am. Compl. 13.

[65] Edwards Fifth Am. Compl. 24-25; Washington Third Am. Compl. 22; *see* Stephens Fourth Am. Compl. 13.

[66] City's Reply Edwards 1 (ECF No. 296) (internal quotation marks omitted); City's Reply Washington 1 (ECF No. 298) (internal quotation marks omitted).

[67] Edwards Fifth Am. Compl. 13; Stephens Fourth Am. Compl. 12-13; Washington Third Am. Compl. 12.

Plaintiffs also allege the General Orders Manual defines "objectively reasonable," as:

> 1.    Objectively Reasonable: This term means that, in determining the necessity for force and the appropriate level of force, officers shall evaluate each situation in light of the known circumstances, including, but not limited to, the seriousness of the crime, the level of threat or resistance presented by the subject, and the danger to themselves and the community.

> 2.    In evaluating the reasonable application of force, officers may consider their own age, size, strength, and skill level with department weapons, state of health, and the number of officers opposing the number of suspects.[68]

Plaintiffs allege this language contradicts established Supreme Court precedent on the constitutional limits on the use of force, and they cite *Cole v. Carson* and *Graham v. Connor* as examples of that precedent.[69] They also allege that Oliver acted according to that policy language when he used excessive deadly force, causing Jordan's death and their other injuries.[70] Plaintiffs allege that Oliver was unjustified in using deadly force against them because no Plaintiff posed any immediate threat to officers or others.[71] Plaintiffs allege they "were in front of Oliver," "were driving away from Oliver," and "were heading home;" "[no one] in

---

[68] Edwards Fifth Am. Compl. 14; Stephens Fourth Am. Compl. 13; Washington Third Am. Compl. 12.
[69] Edwards Fifth Am. Compl. 14; Stephens Fourth Am. Compl. 13; Washington Third Am. Compl. 13.
[70] Edwards Fifth Am. Compl. 14; Stephens Fourth Am. Compl. 13; Washington Third Am. Compl. 13.
[71] Edwards Fifth Am. Compl. 14; Stephens Fourth Am. Compl. 13; Washington Third Am. Compl. 13.

the vehicle had a gun in [his] hand;" "[no Plaintiff was] attempting to cause bodily harm to officers or others;" and "[Plaintiffs] were not actively resisting arrest or attempting to evade arrest by flight."[72] Plaintiffs further allege "[s]hooting at the moving car based on nothing more than Oliver's subjective perception of danger—as the BSPD's use of force policies unconstitutionally instruct officers they may—was objectively unreasonable and violated [Plaintiffs'] Fourth Amendment rights[.]"[73]

Taking Plaintiffs' allegations as true, as it must, the Court should find Plaintiffs have adequately alleged that the City's use-of-force policy is unconstitutional because it is inconsistent with controlling precedent regarding the limits on the use of deadly force. "*Tennessee v. Garner* announced the principle that the use of deadly force is permitted *only* to protect the life of the shooting officer or others: 'Where the suspect poses no *immediate threat* to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.'"[74] And the Fifth Circuit has repeatedly reaffirmed that an officer is *not* justified in using deadly force where the suspect poses no immediate threat.[75] Indeed, the immediacy of the threat is a critical factor

---

[72] Edwards Fifth Am. Compl. 14-15; Stephens Fourth Am. Compl. 13-14; Washington Third Am. Compl. 13.

[73] Edwards Fifth Am. Compl. 15; Stephens Fourth Am. Compl. 14; Washington Third Am. Compl. 13.

[74] *Cole*, 935 F.3d at 453 (quoting *Garner*, 471 U.S. at 11) (emphasis added).

[75] *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 278 (5th Cir. 2015) (observing "*Garner*'s command" is that deadly force is unconstitutional when a "suspect poses no immediate threat to the officer and no threat to others"); *Sanchez v. Fraley*, 376 F. App'x 449, 453 (5th Cir. 2010) (per curiam) (stating that it has been clearly established for years that "deadly force violates the Fourth Amendment *unless* the officer has probable cause to believe that the suspect poses a

in determining the objective reasonableness of the use of deadly force.[76] Here, Plaintiffs allege the BSPD's use-of-force policy is unconstitutional because it authorizes officers to use deadly force when they reasonably believe a threat of death or serious bodily injury exists, without instructing officers that the threat must be immediate—which contradicts well-established precedent that deadly force is not authorized if the suspect poses no immediate threat.[77]

Contrary to the City's argument, Plaintiffs sufficiently elaborate on their allegation to state a claim. Plaintiffs quote the specific language of the official written policy; they assert that the language contradicts Supreme Court precedent on the use of force; and they provide citations to two cases as examples of the controlling precedent violated by the official policy.[78] Plaintiffs further expound that Oliver was not justified in using deadly force because neither Jordan nor any of the other occupants in the car posed any immediate threat to officers or others.[79] Specifically, they allege "[the occupants in the car] were in front of Oliver, were driving away from Oliver, and were heading home . . . . Neither Jordan nor anyone

---

[76] threat of serious physical harm, either to the officer or to others," and that the threat of serious physical harm must be "immediate." (internal quotation marks and citations omitted)); *Reyes v. Bridgwater*, 362 F. App'x 403, 409 (5th Cir. 2010) ("The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others.").

