IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ODELL EDWARDS, Individually and as the Father of JORDAN EDWARDS, and as the Representative of the Estate of JORDAN EDWARDS, Deceased, § § § § § § § Plaintiff, § § v. § § ROY OLIVER, § § Defendant. § § § | | No. 3:17-cv-1208-M-BT |

## MEMORANDUM OPINION AND ORDER

Attorney William W. Krueger, III, seeks to withdraw as counsel of record for Defendant Roy Oliver in this civil rights action under 42 U.S.C. § 1983 because the third-party that retained Krueger to represent Oliver advised Krueger it will no longer fund the cost of Oliver's defense. Although good cause to withdraw may exist where the client refuses to pay for services, Krueger has not shown good cause exists for his withdrawal under the circumstances presented here. And, even if Oliver's alleged inability to pay Krueger for representing him at trial could establish good cause, Krueger's withdrawal at this late stage in the litigation would unduly disrupt the proceedings, result in prejudice to the parties, and adversely affect the interests of justice. Therefore, the Court, in its discretion, declines to permit Krueger's withdrawal and DENIES Oliver's Motion to Withdraw Defense Counsel. (ECF No. 495).

1

I.

Attorneys may not withdraw as counsel of record until certain requirements are satisfied. *In re Wynn*, 889 F.2d 644, 646 (5th Cir. 1989). Ultimately, the determination of whether these requirements are met is a matter "entrusted to the sound discretion of the [trial] court." *Id.* (citations omitted).

The first requirement is that attorneys may withdraw "only upon leave of the court and a showing of good cause and reasonable notice to the client." *Id.* The withdrawing attorney bears the burden of proving there is good cause to withdraw. *See Fed. Trade Comm'n v. Intellipay, Inc.*, 828 F. Supp. 33, 33-34 (S.D. Tex. 1993) ("The record must generally reflect an appropriate basis for granting leave [to withdraw]; unsubstantiated claims are insufficient."). A court's determination whether an attorney has good cause to withdraw depends on the facts and circumstances of the case. "If a district court is not persuaded that good cause for withdrawal exists, it has substantial latitude to deny an attorney's motion to withdraw." *White v. BAC Home Loans Servicing, LP*, 2010 WL 2473833, at *1 (N.D. Tex. June 15, 2010) (citations omitted).

Second, even if "good cause for withdrawal exists, it is 'incumbent on the court to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel.'" *Denton v. Suter*, 2013 WL 5477155, at *2 (N.D. Tex. Oct. 2, 2013) (quoting *Broughten v. Voss*, 634 F.2d 880, 882 (5th Cir. 1981)). Courts typically consider several other factors when determining whether to allow an attorney to withdraw, including:

2

> "(1) the extent to which the attorney's withdrawal will delay or disrupt the case; (2) the length of time for which the case and any dispositive motions have been pending; (3) the time it would take and the financial burden it would impose on the client to find new counsel; (4) the financial burden the attorney would suffer if not allowed to withdraw; (5) prejudice to the other parties; and (6) whether withdrawal will harm the administration of justice."

*White*, 2010 WL 2473833, at *3. Chief among these factors is "undue delay in the proceedings, prejudice to the client, and the interests of justice." *Dorsey v. Portfolio Equities, Inc.*, 2008 WL 4414526, at *2 (N.D. Tex. Sept. 29, 2008).

In addition, the local rules of this Court provide that where an attorney seeks to withdraw and the identity of the succeeding attorney is unknown, the withdrawing attorney must file a motion that: (1) specifies the reasons requiring withdrawal; (2) sets forth the client's name, address, and telephone number; and (3) "either bear[s] the client's signature approving withdrawal or state[s] specifically why, after due diligence, the attorney was unable to obtain the client's signature." *See* N.D. Tex. L.R. 83.12(a). Here, Krueger does not know who—if anyone—will succeed him, but his motion complies with the local rules. Most importantly, Oliver signed the motion approving Krueger's withdrawal.