[76] *See Bazan v. Hidalgo Cty*., 246 F.3d 481, 493 (5th Cir. 2001) ("The excessive force inquiry is confined to whether the [officer or another person] was in danger *at the moment of the threat* that resulted in the [officer's use of deadly force].") (emphasis in original).

[77] Edwards Fifth Am. Compl. 14-15; Stephens Fourth Am. Compl.13-14; Washington Third Am. Compl. 13-14.

[78] Edwards Fifth Am. Compl. 14; Stephens Fourth Am. Compl.13; Washington Third Am. Compl. 13.

[79] Edwards Fifth Am. Compl. 14; Stephens Fourth Am. Compl. 13; Washington Third Am. Compl. 13.

in the vehicle had a gun in [his] hand;" "[no Plaintiff was] attempting to cause bodily harm to officers or others;" "[was] actively resisting arrest;" or was attempting to flee.[80]

The City faults Plaintiffs for failing to cite *Tennessee v. Garner,* which it characterizes as "the seminal case for use of <u>deadly</u> force under the Fourth Amendment."[81] But Plaintiffs cite *Cole v. Carson*, a recent Fifth Circuit decision that relies on *Tennessee v. Garner*, and they include a parenthetical which asserts the case's holding is that "officers [are] not justified in using deadly force '[w]here the suspect *poses no immediate threat* to the officer and no threat to others.'"[82] Plaintiffs citations provide specific support for their allegation that the use-of-deadly-force policy is unconstitutional.

The City also objects that Plaintiffs fail to specifically allege that the identified policy was in place at the time of the April 2017 shooting incident.[83] But such a failure is not fatal to Plaintiffs' claim given the totality of the allegations in the amended complaints. Plaintiffs plead that they suffered constitutional injuries because Oliver acted on the allegedly unconstitutional policy when he used excessive deadly force against Jordan and the other occupants of the car, though

---

[80] Edwards Fifth Am. Compl. 14-15; Stephens Fourth Am. Compl. 13-14; Washington Third Am. Compl. 13.

[81] City's Br. Edwards 12; City's Br. Stephens 12; City's Br. Washington 12.

[82] Edwards Fifth Am. Compl. 14. (citing *Cole*, 935 F.3d at 453 ("*Tennessee v. Garner* announced the principle that the use of deadly force is permitted only to protect the life of the shooting officer or others . . . .")); Stephens Fourth Am. Compl. 13 (same); Washington Third Am. Compl. 13 (same).

[83] City's Br. Edwards 11; City's Br. Stephens 11; City's Br. Washington 11.

they posed no immediate threat to the officers.[84] From these facts, the Court determines Plaintiffs have sufficiently alleged the policy was in effect in April 2017. Because Plaintiffs have pleaded the City's official written policy is unconstitutional, they are not required to allege additional facts to establish deliberate indifference; for, where a plaintiff successfully states a claim based on an unconstitutional policy, "it necessarily follows that a policymaker was not only aware of the specific policy, but was also aware that a constitutional violation was most likely to occur."[85]

Plaintiffs also allege the City's official written use-of-force policy unconstitutionally permits consideration of subjective criteria in evaluating the reasonable application of force. Determining whether force is excessive or unreasonable under the Fourth Amendment requires evaluating if "'the totality of the circumstances' justified the particular use of force."[86] But the "reasonableness," and, therefore, the totality of the circumstances, "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision

---

[84] Edwards Fifth Am. Compl. 14; Stephens Fourth Am. Compl. 13; Washington Third Am. Compl. 13.

[85] *Hobart*, 2015 WL 1637876, at *13 (citing *Burge*, 336 F.3d at 370; *Boyd*, 548 F. App'x at 103; *Piotrowski*, 237 F.3d at 579-80); *see also Hobart*, 2015 WL 1637876, at *14 ("If a plaintiff is able to demonstrate that a municipality promulgated a policy that was unconstitutional on its face, he or she does not also need to prove that the policy was promulgated with knowing disregard for its consequences—knowledge is presumed.").