## II.

### A.

Krueger asserts that good cause for withdrawal exists under Rule 1.15(b)(1), (5), (6) and (7) of the Texas Disciplinary Rules of Professional Conduct. Mot. 5. Specifically, Krueger explains that he was retained by a third party, the Texas Municipal League Intergovernmental Risk Pool (TML), to represent Oliver in this

3

lawsuit arising out of the April 29, 2017, shooting death of Jordan Edwards, Plaintiff Odell Edwards's fifteen-year-old son. In 2018, a Dallas County jury found Oliver, a former Balch Springs police officer, guilty of Jordan's murder and sentenced Oliver to fifteen years imprisonment. The Dallas Court of Appeals affirmed Oliver's conviction and sentence. *Oliver v. State*, 2020 WL 4581644 (Tex. App.—Dallas Aug. 10, 2020). The Texas Court of Criminal Appeals initially granted Oliver's petition for discretionary review, but, on June 22, 2022, the Court of Criminal Appeals dismissed the petition as improvidently granted. *Oliver v. State*, 2022 WL 2240200 (Tex. Crim. App. June 22, 2022).

According to Krueger, TML recently advised him it would no longer fund the cost of Oliver's defense since Oliver exhausted his criminal appeals without overturning his murder conviction. Krueger claims he is not able to continue his representation of Oliver without significant financial hardship. Krueger further argues that his withdrawal can be accomplished without material adverse effect on Oliver's interests.

Plaintiff opposes Krueger's motion. He challenges the assertion that Oliver's alleged inability to pay Krueger for the work remaining to try this case constitutes good cause for Krueger's withdrawal. He also argues that Krueger's withdrawal will unnecessarily disrupt the proceedings.

The parties fully briefed their arguments,[1] and the Court held a hearing on the motion on September 20, 2022. The motion is ripe for adjudication.

B.

"Whether good cause exists for an attorney to withdraw is a question of federal law." *White*, 2010 WL 2473833, at *2 (citations omitted). "That question is answered primarily by referring to the standards for withdrawal articulated in national ethics canons and in the ethics rules adopted by the court." *Id.*; *see also Whiting v. Lacara*, 187 F.3d 317, 321 (2d Cir. 1999) ("Although the Model Code was drafted solely for its use in disciplinary proceedings and cannot by itself serve as a basis for granting a motion to withdraw as counsel, we continue to believe that the Model Code provides guidance for the court as to what constitutes 'good cause' to grant leave to withdraw as counsel.") (cleaned up); *In re Posadas USA, Inc.*, 100 S.W.3d 254, 257 (Tex. App.–San Antonio 2001, no pet.) ("Although the Texas Disciplinary Rules are not controlling standards governing motions to withdraw, they articulate considerations relevant to the merits of such motions."). This Court has adopted the Texas Disciplinary Rules of Professional Conduct. *See* N.D. Tex. L.R. 83.8(e).

Rule 1.15(b) of the Texas Disciplinary Rules outlines six specific situations in which a lawyer has good cause to voluntarily withdraw from a representation.

---

[1] Despite Krueger's multiple assertions to the contrary, Plaintiff timely filed a response to his motion to withdraw (ECF No. 500), and the Court's records reflect that a copy of the response was delivered to Krueger at the email address he provided to the Court.

Tex. Disciplinary Rules Prof'l Conduct R. 1.15(b)(1)-(6). It also contains a seventh, catch-all provision that allows an attorney to withdraw where "other good cause for withdrawal exists." *See id.* 1.15(b)(7). The parallel rule in the American Bar Association's Model Rules of Professional Conduct contains virtually identical provisions. *See* Model Rules Pro. Conduct R. 1.16(b) (6th ed. 2007).

1.

Rule 1.15(b)(1) provides that a lawyer may withdraw from representing a client if "withdrawal can be accomplished without material adverse effect on the interests of the client." Tex. Disciplinary Rules Prof'l Conduct R. 1.15(b)(1). Here, Krueger argues his proposed withdrawal will not adversely affect Oliver's interests because Oliver is "indigent and judgment-proof." Mot. 6. That is, even "[i]f Plaintiff should prevail in the case, [] Oliver will be unable to pay any part of any judgment, as he is, and will continue to be incarcerated without means of earning money or any other item of value." *Id.* Krueger submits that the only ones who will suffer an adverse effect if he is forced to remain in the case are the parties' lawyers who will "forfeit their time/talent/treasure-money." *Id.*

Krueger's arguments miss the mark. First, any consideration of the parties' lawyers' interests in their own "time/talent/treasure-money" is irrelevant to the "interests of the client" under Rule 1.15(b)(1). And further, Oliver's interests are not limited to his current financial condition or his alleged inability to satisfy a

6

potential judgment.[2] Krueger's withdrawal would adversely affect Oliver's interests because withdrawal would likely result in delay and a disparity of legal resources.