[86] *Ramirez*, 542 F.3d at 128 (quoting *Tennessee*, 471 U.S. at 9); *see also Darden v. City of Fort Worth*, 880 F.3d 722, 728-29 (5th Cir. 2018) ("Excessive force claims are necessarily fact-intensive; whether the force used is excessive or unreasonable depends on the facts and circumstances of each particular case." (citation and internal quotation marks omitted)).

of hindsight."[87] Plaintiffs are correct that "[t]his is an objective standard"—specifically, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."[88] Thus, "objective" refers to specific, situational facts confronting an officer that the Court considers to determine whether the force was reasonable, rather than the officer's "subjective" motivation or intent.[89]

In their response to the City's motion to dismiss, Plaintiffs Odell, Vidal, and Kevon contend "[c]ourts in the Fifth Circuit have recognized that considering things like the officer's size in comparison with the suspect and other characteristics of the officer, or what the officer thought was reasonable at that moment, applies a standard for the use of force that is subjective—not objective."[90] But Plaintiffs cite only one district court decision in support of that argument, *Adams v. City of Shreveport*, 269 F. Supp. 3d 743 (W.D. La. 2017), and they misapply its holding. In *Adams*, the plaintiff brought § 1983 claims "regarding the

---

[87] *Ramirez*, 542 F.3d at 128 (internal quotation marks omitted) (quoting *Graham*, 490 U.S. at 396).

[88] *Id.* at 128-29 (internal quotation marks omitted) (quoting *Graham*, 490 U.S. at 397); *see also Amador v. Vasquez*, 961 F.3d 721, 728 (5th Cir. 2020) (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).

[89] *Estate of Wise v. City of Gladewater*, 2019 WL 2302719, at *5 (E.D. Tex. May 30, 2019) (quoting *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1135 (5th Cir. 2014), and citing *Graham*, 490 U.S. at 396-97) ("The Court's inquiry is to be conducted from the viewpoint of a reasonable officer with the information available to the [officer] at the time force was applied, and [the officer's] own subjective beliefs or subjective intent are irrelevant.").

[90] Edwards Resp. 16-17. While Stephens and Washington assert the City's use-of-force policy improperly permits officers to utilize subjective criteria to evaluate reasonableness, they do not include that in their responses to the City's motions. *See* Stephens Fourth Am. Compl. 13; Washington Third Am. Compl. 13; *but see* Stephens Resp.; Washington Resp.

general use of force and training in the use of force" against the City of Shreveport, claiming that several "officers' descriptions of the [Shreveport Police Department]'s [(SPD)] use of force policies indicate[ ] that they use a subjective standard for determining the appropriate amount of force to be used in arresting a person while the Fourth Amendment's standard is . . . objective."[91] In their deposition testimony, some Shreveport police officers made statements such as the proper level of force "depends on the officer and the situation and who he's dealing with. Everybody is different. I'm smaller[;] other guys are bigger," and "there are a lot of different things that 'come into what would be reasonable to that officer at that moment.'"[92] The *Adams* court acknowledged that while "some of the statements [the officers] ma[de] could indicate that their standard for the use of force is a subjective rather than an objective standard," their "statements regarding the use of force could be read as an attempt to explain that though the standard is objective, the test must also take into account the knowledge of the circumstances available to the officer at the time of the use of force."[93] And, ultimately, the court found "no genuine dispute of material fact as to whether the City of Shreveport was deliberately indifferent to constitutional rights by failing to provide adequate training in the general use of force" because "SPD [officially] maintains an objective 'reasonableness' standard for the use of force, trains its officers in the application of this standard in its basic training course, and annually updates its

---

[91] *Adams v. City of Shreveport*, 269 F. Supp. 3d 743, 761 (W.D. La. 2017).
[92] *Id.*
[93] *Id.* at 761-63.

officers' training."[94] "[A]t most," the court concluded, the plaintiff "show[ed] that SPD officers are unable to provide perfect recitations of the objective 'reasonableness' standard for the use of force."[95]

In this case, the City's use-of-non-deadly-force policy provides that officers may use only "objectively reasonable" force and instructs them to consider the totality of the specific, situational facts confronting the officer in determining the appropriate level of force; the policy states these facts include "the seriousness of the crime, the level of threat or resistance presented by the subject, and the danger to themselves and the community." And the officer's evaluation of such specific, situational facts—particularly the threat level and the danger to the officer and the community—may be informed by other facts, such as the officer's "age, size, strength, skill level with department weapons, state of health, and the number of officers opposing the number of suspects." The City's policy does not state or suggest that the officer's motivation or intent is a relevant consideration; nor does it imply that subjective considerations are pertinent to determining the appropriate amount of force to be used. Therefore, the City's use-of-force policy does not unconstitutionally permit officers to consider subjective criteria in evaluating reasonable force.

As pleaded, Plaintiffs have alleged that the City's official written use-of-deadly-force policy is unconstitutional and was the moving force behind their

---

[94] *Id.* at 763.
[95] *Id.*

constitutional injuries. Thus, the Court should not dismiss Plaintiffs' municipal-liability claim against the City predicated on the City's allegedly unconstitutional official use-of-deadly-force policy.

### ii. Failure to Train, Supervise or Discipline, and Screen[96]

As an initial matter, the undersigned observes that Plaintiffs separately assert claims for failure to train and failure to supervise or discipline, but "the elements required to prove a claim under either theory are the same."[97] The Court, therefore, should consider these claims together.