Oliver has been defending this lawsuit for more than five years. Plaintiff filed this action within a week of Jordan's death, on May 5, 2017. Comp. (ECF No. 1). After a stay to accommodate Oliver's criminal trial, extended discovery and motion practice, and an interruption caused by Oliver's appeal of the Court's denial of summary judgment on his qualified immunity defense, the case is set for a jury trial on the Court's three-week docket beginning March 13, 2023. Sched. Order (ECF No. 494). If the Court allowed Krueger to withdraw at this late stage in the litigation, it would likely delay the proceedings again. Oliver may seek substitute counsel, and—if a new attorney made an appearance—that lawyer would need time to learn the issues and become familiar with the evidence. If Oliver could not obtain

---

[2] Plaintiff does not concede that Oliver is indigent or "judgment-proof," as Plaintiff's counsel has not conducted any discovery into Oliver's assets and the only evidence of Oliver's current financial condition is his conclusory declaration attached to Krueger's motion, which appears to endorse Krueger's unsubstantiated assertions that Oliver is indigent because he is incarcerated. Mot. Ex. D. ("The facts and statements contained within Counsel's Motion to Withdraw Defense Counsel are within my personal knowledge and are true and correct to the best of my knowledge.") Also, Krueger's focus on Oliver's current financial condition ignores the possibility that his situation may improve in the future. Oliver will fulfill his sentence in 2033, and he is eligible for parole in early 2026. *See* https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=09347254 (last visited Sept. 22, 2022). Oliver may get a job following his release, and there is always the possibility that he could acquire assets through gift or inheritance. At the September 20 hearing, Plaintiff's counsel speculated—and Krueger did not dispute–that Oliver may earn income by selling his story. However, the Court declines to engage in any speculation as to Oliver's ability to satisfy a judgment, as that would be premature unless Plaintiff actually obtains a judgment.

substitute counsel, he would have to proceed *pro se*. Again, Oliver would need time to research the legal issues himself and prepare his defense.

Krueger represents that he reached out to other lawyers with experience in defending police officers in civil rights lawsuits. But Oliver lacks the funds to hire new counsel, and none of the lawyers Krueger contacted wanted to take this case *pro bono*. Thus, if the Court allowed Krueger to withdraw, Oliver would likely have to proceed *pro se*. Having to represent himself at trial would put Oliver at a disadvantage against Plaintiff, who is represented. Even Krueger acknowledged at the September 20 hearing that Oliver would be "much better" off if he had an attorney representing him at trial. Indeed, Krueger declared that there is "no one better" than himself to try Oliver's case. The Court agrees that Krueger is an experienced litigator and has particular experience representing police officers in civil rights lawsuits in this district. He has represented Oliver in this case since its inception and—as he demonstrated at the September 20 hearing—he is astutely familiar with the evidence. Krueger's withdrawal would deprive Oliver of the legal and factual experience of counsel on the eve of trial. For these reasons, the Court finds Krueger's withdrawal cannot be accomplished without material adverse effect to Oliver's interests.

2.

Krueger further contends the Court should permit his withdrawal because of the financial hardship he would suffer if the Court required him to continue representing Oliver without compensation. Mot. 12-14. Although TML retained

Krueger to represent Oliver and has been paying Krueger's fees for the past five years, it recently informed Krueger that it will no longer fund the defense because Oliver's conviction was not overturned on appeal. Oliver purportedly has no money to pay Krueger's fees, which Krueger estimates will reach $250,000 "to complete discovery . . . and proceed to trial." Mot. 12.

Rule 1.15(b)(5) provides that a lawyer may withdraw from representing a client if "the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services, including an obligation to pay the lawyer's fee as agreed, and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled." Tex. Disciplinary Rules Prof'l Conduct R. 1.15(b)(5). Similarly, Rule 1.15(b)(6) permits withdrawal if "the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client." Tex. Disciplinary Rules Prof'l Conduct R. 1.15(b)(6).