The City moves to dismiss Plaintiffs' failure-to-train and -supervise claims because Plaintiffs have not alleged: specific, rather than conclusory, factual allegations, including "what training should have been provided or what training was allegedly defective"; that the failure to train or supervise reflected the City's

---

[96] The City mentions that "Plaintiffs allege, without specifics, that Oliver should not have been hired by the City." City's Br. Edwards 6; *see also* City's Br. Stephens 6; City's Br. Washington 16. Plaintiffs, however, do not assert a failure-to-screen claim against the City in their complaints based on an unconstitutional official, or unofficial, hiring policy, and the Supreme Court has rejected utilizing the single-incident exception in the inadequate-screening context. *See Bd. of Cty. Comm'rs,* 520 U.S. at 410-11 ("The fact that inadequate scrutiny of an applicant's background would make a violation of rights more *likely* cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation." (emphasis in original)). Rather, it appears Plaintiffs attempt to use allegations that Oliver's screening revealed he was unfit to serve as a police officer to indicate the City's deliberate indifference. Edwards Fifth Am. Compl. 18 ("Given the red flags raised by Oliver's pre-employment screening, the City of Balch Springs knew of the threat Oliver posed the public, and Oliver's subsequent misconduct was precisely what those red flags indicated would occur."); Stephens Fourth Am. Compl. 17 (same); Washington Third Am. Compl. 16-17 (same). However, the Fifth Circuit has held "that failing to respond to a history of 'bad or unwise acts' that 'demonstrate lack of judgment, crudity, and, perhaps illegalities' is not enough for deliberate indifference." *Livezey v. City of Malakoff*, 657 F. App'x 274, 278 (5th Cir. 2016) (per curiam) (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

[97] *Jean v. City of Dallas*, 2019 WL 7195308, at *5 n.6 (N.D. Tex. Aug. 12, 2019), *adopted by* 2019 WL 7187104 (N.D. Tex. Dec. 23, 2019) (citing *E.G. v. Bond*, 2017 WL 129019, at *3 (N.D. Tex. Jan. 13, 2017)).

deliberate indifference; or a sufficient pattern to demonstrate a policy of failing to train or supervise.[98] Plaintiffs respond that they include specific allegations concerning the City's inadequate training and supervision policies, allege a pattern of similar constitutional violations, and that that pattern evidences official deliberate indifference.[99] The Court should find that Plaintiffs have successfully pleaded failure-to-train and -supervise or -discipline claims.

"The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement."[100] To bring a failure-to-train claim, a plaintiff must allege: "1) the [city] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."[101]

Thus, "for liability to attach based on an 'inadequate training' claim, a

---

[98] City's Br. Edwards 13-15; City's Br. Stephens 13-15; City's Br. Washington 13-16.

[99] Edwards Resp. 18-22; Stephens Resp. 14-19; Washington Resp. 14-19. Plaintiffs also respond that "even where such a pattern does not exist," to evidence deliberate indifference with respect to a failure to train or supervise, the single-incident exception applies. Edwards Resp. 22; Stephens Resp. 16; Washington Resp. 16. But, though Plaintiffs mention the single-incident exception in their responses to the City's motions, they do not plead the single-incident exception as a theory of liability in their amended complaints. *See* Edwards Fifth Am. Compl.; Stephens Fourth Am. Compl.; Washington Third Am. Compl. Accordingly, the single-incident exception is not before the Court as a theory of liability, and the Court does not address it.

[100] *Peterson v. City of Fort Worth*, 588 F.3d 838, 849 (5th Cir. 2009) (citing *Brown v. Bryan Cty.*, 219 F.3d 450, 458 (5th Cir. 2000)).

[101] *Peña*, 879 F.3d at 623 (internal quotation marks omitted) (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001)).

plaintiff must allege with specificity how a particular training program is defective."[102] For example, in *Sanchez v. Gomez*, 283 F. Supp. 3d 524 (W.D. Tex. 2017), the court found that the parents of a mentally ill individual who was killed by police sufficiently alleged an inadequate training program by: pleading that the El Paso Police Department (EPPD) "provides absolutely no training to its officers in non-violent, non-confrontational methods of interacting with mentally ill individuals"; describing nine specific incidents in which mentally ill individuals had been killed or wounded by EPPD officers in previous years; and alleging that the EPPD Chief knew that officers routinely encountered mentally ill individuals, lacked the training to effectively respond to such situations, and used lethal force against such individuals on multiple occasions.[103]

Here, Plaintiffs allege "the City of Balch Springs, the BSPD, and Chief Haber failed to adequately train its officers on the constitutional limits of the use of force and in proper techniques for confronting suspects, obtaining compliance, de-escalating situations, responding to compliant suspects, and arresting suspects."[104] Additionally, the City "failed to adequately train its officers on how to deal with individuals, specifically teenagers, during a raid of an event and the subsequent use of deadly force."[105] Plaintiffs allege the following City "conduct, policies, and

---

[102] *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (citing *Benavides v. Cty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992)).
[103] *Sanchez*, 283 F. Supp. 3d at 535, 545.
[104] Edwards Fifth Am. Compl. 26; Stephens Fourth Am. Compl. 16; Washington Third Am. Compl. 24.
[105] Edwards Fifth Am. Compl. 26-27; Stephens Fourth Am. Compl. 21; Washington Third Am. Compl. 24.