Rule 1.15(b)(5) is not directly applicable here. Oliver has not failed substantially to fulfill any obligation to Krueger. Oliver never agreed to pay Krueger's fees. To the extent TML agreed to fund Oliver's defense, there is no assertion—much less evidence—that Krueger has not been fully compensated for all the work he has done on Oliver's behalf. Further, the terms of Krueger's agreement with TML are unclear. Krueger did not submit a copy of his retainer agreement or the letter from TML terminating the relationship. Krueger represented at the September 20 hearing that "there is not a fee agreement" with

9

TML; instead, there is merely "an arrangement" where TML assigns Krueger a case and he bills his time to TML on an hourly basis. Apparently, this arrangement did not include any agreement regarding potential premature termination of the relationship—at least not under the circumstances presented here—as Krueger was "surprised" that TML was cutting the funding for Oliver's defense. Krueger represented at the September 20 hearing that he had "never seen . . . or heard of [TML cutting off defense costs]" in 30 years of working with TML.

Rule 1.15(b)(6) does not justify removal under the circumstances here. The Court does not dispute that Krueger's continued representation of Oliver without any guarantee of payment may result in a financial burden to Krueger. But the record does not support a finding that any such burden would be unreasonable. Krueger estimates he will incur $250,000 in legal fees to complete discovery and proceed to trial. But there is no basis to believe that the work remaining to be done to try this case will result in $250,000 in legal fees. First, Krueger's assertion is wholly conclusory. He has not submitted any evidence to support his fee estimate; he does not set forth his billing rate or estimate how many hours will be necessary to complete any particular task. Second, discovery is complete, and the Court is not inclined to permit any additional discovery. As the Court previously observed, "[d]iscovery in this case has been especially contentious, and the attorneys, all of whom are experienced trial lawyers, have shown uncharacteristic acrimony towards each other, the parties, and this Court." Disc. Order 2 (ECF No. 305). The Court also observed that Krueger, in particular, abused the discovery process and

10

used it for annoyance, embarrassment, harassment, and other inappropriate purposes, including admittedly "fishing" for evidence to overturn Oliver's criminal conviction. *See id.* 8, 11-17. In view of this history, the Court will not permit additional discovery. Therefore, the remaining litigation costs should be limited to the cost to prepare for trial and to try the case. Krueger is already very familiar with the evidence in this case, and he and his associates are well-positioned to be best able to efficiently prepare for trial.

Also, Krueger has been paid, apparently on an hourly basis, for the work he has done on Oliver's behalf. At the September 20 hearing, Plaintiff's counsel suggested that Krueger has already been well-compensated for his work on this case, perhaps even in excess of the $250,000 Krueger estimates to see this case to conclusion. Krueger did not respond to this suggestion; nor did he offer evidence that he has not been fully and fairly compensated for all his work to date on Oliver's behalf. Lawyers cannot abandon a client on the eve of trial simply because they may not recover some of the litigation costs. To allow otherwise would go against the policy that a lawyer who agrees to represent a client is generally "expected to work through the completion of a case." *Fed. Trade Comm'n*, 828 F. Supp. at 34; *see Am. Res. Techs., Inc. v. Oden*, 2014 WL 6884243, at *3 (N.D. Tex. Dec. 8, 2014) (Boyle, J.); *see also Streetman v. Lynaugh*, 674 F. Supp. 229, 235 (E.D. Tex. 1987) ("[A]n attorney who has once agreed to represent a client should not be permitted to abandon his responsibilities merely because he is unhappy with the nature of the relationship with the client.").

11

Further, Krueger concedes that he has performed significant legal work for Oliver since TML's alleged order to stop work. Krueger represents that he prepared a petition for a writ of certiorari to the United States Supreme Court seeking review of the Fifth Circuit's decision to dismiss his appeal of this Court's order denying summary judgment on his qualified immunity defense.[3] Krueger's willingness to perform this work without expectation of compensation undercuts his assertion that continuing to represent Oliver in defense of Plaintiff's claims would present an unreasonable financial burden.

Finally, even if the Court accepts that Oliver's inability to pay Krueger's legal fees would present a financial burden, that does not end the inquiry into whether Krueger should be allowed to withdraw. *See Augustson*, 76 F.3d 658 at 663 (observing that good cause to withdraw may exist where the client "refuses to pay for services," but whether a court should allow an attorney to withdraw ultimately "depends on the facts and circumstances of each case"). The court must still examine the other relevant factors, including undue delay in the proceedings, prejudice to the client, and the interests of justice—which the Court examines below.