customs violated [their] constitutional rights:"

- training officers consistent with the City of Balch Springs and the BSPD's facially unconstitutional written policies on the proper use of deadly and non-deadly force;

- the City of Balch Springs and the BSPD's failure to adequately train, supervise or discipline its officers who commit wrongful acts or attempt to cover-up a wrongful act of a fellow officer;

- the City of Balch Springs and the BSPD's failure to adequately train its officers on how to deal with individuals during a raid of an event;

- the City of Balch Springs and the BSPD's failure to adequately train its officers on using force, particularly deadly force, against civilians seated in a vehicle, as [Maximus, Maxwell,] Jordan, Vidal, and Kevon were;

- the City of Balch Springs and the BSPD's failure to adequately train its officers on using force, particularly deadly force, against [Maximus, Maxwell,] Jordan, Vidal, and Kevon, who were unarmed and posed no immediate threat of harm to officers or others;

- the City of Balch Springs and the BSPD's failure to adequately train its officers on when to direct deadly force toward an occupied vehicle; and

- the City of Balch Springs and the BSPD's failure to adequately train its officers on when to direct deadly force toward a moving vehicle.[106]

---

[106] Edwards Fifth Am. Compl. 28-29; Stephens Fourth Am. Compl. 23; Washington Third Am. Compl. 26.

Concerning the first "policy," the undersigned has already concluded that Plaintiffs have adequately alleged the City's official use-of-deadly-force policy is unconstitutional. Plaintiffs additional allegations that the City and BSPD trained officers consistent with the unconstitutional written policy, together with their assertions that the City's "failure to properly train and discipline its deputies was the proximate cause of the violations of [the Plaintiffs'] constitutional rights,"[107] are sufficient to allege a training failure that is causally connected to the violation of Plaintiffs' rights.

The final element of a failure-to-train claim is deliberate indifference. Alleging deliberate indifference "generally requires a pattern of similar violations arising from a policy so clearly inadequate as to be obviously likely to result in a constitutional violation."[108] In their responses, Plaintiffs point to the following incidents as support for their failure-to-train and -supervise claims: "past incidents of misconduct by both Oliver and other officers," including Oliver publicly posting on his Facebook about how "he 'will never in [his] life be as good at anything else as [he] is at killing people'"; Oliver pulling his gun on "another motorist, and her passengers, who rear-ended Oliver"; and, in 2013, Sergeant James Young shooting an unarmed black man in a car.[109] Plaintiffs also allege that the City knew about

---

[107] Edwards Fifth Am. Compl. 29; Stephens Fourth Am. Compl. 23; Washington Third Am. Compl. 27.

[108] *Covington*, 2020 WL 2516661, at *5 (citation and quotation marks omitted).

[109] Edwards Resp. 20-21; Stephens Resp. 15-16; Washington Resp. 15-16; *see also* Edwards Fifth Am. Compl. 10, 16-17; Stephens Fourth Am. Compl. 9, 15-16; Washington Third Am. Compl. 8, 15-16.

these incidents and did not modify its training program in response or to correct future incidents.[110] These allegations, when taken together with Plaintiffs' assertion that BSPD trains its officers according to its allegedly unconstitutional written use-of-deadly-force policy, permits the Court to infer a pattern of misconduct sufficient to plead deliberate indifference.

The remaining training "conduct, policies, or customs," however, are either very general—the BSPD failed to train its officers on "on how to deal with individuals during a raid of an event"—or mirror the specific injury Plaintiffs' suffered in this case—"the City of Balch Springs and the BSPD's failure to adequately train its officers on using force, particularly deadly force, against [Maximus, Maxwell,] Jordan, Vidal, and Kevon, who were unarmed and posed no immediate threat of harm to officers or others." The first category of allegations is too general, or conclusory, to plausibly plead an inadequate training procedure.[111] And the second category of allegations, without specific examples like in *Sanchez*, appears to "styl[e] [Plaintiffs'] complaints about the specific injury suffered as a failure to train claim."[112] "The Supreme Court specifically warned against this type

---

[110]*See* Edwards Fifth Am. Compl. 10-11, 16-17; Stephens Fourth Am. Compl. 15-16; Washington Third Am. Compl. 14-15.

[111] *See Roberts*, 397 F.3d at 293 (citing *Benavides,* 955 F.2d at 973) ("[A] plaintiff must allege with specificity how a particular training program is defective.").

[112] *Roberts*, 397 F.3d at 293 (holding that plaintiff's assertion that police program failed to train officers on how to perform crossing-guard duty without resorting to deadly force will not support a failure-to-train claim in a case involving fatal injuries inflicted by an off-duty police officer working as a crossing guard).