---

[3] The Court accepts Krueger's representation that he prepared a cert petition at face value. However, there is no evidence that Krueger timely filed a petition in the Supreme Court. The Supreme Court's docket system does not show any filing on Oliver's behalf, https://www.supremecourt.gov/docket/docket.aspx (last visited September 30, 2022), and Krueger has not provided copies of the correspondence with the Supreme Court that he referenced at the September 20 hearing.

3.

Rule 1.15(b)(7) is the catch-all provision that allows an attorney to withdraw where "other good cause for withdrawal exists." Tex. Disciplinary Rules Prof'l Conduct R. 1.15(b)(7). "'Much of the relevant caselaw' about when good cause exists under subsection (b)(7) 'involves antagonism between lawyer and client.'" *White*, 2010 WL 2473833, at *2 (quoting Model Rules Pro. Conduct R. 1.16 Annot.). "This case law establishes that an attorney has good cause for withdrawal when there has been a total breakdown of the attorney-client relationship." *Id.* (citations omitted).

Krueger does not argue that there is antagonism or fractiousness between himself and Oliver. To the contrary, Oliver has been cooperative with Krueger and willing to assist him in the case. Even Krueger contends that he is on good terms with Oliver. There is no claim that communications have broken down or that any trust has eroded between Oliver and Krueger. At the September 20 hearing, the Court observed that Krueger and Oliver appeared to have a strong attorney-client relationship. There was no animosity apparent between the two. Thus, there is no other good cause for Krueger's withdrawal under Rule 1.15(b)(7).

In sum, Krueger has not met his burden to show that good cause for withdrawal exists under Rule 1.15(b)(1), (5), (6) or (7) of the Texas Disciplinary Rules of Professional Conduct.

III.

A.

Good cause to withdraw may exist where the client refuses to pay for services, but the inquiry does not end there. *See Augustson*, 76 F.3d at 663. Whether a court should allow an attorney to withdraw "depends on the facts and circumstances of each case." *Id.* Even when the client's ability to pay is in question, "it is incumbent on the court to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel." *Broughten*, 634 F.2d at 882. Thus, courts consider certain additional factors before allowing an attorney to withdraw. *Globeranger Corp. v. Software AG*, 2014 WL 11456069 (N.D. Tex. July 11, 2014); *White*, 2010 WL 2473833, at *3; *Dorsey*, 2008 WL 4414526, at*2. Chief among these factors are "undue delay in the proceedings, prejudice to the client, and the interests of justice." *Dorsey*, 2008 WL 4414526, at *2.

Under the circumstances presented here, the additional factors weigh against allowing Krueger to withdraw.

B.

1.

Allowing Krueger to withdraw would unduly delay these proceedings. This case has been pending since 2017—far longer than the average disposition time for a case filed in this district. *See* https://www.txnd.uscourts.gov/statistics (last visited September 30, 2022) (noting average disposition time for cases filed between 2014 and 2018 to be less than 12 months). And contrary to Krueger's

14

assertions, the Court has always considered delay to be a "critical/pressing issue." Mot. 9.

The Court stayed the case during Oliver's criminal trial, Order (ECF No. 97), and lifted the stay on September 11, 2018. Order (ECF No. 105). Thereafter, the Court encouraged all parties to diligently prosecute this litigation—even during the pandemic when many courts and legal practices shut down. The parties conducted extensive discovery and filed dispositive motions. Oliver filed a motion for summary judgment on his qualified immunity defense. When the Court denied his motion (ECF No. 482), Oliver appealed—which temporarily deprived the Court of jurisdiction over Plaintiff's claims against Oliver. *See* Order (ECF No. 442) (noting "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." (citing cases)).

However, the Court retained jurisdiction over Plaintiff's claims against Oliver's former employer, the City of Balch Springs, and Intervenor-Plaintiffs' claims against Oliver and the City. The parties settled some claims, and the Court granted summary judgment in the City's favor on Plaintiff's municipal liability claim.[4] Earlier this year, the Fifth Circuit Court of Appeals dismissed Oliver's appeal for lack of subject matter jurisdiction. *Edwards v. Oliver*, 31 F.4th 925, 932

---

[4] Plaintiff has appealed the Court's grant of summary judgment in the City's favor. *Edwards v. Balch Springs, Texas*, No. 22-10269 (5th Cir. Mar. 18, 2022).