30

of artful pleading,"[113] and Plaintiffs do not allege how these foregoing factual instances specifically demonstrate how the City's training program is inadequate concerning the use of deadly force with respect to moving vehicles, occupied vehicles, or individuals seated in a vehicle; committing or covering up "wrongful acts"; raiding events; or how any "failure to adequately train . . . officers on using . . . deadly force, against [Plaintiffs], who were unarmed and posed no immediate threat of harm to officers or others" demonstrates a training inadequacy beyond the specific conduct in this case and distinct from inadequacies flowing from the City's allegedly unconstitutional written use-of-deadly-force policy.[114] In sum, the Court should find that Plaintiffs plausibly plead a failure-to-train claim against the City based on Plaintiffs' assertions that the City trains its officers according to its allegedly unconstitutional written use-of-deadly-force policy.

Turning to Plaintiffs failure-to-supervise or -discipline claim, Plaintiffs allege the following:

- the City of Balch Springs and Chief Haber failed to adequately supervise and/or discipline officers who used excessive force and who demonstrated [sic] inability to use proper techniques for confronting suspects, obtaining compliance, de-escalating situations, responding to compliant suspects, and arresting suspects—all usual and recurring situations regularly confronting these officers;

---

[113] *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 391 (1989) ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid *the particular injury-causing conduct*."")).

[114] *See* Edwards Fifth Am. Compl. 28-29; Stephens Fourth Am. Compl. 23; Washington Third Am. Compl. 26.

- the Balch Springs City Council was deliberately indifferent to the need to supervise and/or discipline its officers and/or employees, particularly when their conduct demonstrated the need for such discipline or supervision;

- the City of Balch Springs and Chief Haber failed to adequately supervise and/or discipline Defendant Oliver for pointing his gun at a car full of females after a minor fender bender; and

- the failure to adequately supervise and/or discipline these officers proximately caused the deprivation of [Maximus, Maxwell,] Jordan[ ], Vidal[ ], and Kevon's constitutional rights.[115]

Plaintiffs also assert that "numerous other Balch Springs officers who violated City policies and the constitutional rights of civilians . . . were never disciplined or required to receive additional supervision."[116] Specifically, Plaintiffs allege "in 2013, Sergeant James Young—like Officer Oliver—shot an unarmed black man in a car"; "[i]n 2014, Sergeant Young also assaulted an inmate, merely because Young alleged the inmate verbally disrespected an officer"; "[i]n 2014, another Balch Springs officer tasered an arrestee until he died, even though the arrestee was not resisting and was fully compliant with the officer's instructions"; "[i]n 2016, yet another Balch Springs officer used a taser on a fully compliant person who was already restrained by handcuffs"; "[a]nd in 2017, while Luis Median Jr. was experiencing an epileptic seizure, Oliver himself slammed him to the ground for

---

[115] Edwards Fifth Am. Compl. 30; Stephens Fourth Am. Compl. 24; Washington Third Am. Compl. 27.
[116] Edwards Resp. 25; *see* Stephens Resp. 7; Washington Resp. 7.

no reason whatsoever."[117] Plaintiffs assert "Oliver was allowed to violate multiple policies without any adequate consequences" and that "personnel records from the [BSPD] show Oliver was suspended for only sixteen (16) hours in December 2013 after the Dallas County District Attorney's Office filed a complaint about his disrespectful and unprofessional conduct as a witness in a drunken-driving case."[118] Plaintiffs contend "Oliver was not adequately disciplined by Chief Haber and the City Council, despite his egregious conduct," but then later allege "the BSPD has not disciplined officers like Oliver and Sergeant Young for using unconstitutional degrees of force."[119] Taking Plaintiffs' allegations to be true, Plaintiffs allege that the City, by its policymaker, Chief Haber, failed to supervise and discipline Oliver and Sergeant Young, and that as a result of that failure, "Oliver acted with unrestrained aggression in his time as a Balch Springs police officer," such that the death of an unarmed civilian was the predictable result of Chief Haber's failure to supervise and discipline.[120] The Court finds this allegation consistent with its determination that Plaintiffs have stated a claim with respect to the City's allegedly unconstitutional use-of-deadly-force policy. It stands to reason that officers acting pursuant to an unconstitutional deadly-force policy would likely not be disciplined for acting according to that policy.

---

[117] Edwards Fifth Am. Compl. 16; Stephens Fourth Am. Compl. 15; Washington Third Am. Compl. 14-15.
[118] Edwards Fifth Am. Compl. 9, 19; Stephens Fourth Am. Compl. 8, 17; Washington Third Am. Compl. 7, 18.
[119] Edwards Fifth Am. Compl. 9, 21; Washington Third Am. Compl. 7, 19; *see* Stephens Fourth Am. Compl. 8, 15-16.
[120] Edwards Fifth Am. Compl. 17-18; Stephens Fourth Am. Compl. 16-17; Washington Third Am. Compl. 16.

Even so, to state a failure-to-supervise claim, Plaintiffs must also plead that "the failure to . . . supervise constituted deliberate indifference to the plaintiff's constitutional rights."[121] And, as stated, alleging deliberate indifference "generally requires a pattern of similar violations arising from a policy so clearly inadequate as to be obviously likely to result in a constitutional violation."[122] The only instance Plaintiffs allege that is similar enough to Oliver's conduct at issue in this case is Sergeant Young's 2013 shooting of an unarmed black man in a car.[123] However, these two instances coupled with Plaintiffs' allegation that Oliver and Young were not, or inadequately, disciplined, give rise to a plausible pattern of misconduct indicating deliberate indifference. Accordingly, though a close call,[124] the Court should find Plaintiffs have stated a failure-to-supervise or -discipline claim against the City.

### v. "Bystander" and Individual Damage Claims

Finally, the City moves to dismiss Plaintiffs Kevon, Vidal, Stephens, Maximus, Maxwell, and, to the extent they purport to bring them, Odell and Washington's "individual damage claims" because they "seek recovery of personal damages based upon the alleged deprivation of another's (decedent's) legal rights,"

---

[121] *See Peña*, 879 F.3d at 623 (internal quotation marks omitted) (quoting *Thompson*, 245 F.3d at 459).

[122] *Covington*, 2020 WL 2516661, at *5 (citation and quotation marks omitted).

[123] Edwards Fifth Am. Compl. 16-17; Stephens Fourth Am. Compl. 15-16; Washington Third Am. Compl. 14-16.

[124] *Covington*, 2020 WL 2516661, at *7 (holding "the district court erred in dismissing [plaintiff's] failure to supervise § 1983 claim with prejudice" where it was a "close call" and "should have gone in [her] favor," even though her claim "ultimately may not withstand a motion for summary judgment filed after discovery, or prevail at trial").

and "there is no allegation that these plaintiffs were physically injured in the shooting."[125] Specifically, Plaintiffs Odell and Stephens each assert claims for damages as Jordan's wrongful-death beneficiary;[126] Vidal, Kevon, Maximus, and Maxwell assert § 1983 municipal-liability claims, each on his own behalf; and Washington seeks only damages for Maximus and Maxwell's "necessary medical, psychological, psychiatric, and/or pharmaceutical care" prior to their 18th birthdays.[127] Plaintiffs Vidal, Kevon, Maximus, and Maxwell respond that they are entitled to recover for violations of their own constitutional rights.[128] Plaintiff Stephens responds that the City fails to acknowledge her right to recover for loss of the parent-child relationship.[129] And Plaintiff Washington contends that because Maximus and Maxwell were minors at the time of the incident, as their mother, she has standing to recover past medical expenses prior to their 18th birthdays.[130] The Court should find the City's objections to Plaintiffs' "individual damage" claims fail, and that if Plaintiffs' municipal-liability claims succeed, they may be entitled to damages on these grounds.

"Ordinarily a plaintiff must assert his own legal rights and interests, and

---

[125] City's Br. Edwards 6-7; City's Br. Stephens 7 (With respect to Plaintiff Stephens, the City states, "[t]here is no factual allegation that this plaintiff was injured in the shooting," omitting the word "physical."); City's Br. Washington 6-7.
[126] Edwards Fifth Am. Compl. 31; Stephens Fourth Am. Compl. 24. Plaintiff Odell Edwards also asserts a claim for damages on behalf of Jordan Edwards's estate, which the City does not challenge. Edwards Fifth Am. Compl. 31. Therefore, the Court does not address it.
[127] Edwards Fifth Am. Compl. 31-32; Washington Third Am. Compl. 28-29.
[128] Edwards Resp. 29; Washington Resp. 9.
[129] Stephens Resp. 9.
[130] Washington Resp. 10.

cannot rest his claim to relief on the legal rights or interests of third parties."[131] Thus, the City correctly states "there is no constitutional right to be free from witnessing . . . police action" and that federal law does not recognize a § 1983 "bystander" claim.[132] But Plaintiffs Vidal, Kevon, Maximus, and Maxwell bring § 1983 municipal-liability claims and seek "individual damages" for the emotional and psychological injuries they sustained as a result of the City's alleged violation of their own constitutional rights, not Jordan's.[133] An injury need not be physical to satisfy § 1983's injury requirement.[134] Accordingly, the City's objections to Vidal, Kevon, Maximus, and Maxwell's § 1983 individual-damage claims because they are "bystander claim[s]" and fail to allege a physical injury are inapposite.[135]

Plaintiffs Odell and Stephens assert claims for mental anguish, loss of companionship and society, and pecuniary loss "as wrongful death beneficiar[ies]

---

[131] *Strong v. United States*, 2018 WL 1053535, at *2 (N.D. Miss. Feb. 26, 2018) (internal quotation marks and brackets omitted) (quoting *Rogers v. Brockette*, 588 F.2d 1057, 1060 (5th Cir. 1979)).

[132] City's Br. Edwards 7; City's Br. Stephens 7; City's Br. Washington 7; *Grandstaff v. City of Borger*, 767 F.2d 161, 172 (5th Cir. 1985) ("James Grandstaff's widow and stepsons recovered damages against the City and the officers for their own emotional injuries suffered as bystanders when they witnessed the gunfire directed at Grandstaff in his pickup truck. We conclude that, under Texas law, this recovery [for emotional injuries suffered as bystanders] is proper against the officers, but that it is not permitted under § 1983 and may not therefore be recovered from the City.").

[133] *See* Edwards Fifth Am. Compl. 31-32; Washington Third Am. Compl. 22-29.

[134] *Flores*, 381 F.3d at 400-01 ("The observation that substantial psychological injuries now satisfy the injury element makes it entirely clear that no physical injury is necessary to state a Fourth Amendment claim."); *see also Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (citation and quotation marks omitted) ("[A]s long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force.").

[135] *See Petta v. Rivera*, 143 F.3d 895, 903 (5th Cir. 1998) (per curiam) (holding minor children asserted valid claim under § 1983 for constitutional violation for excessive force when they alleged that officer's abusive behavior and use of excessive force during initial stop of driver's vehicle and ensuing chase caused them severe emotional harm).

of Jordan Edwards."[136] The City also contends that these claims "appear[ ] to seek personal damages based upon the shooting of the decedent," and "there is no factual allegation that [these] plaintiff[s] [were] injured in the shooting."[137] But the Fifth Circuit has "consistently held that a parent may recover damages analogous to state law wrongful death damages in a § 1983 action based on the violation of her child's civil rights."[138] Thus, the City's objections to Plaintiffs Odell and Stephens's claims for wrongful-death damages that may result from this § 1983 action based on the violation of their son's constitutional rights fail.

Last, Plaintiff Washington seeks damages for Maximus and Maxwell's "necessary medical, psychological, psychiatric, and/or pharmaceutical care" prior to their eighteenth birthdays.[139] Again the City contends that Washington's claim for damages improperly "seek[s] personal damages based upon the shooting of the decedent," and "there is no allegation that these plaintiffs were physically injured during the shooting."[140] The Court already addressed that Maximus and Maxwell pursue municipal-liability claims for violation of their own constitutional rights, rather than Jordan's. And because Maximus and Maxwell have reached the age of majority, they now have capacity to vindicate their constitutional rights. However,

---

[136] Edwards Fifth Am. Compl. 31; Stephens Fourth Am. Compl. 24-25.

[137] City's Br. Edwards 6-7 ("To the extent that Plaintiff Odell Edwards purports to bring individual claims, those claims also fail to state a viable claim and should be dismissed for the same reason."); City's Br. Stephens 7.

[138] *Flores v. Cameron Cty.*, 92 F.3d 258, 271 (5th Cir. 1996) (citing *Rhyne v. Henderson Cty.,* 973 F.2d 386, 391 (5th Cir. 1992)).

[139] Washington Third Am. Compl. 28.

[140] City's Br. Washington 6-7 ("To the extent that Plaintiff Rhonda Washington purports to bring individual damage claims, those claims also fail to state a viable claim and should be dismissed for the same reason.").

when the incident occurred, and this lawsuit was initiated, they were still minors. Thus, the question remains whether Washington, their mother, may properly assert a claim to recover Maximus and Maxwell's medical costs that they incurred as a result of the incident while they were still minors.

The Fifth Circuit has looked to Texas's common-law rule to "determin[e] who may assert a claim for a minor's compensatory damages under the ADA or Rehabilitation Act, just as other courts have looked to the common law to determine when federal civil rights claims survive the death of the person aggrieved."[141] So too, the Court should consult this common-law rule to determine whether a parent may assert a claim to recover her child's medical costs in the § 1983 context. While "[a] child may recover damages for pain and suffering as well as other damages he may accrue after he reaches the age of majority . . . [,] [h]istorically, in Texas, the right to recover for medical costs incurred on behalf of the minor is a cause of action belonging to the parents, unless such costs are a liability as to the minor's estate."[142] Accordingly, the Court concludes that should Maximus and Maxwell's municipal-liability claims succeed, Washington may be entitled to recover the medical costs they incurred as a result of the incident, while they were minors. In sum, all the City's objections to Plaintiffs' "individual damage" claims fail. If Plaintiffs' municipal-liability claims succeed, they may be

---

[141] *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 161 (5th Cir. 2016) (citing *Hutchinson v. Spink*, 126 F.3d 895, 898 (7th Cir. 1997) (ADA); *Slade v. U.S. Postal Serv.*, 952 F.2d 357, 360 (10th Cir. 1991) (Title VII)).

[142] *Sax v. Votteler*, 648 S.W.2d 661, 666 (Tex. 1983) (citations omitted); *see also Herrera v. Price*, 2019 WL 580846, at *4 (Tex. App.—Dallas Feb. 13, 2019, no pet.) (citing *Sax*, 648 S.W.2d at 666).

entitled to damages on these grounds.

## Recommendation

For the reasons stated, the District Court should DENY Defendant the City of Balch Springs's motions to dismiss (ECF Nos. 278, 279, and 280).

**SO RECOMMENDED.**

July 2, 2020.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).