(5th Cir. 2022). The District Court then promptly set the case for a jury trial in March 2023. Sched. Order (ECF No. 494).

This case has proceeded fitfully at times and in piece-meal fashion, but Plaintiff and Oliver are on the verge of a disposition of Plaintiff's claims and Oliver's qualified immunity defense. Any delay at this point—especially one that is avoidable—would be undue. The possibility of undue delay weighs heavily against allowing Krueger to withdraw.

2.

Allowing Krueger to withdraw would result in prejudice to Oliver. In addition to the delay inevitably resulting from Krueger's withdrawal, Oliver would likely have to proceed *pro se*. Oliver, who has no legal training or experience defending himself in a civil rights case, would be greatly disadvantaged against Plaintiff, who is represented by counsel. Oliver and Krueger have a strong attorney-client relationship. Denying Oliver the benefits of this relationship, as the case proceeds to trial, prejudices his legal position. This potential prejudice to Oliver weighs heavily against allowing Krueger to withdraw. *Globeranger Corp.*, 2014 WL 11456069, at *2 (denying motion to withdraw where record did not reflect breakdown in attorney-client relationship even when attorney represented client was insolvent and financially unable to pay for services).

Krueger points out that Oliver does not oppose his withdrawal. However, Oliver also did not ask Krueger to withdraw. There is nothing in the record to suggest the Oliver welcomes Krueger's abandonment at this stage in the

16

proceedings. "There is a distinct difference between a client requesting his attorney to withdraw because the client is dissatisfied with his attorney's representation and an attorney requesting to withdraw because the attorney is dissatisfied with his client's failure to pay." *Walker v. Voyager, LLC*, 2009 WL 16700768 (W.D. Tex. 2009 (citing *Broughten*, 634 F.2d at 882). "Only the latter reason carries weight with the Court at this very late stage of the proceedings." *Id.*

### 3.

Allowing Krueger's withdrawal also prejudices the interests of justice. Justice is served when cases move efficiently through the system to disposition, and the parties can avail themselves of equal resources. Permitting Krueger to withdraw would cause delay. After more than five years, every additional month of delay increases the chance of prejudice that is inherent in delay: the risk that witnesses may become unavailable, memories may fade, and documents or other evidence may be lost or destroyed.

Having Oliver proceed *pro se* would also be against the interests of justice. He would be at a disadvantage at trial vis-à-vis Plaintiff, and he would require more of the Court's scarce judicial resources. Even if Oliver could find substitute counsel, his new attorney would only be duplicating Krueger's efforts to learn the evidence and devise a trial strategy. Such duplication of effort is wasteful and not in the interest of justice. *Streetman*, 674 F. Supp. at 235 (denying motion to withdraw where attorney had been representing defendant for over 16 months and was

thoroughly familiar with the record in the case; hiring another attorney would result in delay and duplication of his efforts).

4.

Of all the factors relevant to the issue of Krueger's withdrawal, only the financial burden to Krueger weighs in favor of granting his request. However, the record does not support a finding that the financial burden would be significant or unreasonable. And Krueger's anticipated financial burden certainly does not outweigh the other factors. *A.J. Rabe, Inc. v. Farm Serv. Agency*, 2019 WL 12536993, at *2 (W.D. Tex. May 21, 2019) (denying motion to withdraw because counsel's financial predicament cannot be the sole basis for withdrawal as justice does not permit a client's rights to be denied by its counsel's finances).

Krueger has already received significant compensation for representing Oliver. There is no evidence that, to date, Krueger has not been paid for any of the work he has done on Oliver's behalf. All that remains for Krueger to do is present the case to a jury. Krueger is well-positioned to try this case. Indeed, having him represent Oliver at trial would be the most efficient resolution of this action. The record does not support Krueger's assertion that it will cost him $250,000 to try the case. In view of all the circumstances, Krueger's withdrawal is not justified by any potential financial burden he may suffer. *Fed. Trade Comm'n*, 828 F. Supp. at 34 (denying motion to withdraw where attorney received $10,000 retainer and there was no evidence that client had not paid for legal services rendered).

IV.

For the reasons stated, the Court, in its discretion, declines to permit Krueger's withdrawal and DENIES Oliver's Motion to Withdraw Defense Counsel (ECF No. 495).

**SO ORDERED.**

September 30, 2022.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE